# Exhibit A

82D CONGRESS
2D SESSION

# S. 2842

---

## IN THE SENATE OF THE UNITED STATES

MARCH 12 (legislative day, FEBRUARY 25), 1952

Mr. HUMPHREY (for himself, Mr. LEHMAN, Mr. BENTON, Mr. LANGER, Mr. KIL-GORE, Mr. DOUGLAS, Mr. McMAHON, Mr. GREEN, Mr. PASTORE, Mr. MOODY, Mr. MURRAY, Mr. KEFAUVER, and Mr. MORSE) introduced the following bill; which was read twice and referred to the Committee on the Judiciary

---

# A BILL

To revise the laws relating to immigration, naturalization, and nationality; and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act, divided into titles, chapters, and sections according to the following table of contents, may be cited as the "Immigration and Nationality Act".

### TABLE OF CONTENTS

#### TITLE I—GENERAL

Sec. 101. Definitions.
Sec. 102. Applicability of title II to certain nonimmigrants.
Sec. 103. Powers and duties of the Attorney General and the Commissioner.
Sec. 104. Powers and duties of the Secretary of State.
Sec. 105. Board of Immigration Appeals.
Sec. 106. Liaison with internal security officers.

#### TITLE II—IMMIGRATION

#### CHAPTER 1—QUOTA SYSTEM

Sec. 201. Numerical limitations; annual quota based upon national origin; minimum quotas.
Sec. 202. Determination of quota to which an immigrant is chargeable.
Sec. 203. Allocation of immigrant visas within quotas.
Sec. 203A. Pooling of unissued and unused quota numbers.
Sec. 204. Procedure for granting immigrant status under section 101 (a) (27) (F) (i) or 203 (a) (1) (A).
Sec. 205. Procedure for granting nonquota status or preference by reason of relationship.
Sec. 206. Revocation of approval of petitions.

2

**CHAPTER 2—QUALIFICATIONS FOR ADMISSION OF ALIENS; TRAVEL CONTROL OF CITIZENS AND ALIENS**

Sec. 211. Documentary requirements.
Sec. 212. General classes of aliens excluded from admission.
Sec. 213. Admission of aliens on giving bond or cash deposit.
Sec. 214. Admission of nonimmigrants.
Sec. 215. Travel control of aliens and citizens in time of war or national emergency.

**CHAPTER 3—ISSUANCE OF ENTRY DOCUMENTS**

Sec. 221. Issuance of visas.
Sec. 222. Applications for visas.
Sec. 223. Reentry permits.
Sec. 224. Nonquota immigrant visas.
Sec. 225. Visa Review Board.

**CHAPTER 4—PROVISIONS RELATING TO ENTRY AND EXCLUSION**

Sec. 231. Lists of aliens and citizen passengers arriving or departing; record of resident aliens and citizens leaving permanently for foreign country.
Sec. 232. Detention of aliens for observation and examination.
Sec. 233. Temporary removal for examination upon arrival.
Sec. 234. Physical and mental examination.
Sec. 235. Inspection by immigrant officers.
Sec. 236. Exclusion of aliens.
Sec. 237. Immediate deportation of aliens excluded from admission or entering in violation of law.
Sec. 238. Entry through or from foreign contiguous territory and adjacent islands; landing stations.
Sec. 239. Designation of ports of entry for aliens arriving by civil aircraft.
Sec. 240. Records of admission.

**CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS**

Sec. 241. General classes of deportable aliens.
Sec. 242. Apprehension and deportation of aliens.
Sec. 243. Countries to which aliens shall be deported; cost of deportation.
Sec. 244. Suspension of deportation; voluntary departure.
Sec. 245. Adjustment of status of nonimmigrant to that of person admitted for permanent residence.
Sec. 246. Recision of adjustment of status.
Sec. 247. Adjustment of status of certain resident aliens to nonimmigrant status.
Sec. 248. Change of nonimmigrant classification.
Sec. 249. Record of admission for permanent residence in the case of certain aliens who entered prior to July 1, 1924.
Sec. 250. Removal of aliens who have fallen into distress.

**CHAPTER 6—SPECIAL PROVISIONS RELATING TO ALIEN CREWMEN**

Sec. 251. Lists of alien crewmen; reports of illegal landings.
Sec. 252. Conditional permits to land temporarily.
Sec. 253. Hospital treatment of alien crewmen afflicted with certain diseases.
Sec. 254. Control of alien crewmen.
Sec. 255. Employment on passenger vessels of aliens afflicted with certain disabilities.
Sec. 256. Discharge of alien crewmen.
Sec. 257. Bringing in alien crewmen into United States with intent to evade immigration laws.

**CHAPTER 7—REGISTRATION OF ALIENS**

Sec. 261. Aliens seeking entry into the United States.
Sec. 262. Registration of aliens in the United States.
Sec. 263. Provisions governing registration of special groups.
Sec. 264. Forms and procedure.
Sec. 265. Notices of change of address.
Sec. 266. Penalties.

3

### CHAPTER 8—GENERAL PENALTY PROVISIONS

Sec. 271. Unauthorized landing of vessels; prevention of unauthorized landing of aliens.
Sec. 272. Bringing in alien subject to disability or afflicted with disease.
Sec. 273. Unlawful bringing of aliens into the United States.
Sec. 274. Bringing in and harboring certain aliens.
Sec. 275. Entry of alien at improper time or place; misrepresentation and concealment of facts.
Sec. 276. Reentry of deported alien.
Sec. 277. Aiding or assisting subversive alien to enter the United States.
Sec. 278. Importation of aliens for immoral purposes.
Sec. 279. Jurisdiction of district courts.
Sec. 280. Collection of penalties and expenses.

### CHAPTER 9—MISCELLANEOUS

Sec. 281. Schedule of fees.
Sec. 282. Printing of reentry permits and blank forms of manifests and crew lists.
Sec. 283. Travel expenses and expense of transporting remains of immigration officers and employees who die outside the United States.
Sec. 284. Members of the Armed Forces.
Sec. 285. Disposal of privileges at immigrant stations.
Sec. 286. Disposition of moneys collected under the provisions of this title.
Sec. 287. Powers of immigration officers and employees.
Sec. 288. Local jurisdiction over immigrant stations.
Sec. 289. American Indians born in Canada.
Sec. 290. Central file; information from other departments and agencies.
Sec. 291. Burden of proof.
Sec. 292. Right to counsel.

## TITLE III—NATIONALITY AND NATURALIZATION

### CHAPTER 1—NATIONALITY AT BIRTH AND BY COLLECTIVE NATURALIZATION

Sec. 301. Nationals and citizens at birth.
Sec. 302. Persons born in Puerto Rico.
Sec. 303. Persons born in the Canal Zone.
Sec. 304. Persons born in Alaska.
Sec. 305. Persons born in Hawaii.
Sec. 306. Persons living in and born in the Virgin Islands.
Sec. 307. Persons living in and born in Guam.
Sec. 308. Nationals but not citizens at birth.
Sec. 309. Children born out of wedlock.

### CHAPTER 2—NATIONALITY THROUGH NATURALIZATION

Sec. 310. Jurisdiction to naturalize.
Sec. 311. Eligibility for naturalization.
Sec. 312. Requirements as to understanding the English language, history, principles and form of government of the United States.
Sec. 313. Prohibition upon the naturalization of persons opposed to government or law, or who favor totalitarian forms of government.
Sec. 314. Ineligibility to naturalization of deserters from the Armed Forces of the United States.
Sec. 315. Alien relieved from training and service in the Armed Forces of the United States because of alienage barred from citizenship.
Sec. 316. Requirements as to residence, good moral character, attachment to the principles of the Constitution, and favorable disposition to the United States.
Sec. 317. Temporary absence of persons performing religious duties.
Sec. 318. Prerequisites to naturalization—burden of proof.
Sec. 319. Married persons.
Sec. 320. Children born outside of United States of one alien and one citizen parent.
Sec. 321. Children born outside of United States of alien parent.

4

CHAPTER 2—NATIONALITY THROUGH NATURALIZATION—continued

Sec. 322. Child born outside of United States; naturalization on petition of citizen parent; requirements and exemptions.
Sec. 323. Children adopted by United States citizens.
Sec. 324. Former citizens regaining United States citizenship.
Sec. 325. Nationals but not citizens of the United States; residence within outlying possessions.
Sec. 326. Resident Philippine citizens excepted from certain requirements.
Sec. 327. Former United States citizens losing citizenship by entering the armed forces of foreign countries during World War II.
Sec. 328. Naturalization through service in the Armed Forces of the United States.
Sec. 329. Naturalization through active-duty service in Armed Forces during World War I or World War II or the Korean hostilities.
Sec. 330. Constructive residence through service on certain United States vessels.
Sec. 331. Alien enemies; naturalization under specified conditions and procedure.
Sec. 332. Procedural and administrative provisions; executive functions.
Sec. 333. Photographs.
Sec. 334. Petition for naturalization; declaration of intention.
Sec. 335. Investigation of petitioners; preliminary examinations on petitions.
Sec. 336. Final hearing in open court; examination of petitioner before the court.
Sec. 337. Oath of renunciation and allegiance.
Sec. 338. Certificate of naturalization; contents.
Sec. 339. Functions and duties of clerks.
Sec. 340. Revocation of naturalization.
Sec. 341. Certificates of citizenship; procedure.
Sec. 342. Revocation of certificates not to affect citizenship status.
Sec. 343. Documents and copies issued by the Attorney General.
Sec. 344. Fiscal provisions.
Sec. 345. Mail relating to naturalization transmitted free of postage and registered.
Sec. 346. Publication and distribution of citizenship textbooks from naturalization fees.
Sec. 347. Compilation of naturalization statistics and payment for equipment.
Sec. 348. Admissibility in evidence of testimony as to statements voluntarily made to officers or employees in the course of their official duties.

CHAPTER 3—LOSS OF NATIONALITY

Sec. 349. Loss of nationality by native-born or naturalized citizen.
Sec. 350. Dual nationals; divestiture of foreign nationality.
Sec. 351. Restrictions on expatriation.
Sec. 352. Loss of nationality by naturalized national.
Sec. 353. Section 352 not effective as to certain persons.
Sec. 354. Unforeseen exigencies preventing return of United States nationals.
Sec. 355. Loss of American nationality through parent's expatriation; not effective until person attains age of twenty-five years.
Sec. 356. Nationality lost solely from performance of acts or fulfillment of conditions.
Sec. 357. Application of treaties; exceptions.

CHAPTER 4—MISCELLANEOUS

Sec. 358. Certificate of diplomatic or consular officer as to loss of American nationality.
Sec. 359. Certificate of nationality for a person not a naturalized citizen for use in proceedings of a foreign state.
Sec. 360. Judicial proceedings for declaration of United States nationality in event of denial of rights and privileges as national.

TITLE IV—MISCELLANEOUS

Sec. 401. Joint Congressional Committee.
Sec. 402. Amendments to other laws.
Sec. 403. Laws repealed.

5

TITLE IV—MISCELLANEOUS—Continued

Sec. 404. Authorization of appropriations.
Sec. 405. Savings clauses.
Sec. 406. Separability.
Sec. 407. Effective date.

# TITLE I—GENERAL

### DEFINITIONS

SEC. 101. (a) As used in this Act—

(1) The term "advocates" includes, but is not limited to, advises, recommends, furthers by overt act, and admits belief in.

(2) The term "alien" means any person not a citizen or national of the United States.

(3) The term "application for admission" has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa.

(4) The term "Attorney General" means the Attorney General of the United States.

(5) The term "border crossing identification card" means a document of identity bearing that designation issued to an alien who is lawfully admitted for permanent residence, or to an alien who is a resident in foreign contiguous territory, by a consular officer or an immigration officer for the purpose of crossing over the borders between the United States and foreign contiguous territory in accordance with such conditions for its issuance and use as may be prescribed by regulations.

(6) The term "clerk of court" means a clerk of a naturalization court.

(7) The terms "Commissioner" and "Deputy Commissioner" mean the Commissioner of Immigration and Naturalization and a Deputy Commissioner of Immigration and Naturalization, respectively.

(8) The term "consular officer" means any consular, diplomatic, or other officer of the United States designated under regulations prescribed under authority contained in this Act, for the purpose of issuing immigrant or nonimmigrant visas.  In cases of aliens, in the Canal Zone and the outlying possessions of the United States, the term "consular officer" means an officer designated by the Governor of the Panama Canal, or the governors of the outlying possessions, for the purpose of issuing immigrant or nonimmigrant visas under this Act.

(9) The term "crewman" means a person serving in good faith as such in any capacity required for normal operation and service on board a vessel or aircraft.

6

(10)  The term "diplomatic visa" means a nonimmigrant visa bearing that title and issued to a nonimmigrant in accordance with such regulations as the Secretary of State may prescribe.

(11)  The term "doctrine" includes, but is not limited to, policies, practices, purposes, aims, or procedures.

(12)  The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws, or be subject to the provisions of sections 211 (a), or 212 (a), if the alien proves to the satisfaction of the Attorney General (A) that he is returning after a temporary absence in foreign contiguous territory to an unrelinquished domicile in the United States, or (B) that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided*, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

(13)  The term "foreign state" includes outlying possessions of a foreign state, but self-governing dominions or territories under mandate or trusteeship shall be regarded as separate foreign states.

(14)  The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

(A)  (i) an ambassador, public minister, or career diplomatic or consular officer who has been accredited by a foreign government recognized de jure by the United States and who is accepted by the President or by the Secretary of State, and the members of the alien's immediate family;

(ii)  upon a basis of reciprocity, other officials and employees who have been accredited by a foreign government recognized de jure by the United States, who are accepted by the Secretary of State, and the members of their immediate families; and

(iii)  upon a basis of reciprocity, attendants, servants, personal employees, and members of their immediate families, of the officials and employees who have a nonimmigrant status under (i) and (ii) above;

(B) an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) who is visiting the United States temporarily for business or temporarily for pleasure, and who has a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period;

(C) an alien in immediate and continuous transit through the United States, or an alien who qualifies as a person entitled to pass in transit to and from the United Nations Headquarters District and foreign countries, under the provisions of paragraphs (3), (4), and (5) of section 11 of the Headquarters Agreement with the United Nations (61 Stat. 758);

(D) an alien crewman serving in good faith as such in any capacity required for normal operation and service on board a vessel (other than a fishing vessel having its home port or an operating base in the United States) or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft;

(E) an alien entitled to enter the United States under and in pursuance of the provisions of a treaty of commerce and navigation between the United States and the foreign state of which he is a national, and the spouse and children of any such alien if accompanying or following to join him: (i) solely to carry on substantial trade principally between the United States and the foreign state of which he is a national; or (ii) solely to develop and direct the operations of an enterprise in which he has invested, or of an enterprise in which he is actively in the process of investing, a substantial amount of capital;

(F) an alien who (i) is a bona fide student admitted or accepted for admission by an established institution of learning or other recognized place of study for the purpose of pursuing a full course of study; (ii) has a passport valid for a minimum period of six months from the date of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed

to and enter some other country during such period; and (iii) seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning or other recognized place of study in the United States, particularly designated by him and approved by the Attorney General after consultation with the Office of Education of the United States, which institution or place of study shall certify that such alien has been admitted or accepted for admission for the purpose of pursuing a full course of study and shall have agreed to report to the Attorney General the termination of attendance of such alien, and if any such institution or place of study fails to make reports promptly the approval shall be withdrawn;

(G) (i) a designated principal resident representative of a foreign government recognized de jure by the United States, which foreign government is a member of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669), accredited resident members of the staff of such representative, and members of his or their immediate family;

(ii) other accredited representatives of such a foreign government to such international organizations, and the members of their immediate families;

(iii) an alien able to qualify under (i) or (ii) above except for the fact that the government of which such alien is an accredited representative is not recognized de jure by the United States, or that the government of which he is an accredited representative is not a member of such international organization, and the members of his immediate family;

(iv) officers, or employees of such international organizations, and the members of their immediate families;

(v) attendants, servants, and personal employees of any such representative, officer, or employee, and the members of the immediate families of such attendants, servants, and personal employees;

(H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform temporary services of an exceptional nature

requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country; or (iii) who is coming temporarily to the United States as an industrial trainee;

(I) upon a basis of reciprocity, an alien who is a bona fide representative of foreign press, radio, film, or other foreign information media, who seeks to enter the United States solely to engage in such vocation, and the spouse and children of such a representative, if accompanying or following to join him.

(15) The term "immigrant visa" means an immigrant visa required by this Act and properly issued by a consular officer to an eligible immigrant under the provisions of this Act.

(16) The term "immigration laws" includes this Act and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, or expulsion of aliens.

(17) The term "immigration officer" means any employee or class of employees of the Service or of the United States designated by the Attorney General, individually or by regulation, to perform the functions of an immigration officer specified by this Act or any section thereof.

(18) The term "ineligible to citizenship," when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3 (a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4 (a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts.

(19) The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

(20) The term "national" means a person owing permanent allegiance to a state.

(21) The term "national of the United States" means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.

(22)  The term "naturalization" means the conferring of nationality of a state upon a person after birth, by any means whatsoever.

(23)  The term "naturalization court," unless otherwise particularly described, means a court authorized by section 310 (a) of title III to exercise naturalization jurisdiction.

(24)  The term "noncombatant service" shall not include service in which the individual is not subject to military discipline, court martial, or does not wear the uniform of any branch of the armed forces.

(25)  The term "nonimmigrant visa" means a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in this Act.

(26)  The term "nonquota immigrant" means—

(A)  an immigrant who is the child or the spouse of a citizen of the United States;

(B)  an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad;

(C)  an immigrant who was born in an independent country, colony, or dependent area situated in the Western Hemisphere, and the spouse or the child of any such immigrant, if accompanying or following to join him;

(D)  an immigrant who was a citizen of the United States and may, under section 324 (a) or 327 of title III, apply for reacquisition of citizenship;

(E)  an immigrant who on the effective date of this Act (i) was a former citizen of the United States and was expatriated through the expatriation of his parent or parents, and (ii) had not acquired the nationality of another country by any affirmative act other than the expatriation of his parent or parents, and who is under the age of twenty-five years at the time of admission to the United States, or an immigrant included within the second proviso to section 349 (a) (1) of title III;

(F)  (i) an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been carrying on the vocation of professor of a college, academy, seminary, or university and who seeks to enter the United States solely for the purpose of serving in a college, academy, seminary, or university, or an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been carrying on the vocation of minister of a religious denomination having a bona fide organization in the United States and who seeks

**11**

to enter the United States solely for the purpose of serving with such religious denomination; and (ii) the spouse or the child of any such immigrant, if accompanying or following to join him; or

(G) an immigrant who is an employee, or an honorably retired former employee, of the United States Government abroad, and who has performed faithful service for a total of fifteen years, or more, and his accompanying spouse and children: *Provided*, That the principal officer of a Foreign Service establishment, in his discretion, shall have recommended the granting of nonquota status to such alien in exceptional circumstances and the Secretary of State approves such recommendation and finds that it is in the national interest to grant such status;

(H) an immigrant who is the parent of a citizen of the United States;

(I) an immigrant who—

(i) is under eighteen years of age; and

(ii) (I) has been made an orphan by the death or disappearance of both parents, or

(II) has been abandoned or deserted by, or separated or lost from, both parents, or

(III) has only one parent due to the death or disappearance, or abandonment or desertion by, or separation from the other parent and the remaining parent is incapable of providing care for such child and agrees to release him for immigration and adoption; and

(iii) (I) is entering the United States for permanent residence with a father or mother by adoption, or

(II) is entering the United States for permanent residence with a near relative or with a person who is a citizen of the United States or an alien admitted to the United States for permanent residence, or is coming to the United States to a public or private agency approved by the Attorney General, and such relative, person, or agency gives assurances, satisfactory to the Attorney General, that adoption or guardianship proceedings will be initiated with respect to such child; and

(iv) with respect to whom assurances, satisfactory to the Attorney General, are given that such immigrant shall be properly cared for;

**12**

(J) an immigrant who is serving or has served honorably in any branch of the Armed Forces of the United States, and the spouse or the child of any such immigrant.

(27) The term "organization" means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation, or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together for joint action on any subject or subjects.

(28) The term "outlying possessions of the United States" means American Samoa and Swain's Island.

(29) The term "passport" means any travel document issued by competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the entry of the bearer into a foreign country.

(30) The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.

(31) The term "quota immigrant" means any immigrant who is not a nonquota immigrant. An alien who is not particularly specified in this Act as a nonquota immigrant or a nonimmigrant shall not be admitted or considered in any manner to be either a nonquota immigrant or a nonimmigrant notwithstanding his relationship to any individual who is so specified or by reason of being excepted from the operation of any other law regulating or forbidding immigration.

(32) Residence shall be considered continuous for the purposes of sections 350 and 352 of title III where there is a continuity of stay but not necessarily an uninterrupted physical presence in a foreign state or states or outside the United States.

(33 The term "Service" means the Immigration and Naturalization Service of the Department of Justice.

(34) The term "spouse", "wife", or "husband" do not include a spouse, wife, or husband by reason of any marriage ceremony where the contracting parties thereto are not physically present in the presence of each other, unless the marriage shall have been consummated.

(35) The term "State" includes (except as used in section 310 (a) of title III) Alaska, Hawaii, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands of the United States.

13

(36) The term "totalitarian party" means an organization which advocates the establishment in the United States of a totalitarian dictatorship or totalitarianism. The terms "totalitarian dictatorship" and "totalitarianism" mean and refer to systems of government not representative in fact, characterized by (A) the existence of a single political party, organized on a dictatorial basis, with so close an identity between such party and its policies and the governmental policies of the country in which it exists, that the party and the government constitute an indistinguishable unit, and (B) the forcible suppression of opposition to such party.

(37) The term "United States", except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.

(38) The term "unmarried", when used in reference to any individual as of any time, means an individual who at such time is not married, whether or not previously married.

(39) The term "world communism" means a revolutionary movement, the purpose of which is to establish eventually a Communist totalitarian dictatorship in any or all the countries of the world through the medium of an internationally coordinated Communist political movement.

(b) As used in titles I and II—

(1) The term "child" means an unmarried person under twenty-one years of age who is—

    (A) a legitimate child; or

    (B) a stepchild, provided the child had not reached the age of eighteen years at the time the marriage creating the status of stepchild occurred; or

    (C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

(2) The terms "parent", "father", or "mother" mean a parent, father, or mother only where the relationship exists by reason of any of the circumstances set forth in (1) above.

(3) The term "person" means an individual or an organization.

(4) The term "special inquiry officer" means any immigration

14

officer who the Attorney General deems specially qualified to conduct specified classes of proceedings, in whole or in part, required by this Act to be conducted by or before a special inquiry officer and who is designated and selected by the Attorney General, individually or by regulation, to conduct such proceedings. Such special inquiry officer shall be subject to such supervision and shall perform such duties, not inconsistent with this Act, as the Attorney General shall prescribe.

(5) The term "adjacent islands" includes Saint Pierre, Miquelon, Cuba, the Dominican Republic, Haiti, Bermuda, the Bahamas, Barbados, Jamaica, and Windward and Leward Islands, Trinidad, Martinique, and other British, French, and Netherlands territory or possessions in or bordering on the Caribbean Sea.

(c) As used in title III—

(1) The term "child" means an unmarried person under twenty-one years of age and includes a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in the United States or elsewhere, and, except as otherwise provided in sections 320, 321, 322, and 323 of title III, a child adopted in the United States, if such legitimation or adoption takes place before the child reaches the age of eighteen years, and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

(2) The terms "parent", "father", and "mother" include in the case of a posthumous child a deceased parent, father, and mother.

(d) As used in chapter 3 of title III—

(1) The term "veteran" means a person who served in the armed forces of the United States at any time in an active-duty status during the period from April 21, 1898, to August 12, 1898, or from April 6, 1917, to November 11, 1918, or from December 7, 1941, to December 31, 1946, or from June 25, 1950, to such date as the President shall by proclamation prescribe, all dates inclusive, and who was discharged therefrom under honorable conditions. The records of the armed forces shall be conclusive as to type of a discharge and as to whether the conditions under which a discharge was given were honorable.

(2) (A) The term "Spanish-American War" relates to the period from April 21, 1898, to August 12, 1898; (B) the term "World War I" relates to the period from April 6, 1917, to November 11, 1918; and (C) the term "World War II" relates to the period from December 7, 1941, to December 31, 1946, all dates inclusive.

15

(e) For the purposes of this Act—

(1) The giving, loaning, or promising of support or of money or any other thing of value to be used for advocating any doctrine shall be presumed to constitute the advocating of such doctrine; but nothing in this paragraph shall be construed as an exclusive definition of advocating.

(2) The giving, loaning, or promising of support or of money or any other thing of value for any purpose to any organization shall be presumed to constitute affiliation therewith; but nothing in this paragraph shall be construed as an exclusive definition of affiliation.

(3) Advocating the economic, international, and governmental doctrines of world communism means advocating the establishment of a totalitarian Communist dictatorship in any or all of the countries of the world through the medium of an internationally coordinated Communist movement.

(f) For the purposes of this Act any alien ordered deported (whether before or after the enactment of this Act) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

APPLICABILITY OF TITLE II TO CERTAIN NONIMMIGRANTS

SEC. 102. Except as otherwise provided in this Act, for so long as they continue in the nonimmigrant classes enumerated in this section, the provisions of this Act relating to ineligibility to receive visas and the exclusion or deportation of aliens shall not be construed to apply to nonimmigrants—

(1) within the class described in paragraph (15) (A) (i) of section 101 (a), except those provisions relating to reasonable requirements of passports and visas as a means of identification and documentation necessary to establish their qualifications under such paragraph (15) (A) (i), and, under such rules and regulations as the President may deem to be necessary, the provisions of paragraph (27) of section 212 (a);

(2) within the class described in paragraph (15) (G) (i) of section 101 (a), except those provisions relating to reasonable requirements of passports and visas as a means of identification and documentation necessary to establish their qualifications under such paragraph (15) (G) (i), and the provisions of paragraph (27) of section 212 (a); and

16

(3) within the classes described in paragraphs (15) (A) (ii), (15) (G) (ii), (15) (G) (iii), or (15) (G) (iv) of section 101 (a), except those provisions relating to reasonable requirements of passports and visas as a means of identification and documentation necessary to establish their qualifications under such paragraphs, and the provisions of paragraphs (27) and (29) of section 212 (a).

POWERS AND DUTIES OF THE ATTORNEY GENERAL AND THE COMMISSIONER

SEC. 103. (a) The Attorney General shall be charged with the administration and enforcement of this Act and all other laws relating to the immigration and naturalization of aliens, except insofar as this Act or such laws relate to the powers, functions, and duties conferred upon the President, the Board of Immigration Appeals, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: *Provided, however,* That determination and ruling by the Attorney General with respect to all questions of law shall be controlling. He shall have control, direction, and supervision of all employees and of all the files and records of the Service. He shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this Act. He is authorized, in accordance with the civil-service laws and regulations and the Classification Act of 1949, to appoint such employees of the Service as he deems necessary, and to delegate to them or to any officer or employee of the Department of Justice in his discretion any of the duties and powers imposed upon him in this Act; he may require or authorize any employee of the Service or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder upon any other employee of the Service. He shall have the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens and shall, in his discretion, appoint for that purpose such number of employees of the Service as to him shall appear necessary and proper. He is authorized to confer or impose upon any employee of the United States, with the consent of the head of the Department or other independent establishment under whose jurisdiction the employee is serving, any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder upon officers or employees of the Service. He may, with the concurrence of the Secre-

tary of State, establish offices of the Service in foreign countries; and, after consultation with the Secretary of State, he may, whenever in his judgment such action may be necessary to accomplish the purposes of this Act, detail employees of the Service for duty in foreign countries.

(b) The Commissioner shall be a citizen of the United States and shall be appointed by the President, by and with the advice and consent of the Senate, and shall receive compensation at the rate of $17,500 per annum.  He shall be charged with any and all responsibilities and authority in the administration of the Service and of this Act which are conferred upon the Attorney General as may be delegated to him by the Attorney General or which may be prescribed by the Attorney General.

### POWERS AND DUTIES OF THE SECRETARY OF STATE

SEC. 104. (a) The Secretary of State shall be charged with the administration of all powers, functions, and duties vested in the Department of State or any officer or employee of the Department or of the Foreign Service of the United States by this Act and all other immigration and naturalization laws.  In executing such powers, functions, and duties, the Secretary of State is authorized (1) to prescribe such rules and regulations and perform such other acts as he deems necessary therefor, and (2) to delegate any of such powers, functions, and duties to any officer or employee of the Department of State or of the Foreign Service of the United States or, with the consent of the head of the agency concerned, to any officer or employee under the jurisdiction of any other agency of the United States.

(b) The Secretary of State is authorized to appoint an additional officer at a salary of not to exceed that fixed by law for Grade 18 of the classified civil service to administer such of the powers, functions, and duties vested in the Department of State or in any officer or employee of the Department or of the Foreign Service of the United States by this or any other Act, as the Secretary of State may provide.

### BOARD OF IMMIGRATION APPEALS

SEC. 105. (a) There is hereby established a Board of Immigration Appeals which shall be composed of five members to be appointed by the President by and with the advice and consent of the Senate.  The Board shall be a part of the Department of Justice but, except for administrative purposes, shall not be subject to the supervision or control of any officer or employee of the Department.  The President shall, at the time of appointment, designate one member to serve as

Chairman. Each member of the Board shall be appointed for a term of five years and shall serve until his successor is appointed and qualified, except that, of the members first taking office, one shall be appointed for a term of one year, one for a term of two years, one for a term of three years, one for a term of four years, and one for a term of five years. Members of the Board shall receive compensation in accordance with the Classification Act of 1949.

(b) Notwithstanding any other provision of this Act, the Board of Immigration Appeals shall have jurisdiction and authority to review, upon appeal by an alien or by the Attorney General, any decision of the Attorney General, of the Commissioner, or of any officer or employee of the Service in proceedings relating to exclusion, deportation, petitions and applications for determination or adjustment of status, applications for suspension of deportation, applications for waivers of grounds of exclusion or deportation, stays, and revocation of status previously granted. The Board shall issue such rules and regulations as may be necessary to enable it to carry out the authority conferred upon it by this subsection.

(c) A quorum of the Board shall consist of three members. The Board may appoint and fix the compensation of such technical, clerical, and other assistants as it deems necessary, in accordance with the civil-service laws and the Classification Act of 1949.

(d) The Board shall have authority to promulgate rules of practice governing the proceedings before it. Except in the case of proceedings under section 235 (c), the provisions of the Administrative Procedure Act shall apply to all proceedings of the Board.

LIAISON WITH INTERNAL SECURITY OFFICERS

SEC. 106. The Commissioner shall have authority to maintain direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this Act in the interest of the internal security of the United States.

## TITLE II—IMMIGRATION

### CHAPTER 1—QUOTA SYSTEM

NUMERICAL LIMITATIONS; ANNUAL QUOTA BASED UPON NATIONAL ORIGIN; MINIMUM QUOTAS

SEC. 201. (a) The annual quota of any quota area shall be one-sixth of 1 percentum of the number of inhabitants in the continental United

States in 1950 attributable by national origin to such quota area: *Provided,* That the minimum quota for any quota area shall be one hundred.

(b) The determination of the annual quota of any quota area shall be made by the Secretary of State, the Secretary of Commerce, and the Attorney General, jointly. Such officials shall, jointly, report to the President the quota of each quota area, and the President shall proclaim and make known the quotas so reported. Such determination and report shall be made and such proclamation shall be issued as soon as practicable after the date of enactment of this Act. Quotas proclaimed therein shall take effect on the first day of the fiscal year, or the next fiscal half year, next following the expiration of six months after the date of the proclamation, and until such date the existing quotas proclaimed under the Immigration Act of 1924 shall remain in effect. After the making of a proclamation under this subsection the quotas proclaimed therein shall continue with the same effect as if specifically stated herein and shall be final and conclusive for every purpose, except (1) insofar as it is made to appear to the satisfaction of such officials and proclaimed by the President, that an error of fact has occurred in such determination or in such proclamation, or (2) in the case provided for in section 202 (d).

(c) There shall be issued to quota immigrants chargeable to any quota (1) no more immigrant visas in any fiscal year than the quota for such year, and (2) in any calendar month of any fiscal year, no more immigrant visas than 20 per centum of the quota for such year; except that during the last two months of any fiscal year immigrant visas may be issued without regard to the 20 per centum limitation contained herein. The President may during the existence of any national emergency proclaimed by him increase the number of immigrant visas which may be issued in any calendar month without increasing the total number of quota immigrant visas which may be issued in any fiscal year.

(d) Nothing in this Act shall prevent the issuance (without increasing the total number of (quota) immigrant visas which may be issued) of an immigrant visa to an immigrant as a quota immigrant even though he is a nonquota immigrant.

(e) The annual quotas of each quota area proclaimed under this Act shall not be reduced by any quota numbers which have been ordered to be deducted from the annual quotas authorized prior to the effective date of the annual quotas proclaimed under this Act under—

**20**

(1)  section 19 (c) of the Immigration Act of 1917, as amended;

(2)  the Displaced Persons Act of 1948, as amended; or

(3)  any other Act of Congress enacted prior to the effective date of the quotas proclaimed under this Act.

DETERMINATION OF QUOTA TO WHICH AN IMMIGRANT IS CHARGEABLE

SEC. 202.  (a) Each independent country, self-governing dominion, mandated territory, and territory under the international trusteeship system of the United Nations, other than the United States and its outlying possessions and the independent countries, colonies, or dependent areas described in section 101 (a) (27) (C), shall be treated as a separate quota area when approved by the Secretary of State. All other inhabited lands shall be attributed to a quota area specified by the Secretary of State.  For the purposes of this Act, the annual quota to which an immigrant is chargeable shall be determined by birth within a quota area, except that—

(1)  an alien child, when accompanied by his alien parent or parents may be charged to the quota of the accompanying parent or of either accompanying parent if such parent has received or would be qualified for an immigrant visa, if necessary to prevent the separation of the child from the accompanying parent or parents, and if the quota to which such parent has been or would be chargeable is not exhausted for that fiscal year;

(2)  if an alien is chargeable to a different quota from that of his accompanying spouse, the quota to which such alien is chargeable may, if necessary to prevent the separation of husband and wife, be determined by the quota of the accompanying spouse, if such spouse has received or would be qualified for an immigrant visa and if the quota to which such spouse has been or would be chargeable is not exhausted for that fiscal year;

(3)  an alien child following to join a parent or parents lawfully admitted to the United States for permanent residence, or an alien following to join a spouse lawfully admitted to the United States for permanent residence, may be charged to the quota of either parent or the spouse so admitted, if necessary to prevent the separation of the child from the parent or parents, or the separation of husband and wife, and if the quota to which the parent or spouse, as the case may be, was charged is not exhausted for that fiscal year;

(4)  an alien born in the United States shall be considered as

having been born in the country of which he is a citizen or subject, or if he is not a citizen or subject of any country then in the last foreign country in which he had his residence as determined by the consular officer; and

(5) an alien born within any quota area in which neither of his parents was born and in which neither of his parents had a residence at the time of such alien's birth may be charged to the quota area of either parent.

(b) Any immigrant born in a colony or other component or dependent area of a governing country for which no separate or specific quota has been established, unless a nonquota immigrant as provided in section 101 (a) (27) of this Act, shall be chargeable to the quota of the governing country.

(c) The provision of an immigration quota for a quota area shall not constitute recognition by the United States of the political transfer of territory from one country to another, or recognition of a government not recognized by the United States.

(d) After the determination of quotas has been made as provided in section 201, revision of the quotas shall be made by the Secretary of State, the Secretary of Commerce, and the Attorney General, jointly, whenever necessary, to provide for any change of boundaries resulting in transfer of territory from one sovereignty to another, a change of administrative arrangements of a colony or other dependent area, or any other political change, requiring a change in the list of quota areas or of the territorial limits thereof. In the case of any change in the territorial limits of quota areas, not requiring a change in the quotas for such areas, the Secretary of State shall, upon recognition of such change, issue appropriate instructions to all consular officers concerning the change in the territorial limits of the quota areas involved.

## ALLOCATION OF IMMIGRANT VISAS WITHIN QUOTAS

Sec. 203. (a) Immigrant visas to quota immigrants shall be alloted in each fiscal year as follows:

(1) The first 50 per centum of the quota of each quota area for such year shall be made available for the issuance of immigrant visas (A) to qualified quota immigrants whose services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, specialized experience, or exceptional ability of such immigrants and to be substantially beneficial prospectively to the national

economy, cultural interests, or welfare of the United States, and (B) to qualified quota immigrants who are the spouse or children of any immigrant described in clause (A) if accompanying him.

(2) The next 20 per centum of the quota for each quota area for such year shall be made available for the issuance of immigrant visas to qualified quota immigrants who are the spouses or the children of aliens lawfully admitted for permanent residence.

(3) The remaining 30 per centum of the quota for each quota area for such year, plus any portion of such quota not required for the issuance of immigrant visas to the classes specified in paragraphs (1) and (2), shall be made available for the issuance of immigrant visas to other qualified quota immigrants chargeable to such quota. Qualified quota immigrants of each quota area who are the brothers, sisters, sons, or daughters of citizens of the United States, or who are the parents of an alien or aliens lawfully admitted for permanent residence, shall be entitled to a preference of not exceeding 50 per centum of the immigrant visas available for issuance for such quota area under this paragraph.

(b) Quota immigrant visas issued pursuant to paragraph (1) of subsection (a) shall, in the case of each quota area, be issued to eligible quota immigrants in the order in which a petition on behalf of each such immigrant is filed with the Attorney General as provided in section 204; and shall be issued in the first calendar month after receipt of notice of approval of such petition in which a quota number is available for an immigrant chargeable to such quota area.

(c) Quota immigrant visas issued to aliens in the classes designated in paragraphs (2) and (3) of subsection (a) shall, in the case of each quota, be issued to qualified quota immigrants strictly in the chronological order in which such immigrants are registered in each class on quota waiting lists which shall be maintained for each quota in accordance with regulations prescribed by the Secretary of State.

(d) In determining the order for consideration of applications for quota immigrant visas under subsection (a), consideration shall be given first to applications under paragraph (1), second to applications under paragraph (2), and third to applications under paragraph (3).

(e) Every immigrant shall be presumed to be a quota immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and to the immigration officers, at the time of application for admission, that he is a nonquota immigrant.

## 23

Every quota immigrant shall be presumed to be a nonpreference quota immigrant until he establishes to the satisfaction of the consular officer and the immigration officers that he is entitled to a preference quota status under paragraph (1), (2), or (3) of subsection (a).

### POOLING OF UNISSUED AND UNUSED QUOTA NUMBERS

Sec. 203A. All quota numbers available during any fiscal year which are not actually issued during such fiscal year, and all quota numbers which were issued in such fiscal year or in a previous year and expired during such fiscal year without being utilized, shall be assigned to a general quota pool and shall be available, without reference to national origins, for issuance at any time during the fiscal year following such assignment as follows:

(a) Family reunion preferences: Twenty-five per centum of such pooled quota numbers or such smaller percentage as shall be found by the Secretary of State to be sufficient properly to care for pending applications, shall be available, in such order as may be determined by the Secretary of State, to adult children, brothers and sisters, and other blood relatives (within the third degree of consanguinity computed according to the rules of the common law) of citizens, and to spouses, children (including those over twenty-one years of age), parents, brothers and sisters, and other blood relatives (within the third degree of consanguinity computed according to the rules of the common law) of alien residents of the United States who have been lawfully admitted for permanent residence.

(b) National need preferences: Twenty-five per centum of such pooled quota numbers, or such smaller percentage as shall be found by the Secretary of State to be sufficient properly to care for pending applications, shall be available for persons who because of their high education, technical training, specialized experience, or exceptional ability, are urgently needed in the United States (so far as such needs have not been met within the original quotas), or are likely to be of special benefit to the national economy, cultural interests, or welfare of the United States as determined by the Secretary of State, on the basis of recommendations made by the Secretary of Defense and the Secretary of Labor, or by such advisory committees, representing industry and labor, as the Secretary of Defense and the Secretary of Labor may establish.

(c) Persecute preferences: Twenty-five per centum of such pooled quota numbers, or such smaller percentages as shall be considered by the Secretary of State to be sufficient properly to care for pending

**24**

applications, shall be available, in such order as may be determined by the Secretary of State, to persons (including persons temporarily within the jurisdiction of the United States) who have been persecuted abroad in the country of their national origin or in the place of their last residence on religious or racial grounds or because of their adherence to democratic beliefs or because of their opposition to totalitarianism or dictatorship, or who have reason to fear such persecution, and who have been classified as 'persecutees' or 'possible persecutees' in accordance with such procedures and after such investigations as the Secretary of State shall order.

(d) Nonpreference cases: Pooled quota numbers not required for issuance under the foregoing preferences shall be available, on application to the Secretary of State by an American citizen or a reputable American organization, to other immigrants, whose cases because of special circumstances or hardship merit special consideration, in the order of their registration.

PROCEDURE FOR GRANTING IMMIGRATION STATUS UNDER SECTION 101 (a) (27) (F) (i) OR SECTION 203 (a) (1) (A)

SEC. 204. (a) In the case of any alien claiming in his application for an immigrant visa to be entitled to an immigrant status under section 101 (a) (27) (F) (i) or section 203 (a) (1) (A), the consular officer shall not grant such status until he has been authorized to do so as provided in this section.

(b) Any person, institution, firm, organization, or governmental agency desiring to have an alien classified as an immigrant under section 101 (a) (27) (F) (i) or section 203 (a) (1) (A) shall file a petition with the Attorney General for such classification of the alien. The petition shall be in such form as the Attorney General may by regulations prescribe and shall state the basis for the need of the services of such alien and contain such additional information and be supported by such documentary evidence as may be required by the Attorney General. The petition shall be made under oath administered by any individual having authority to administer oaths, if executed in the United States, but, if executed outside the United States, administered by a consular officer.

(c) After an investigation of the facts in each case and after consultation with appropriate agencies of the Government, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in respect of whom the petition is made is eligible for an immigrant status under section 101 (a) (27) (F) (i)

or section 203 (a) (1) (A), approve the petition and forward one copy thereof to the Department of State.  The Secretary of State shall then authorize the consular officer concerned to grant such immigrant status.

(d)  Nothing in this section shall be construed to entitle an immigrant, in respect of whom a petition under this section is approved, to enter the United States as an immigrant under section 101 (a) (27) (F) (i) or section 203 (a) (1) (A) if upon his arrival at a port of entry in the United States he is found not to be entitled to such classification.

PROCEDURE FOR GRANTING NONQUOTA STATUS OR PREFERENCE BY REASON OF RELATIONSHIP

SEC. 205. (a) In the case of any alien claiming in his application for an immigrant visa to be entitled to a nonquota immigrant status under section 101 (a) (27) (A) or section 101 (a) (27) (H), or to a quota immigrant status under section 203 (a) (2), or to a preference under section 203 (a) (3), the consular officer shall not grant such status or preference until he has been authorized to do so as provided in this section.

(b)  Any citizen of the United States claiming that any immigrant is his spouse or child and that such immigrant is entitled to a nonquota immigrant status under section 101 (a) (27) (A), or any citizen claiming that any immigrant is his parent and that such immigrant is entitled to a nonquota immigrant status under section 101 (a) (27) (H), or any alien lawfully admitted for permanent residence claiming that any immigrant is his spouse or child and that such immigrant is entitled to a quota immigrant status under section 203 (a) (2), or any citizen of the United States claiming that any immigrant is his brother, sister, son, or daughter, or any alien lawfully admitted for permanent residence claiming that any immigrant is his parent, and that such immigrant is entitled to a preference under section 203 (a) (3) may file a petition with the Attorney General.  The petition shall be in such form and shall contain such information and be supported by such documentary evidence as the Attorney General may by regulations prescribe.  The petition shall be made under oath administered by any individual having authority to administer oaths, if executed in the United States, but, if executed outside the United States, administered by a consular officer.

(c)  After an investigation of the facts in each case the Attorney General shall, if he determines the facts stated in the petition are true

and that the alien in respect of whom the petition is made is eligible for a nonquota immigrant status under section 101 (a) (27) (A), or section 101 (a) (27) (H), or for a quota immigrant status under section 203 (a) (2), or for a preference under section 203 (a) (3), approve the petition and forward one copy thereof to the Department of State.   The Secretary of State shall then authorize the consular officer concerned to grant the nonquota immigrant status, quota immigrant status, or preference, as the case may be.

(d) Nothing in this section shall be construed to entitle an immigrant, in respect of whom a petition under this section is approved, to enter the United States as a nonquota immigrant under section 101 (a) (27) (A) if upon his arrival at a port of entry in the United States he is found not to be entitled to such classification, or to enter the United States as a quota immigrant under section 203 (a) (2) if upon his arrival at a port of entry in the United States he is found not to be entitled to such classification, or to enter the United States as a preference quota immigrant under section 203 (a) (3) if upon his arrival at a port of entry in the United States he is found not to be entitled to such preference.

#### REVOCATION OF APPROVAL OF PETITIONS

SEC. 206. The Attorney General may, at any time, for good and sufficient cause, revoke the approval of any petition approved by him under section 204, section 205, or section 214 (c) of this title.   Such revocation shall be effective as of the date of approval of any such petition.   In no case, however, shall such revocation have effect unless there is mailed to the petitioner's last known address a notice of the revocation and unless notice of the revocation is communicated through the Secretary of State to the beneficiary of the petition before such beneficiary commences his journey to the United States.   If notice of revocation is not so given, and the beneficiary applies for admission to the United States, his admissibility shall be determined in the manner provided for by sections 235 and 236.

### CHAPTER 2—QUALIFICATIONS FOR ADMISSION OF ALIENS; TRAVEL CONTROL OF CITIZENS AND ALIENS

#### DOCUMENTARY REQUIREMENTS

SEC. 211. (a) No immigrant shall be admitted into the United States unless at the time of application for admission he (1) has a valid unexpired immigrant visa or was born subsequent to the issuance

of such immigrant visa of the accompanying parent, (2) is properly chargeable to the quota specified in the immigrant visa, (3) is a nonquota immigrant if specified as such in the immigrant visa, and (4) is of the proper status under the quota specified in the immigrant visa; and he is otherwise admissible under this Act.

(b) Notwithstanding the provisions of section 212 (a) (20) of this Act, in such cases or in such classes of cases and under such conditions as may be by regulations prescribed, otherwise admissible aliens lawfully admitted for permanent residence who depart from the United States temporarily may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, reentry permit or other documentation.

(c) The Attorney General may in his discretion, subject to subsection (d), admit to the United States any otherwise admissible immigrant not admissible under clause (2), (3), or (4) of subsection (a), if satisfied that such inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by, such immigrant prior to the departure of the vessel or aircraft from the last port outside the United States and outside foreign contiguous territory, or, in the case of an immigrant coming from foreign contiguous territory, prior to the application of the immigrant for admission.

(d) No quota immigrant within clause (2) or (3) of subsection (a) shall be admitted under subsection (c) if the entire number of immigrant visas which may be issued to quota immigrants under the same quota for the fiscal year, or the next fiscal year, has already been issued.  If such entire number of immigrant visas has not been issued, the Secretary of State, upon notification by the Attorney General of the admission under subsection (c) of a quota immigrant within clause (2) or (3) of subsection (a), shall reduce by one the number of immigrant visas which may be issued to quota immigrants under the same quota during the fiscal year in which such immigrant is admitted, or, if the entire number of immigrant visas which may be issued to quota immigrants under the same quota for the fiscal year has been issued, then during the next following fiscal year.

(e) Every alien making application for admission as an immigrant shall present a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General.

28

GENERAL CLASSES OF ALIENS INELIGIBLE TO RECEIVE VISAS AND EXCLUDED
FROM ADMISSION

SEC. 212. (a) Except as otherwise provided in this Act, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(1) Aliens who are feeble-minded;

(2) Aliens who are insane;

(3) Aliens who have had one or more attacks of insanity;

(4) Aliens afflicted with epilepsy or a mental defect;

(5) Aliens who are narcotic drug addicts or chronic alcoholics;

(6) Aliens who are afflicted with tuberculosis in any form, or with leprosy, or any dangerous contagious disease;

(7) Aliens not comprehended within any of the foregoing classes who are certified by the examining surgeon as having a physical defect, disease, or disability of such a nature that it may affect the ability of the alien to earn a living, unless the alien affirmatively establishes that he will not have to earn a living;

(8) Aliens who are paupers, professional beggars, or vagrants;

(9) Aliens who have been convicted of a crime involving moral turpitude (other than a purely political offense), or aliens who admit having committed such a crime; except that aliens who have committed only one such crime while under the age of eighteen years may be granted a visa and admitted if the crime was committed more than five years prior to the date of the application for a visa or other documentation, and more than five years prior to date of application for admission to the United States, unless the crime resulted in confinement in a prison or correctional institution, in which case such alien must have been released from such confinement more than five years prior to the date of the application for a visa or other documentation, and for admission, to the United States;

(10) Aliens who have been convicted of two or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the sentence to confinement actually imposed under the law was five years or more;

(11) Aliens who are polygamists or who practice polygamy, or advocate the practice of polygamy in the United States;

(12) Aliens who are prostitutes or who have engaged in prostitution, or aliens coming to the United States solely, principally, or incidentally to engage in prostitution; aliens who directly or

indirectly procure or attempt to procure, or who have procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution or for any other immoral purpose; and aliens who are or have been supported by, or receive or have received, in whole or in part, the proceeds of prostitution or aliens coming to the United States to engage in any other unlawful commercialized vice, whether or not related to prostitution;

(13) Aliens coming to the United States for the purpose of engaging in any immoral act;

(14) Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, if the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) sufficient workers in the United States who are able, willing, and qualified are available at the time (of application for a visa and for admission to the United States) and place (to which the alien is destined) to perform such skilled or unskilled labor, and (B) the employment of such aliens will displace some other persons from employment and adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply only to the following classes: (i) those aliens described in the nonpreference category of section 203 (a) (3), (ii) those aliens described in section 101 (a) (27) (C) (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), unless their services are determined by the Attorney General to be needed urgently in the United States because of the high education, technical training, specialized experience, or exceptional ability of such immigrants and to be substantially beneficail prospectively to the national economy, cultural interest or welfare of the United States; or (iii) those aliens described in section 101 (a) (27) (D) or (E), (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence) unless their services are determined by the Attorney General to be needed urgently in the United States because of high education, technical training, specialized experience, or exceptional ability of such immigrants and to be substantially beneficial prospectively to the national economy, cultural interest or welfare of the United States;

(15) Aliens who are likely to become public charges;

(16) Aliens who have been excluded from admission and deported on subversive, criminal, or immoral grounds and who again seek

30

admission within one year from the date of such deportation, unless prior to their reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their reapplying for admission;

(17) Aliens who have been arrested and deported, or who have fallen into distress and have been removed pursuant to this or any prior act, or who have been removed as alien enemies, or who have been removed at Government expense in lieu of deportation pursuant to section 242 (b), unless prior to their embarkation or reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their applying or reapplying for admission;

(18) Aliens who are stowaways;

(19) Any alien who attempts to procure or has procured a visa or other documentation, or attempts to obtain admission to the United States, by fraud or by willfully misrepresenting a material fact: *Provided*, That such misrepresentation shall not serve to exclude the alien under this Act or any other Act when it had its origin in a reasonable fear of persecution because of race, religion, or political opinions;

(20) Except as otherwise specifically provided in this Act, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, or a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 211 (e).

(21) Except as otherwise specifically provided in this Act, any quota immigrant at the time of application for admission whose visa has been issued without compliance with the provisions of section 203;

(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or persons who have departed from or who have remained outside the United States to avoid or evade training or service in the Armed Forces in time of war or a period declared by the President to be a national emergency, except aliens who were at the time of such application or departure nonimmigrant aliens;

(23) Any alien who has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, or who

**31**

has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative or preparation of opium or coca leaves, or isonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officers know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs.

(24) Aliens (other than those aliens who were born in independent countries, colonies, or dependent areas described in section 101 (a) (27) (C) and aliens described in section 101 (a) (27) (B)) who seek admission from foreign contiguous territory or adjacent islands, having arrived there on a vessel or aircraft of a nonsignatory line, or if signatory, a noncomplying transportation line under section 238 (a) and who have not resided for at least two years subsequent to such arrival in such territory or adjacent islands;

(25) Aliens (other than aliens who have been lawfully admitted for permanent residence and who are returning from a temporary visit abroad) over sixteen years of age, physically capable of reading, who cannot read and understand some language or dialect;

(26) Any nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid nonimmigrant visa or border crossing identification card;

(27) Aliens who seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States;

(28) Aliens who are, or at any time have been, members of any of the following classes:

(A) Aliens who are anarchists;

(B) Aliens who advocate or teach, or who are members of or affiliated with any organization that advocates or teaches, opposition to all organized government;

32

(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States, (ii) any other totalitarian party of the United States, (iii) the Communist Political Association, (iv) the Communist or any other totalitarian party of any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; or (v) any section, subsidiary, branch, affiliate, or subdivision of any such association or party, regardless of what name the group or organization may have used, may now bear, or may hereafter adopt: *Provided*, That nothing in this paragraph, or in any other provision of this Act, shall be construed as declaring that the Communist Party does not advocate the overthrow of the Government of the United States by force, violence, or other unconstitutional means;

(D) Aliens not within any of the other provisions of this paragraph who advocate the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, or who are members of or affiliated with any organization that advocates the economic international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, either through its own utterances or through any written or printed publications issued or published by or with the permission or consent of or under the authority of such organization or paid for by the funds of, or funds furnished by, such organization;

(E) Aliens not within any of the other provisions of this paragraph, who are members of or affiliated with any organization during the time it is registered or required to be registered under section 7 of the Subversive Activities Control Act of 1950, unless such aliens establish that they did not have knowledge or reason to believe at the time they became members of or affiliated with such an organization (and did not thereafter and prior to the date upon which such organization was so registered or so required to be registered have such knowledge or reason to believe) that such organization was a Communist organization;

(F) Aliens who advocate or teach or who are members of or affiliated with any organization that advocates or teaches (i) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law, or

(ii) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character; or (iii) the unlawful damage, injury, or destruction of property; or (iv) sabotage;

(G) Aliens who, in pursuance of any activities specified in subparagraphs (A) through (F), write or publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, publication, distribution, or display, any written or printed matter, advocating or teaching opposition to all organized government, or advocating or teaching, (i) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law; or (ii) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character; or (iii) the unlawful damage, injury, or destruction of property; or (iv) sabotage; or (v) the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship;

(H) Aliens who, in pursuance of any activities specified in subparagraphs (A) through (F), are members of or affiliated with any organization that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in paragraph (G);

(I) Any alien who is within any of the classes described in subparagraphs (A), (B), (C), (D), (E), (F), (G), and (H) of this paragraph because of membership in or affiliation with a party or organization or a section, subsidiary, branch, affiliate, or subdivision thereof, may, if not otherwise ineligible, be issued a visa if such alien establishes to the satisfaction of the consular officer when applying for a visa and the consular officer finds that

(i) such membership or affiliation is or was involuntary, or without knowledge of the aims or purposes of such party, organization, section, subsidiary, branch, affiliate, or subdivision, or is or was solely when under sixteen years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes, or (ii) (a) since the termination of such membership or affiliation, such alien is and has been, for at least five years prior to the date of the application for a visa, actively opposed to the doctrine, program, principles, and ideology of such party or organization or the section, subsidiary, branch, or affiliate or subdivision thereof, and (b) the admission of such alien into the United States would not be against the public interest. Any such alien to whom a visa has been issued under the provisions of this subparagraph may, if not otherwise ineligible, be admitted into the United States if he shall establish to the satisfaction of the Attorney General when applying for admission to the United States and the Attorney General finds that (iii) such membership or affiliation is or was involuntary or without knowledge of the aims or purposes of such party, organization, section, subsidiary, branch, affiliate, or subdivision, or is or was solely when under sixteen years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and when necessary for such purposes, or (iv) (a) since the termination of such membership or affiliation, such alien is and has been, for at least five years prior to the date of the application for admission, actively opposed to the doctrine, program, principles, and ideology of such party or organization or the section, subsidiary, branch, or affiliate or subdivision thereof, and (b) the admission of such alien into the United States would not be against the public interest. The Attorney General shall promptly make a detailed report to the Congress in the case of each alien who is or shall be admitted into the United States under (iv) of this subparagraph;

(29) Aliens with respect to whom there are reasonable grounds for believing that such aliens would, after entry, (A) engage in activities which would be prohibited by the laws of the United States relating to espionage, sabotage, public disorder, or in other activity subversive to the national security, or (B) engage in any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unconstitutional means;

(30)  Any alien, accompanying another alien ordered to be excluded and deported and certified to be helpless from sickness or mental or physical disability or infancy pursuant to section 237 (e), whose protection or guardianship is required by the alien ordered excluded and deported;

(31)  Any alien who at any time shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

(b)  The provisions of paragraph (25) of subsection (a) shall not be applicable to any alien who (1) is the parent, grandparent, spouse, daughter, or son of an admissible alien, or any alien lawfully admitted for permanent residence, or any citizen of the United States, if accompanying such admissible alien, or coming to join such citizen or alien lawfully admitted, and if otherwise admissible, or (2) proves that he is seeking admission to the United States to avoid religious persecution in the country of his last permanent residence, whether such persecution be evidenced by overt acts or by laws or governmental regulations that discriminate against such alien or the race to which he belongs because of his religious faith.  For the purpose of ascertaining whether an alien can read under paragraph (25) of subsection (a), the consular officers and immigration officers shall be furnished with slips of uniform size, prepared under direction of the Attorney General, each containing not less than thirty nor more than forty words in ordinary use, printed in plainly legible type, in one of the various languages or dialects of immigrants.  Each alien may designate the particular language or dialect in which he desires the examination to be made and shall be required to read and understand the words printed on the slip in such language or dialect.

(c)  Aliens who are returning after a temporary absence to an unrelinquished domicile of seven consecutive years may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) through (26) and paragraphs (30) and (31) of subsection (a).  Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211 (b).

(d)  (1)  The provisions of paragraphs (11) and (25) of subsection (a) shall not be applicable to any alien who in good faith is seeking to enter the United States as a nonimmigrant.

(2)  The provisions of paragraph (28) of subsection (a) of this section shall not be applicable to any alien who is seeking to enter the

36

United States temporarily as a nonimmigrant under paragraph (15) (A) (iii) or (15) (G) (v) of section 101 (a).

(3) Except as provided in this subsection, an alien (A) who is applying for a nonimmigrant visa and is ineligible for a visa under one or more of the paragraphs enumerated in subsection (a) (other than paragraphs (27) and (29)), may be granted such a visa and may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General, or (B) who is inadmissible under one or more of the paragraphs enumerated in subsection (a) (other than paragraphs (27) and (29)), but who is in possession of appropriate documents or is granted a waiver thereof and is seeking admission, may be admitted into the United States temporarily as a nonimmigrant in the discretion of the Attorney General.

(4) Either or both of the requirements of paragraph (26) of subsection (a) may be waived by the Attorney General and the Secretary of State acting jointly (A) on the basis of unforeseen emergency in individual cases, or (B) on the basis of reciprocity with respect to nationals of foreign contiguous territory or of adjacent islands and residents thereof having a common nationality with such nationals, or (C) in the case of aliens proceeding in immediate and continuous transit through the United States under contracts authorized in section 238 (d).

(5) The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

(6) The Attorney General may in his discretion admit into the United States any alien who is ineligible for admission solely because of a mental or physical condition, if he is satisfied (A) that such alien will be adequately cared for at private expense, (B) that the health and welfare of others will not be unduly jeopardized by the admission of such alien, and (C) that to deny admission to such alien would work a great hardship on a citizen or a person lawfully admitted for permanent residence, or who is seeking admission to the United States for permanent residence and is eligible for such admission.

(7) The Attorney General shall prescribe conditions, including exaction of such bonds as may be necessary, to regulate the admission of excludable aliens under paragraph (6) of this subsection and, to control and regulate the admission and return of excludable aliens applying for temporary admission under this subsection. The Attorney General shall make a detailed report to the Congress in any case in which he exercises his authority under paragraph (6) of this subsection, or under paragraph (3) of this subsection on behalf of any alien excludable under paragraphs (9), (10), and (28) of subsection (a).

(8) The provisions of subsection (a) of this section, except paragraphs (19), (20), (21), and (26), shall be applicable to any alien who shall leave the Canal Zone, Hawaii, Alaska, Guam, Puerto Rico, or the Virgin Islands of the United States or any outlying territory or possession of the United States, and who seeks to enter the continental United States or any other place under the jurisdiction of the United States: *Provided*, That persons who were admitted to Hawaii under the last sentence of section 8 (a) (1) of the Act of March 24, 1934, as amended (48 Stat. 456), and aliens who were admitted to Hawaii as nationals of the United States shall not be excepted by this paragraph from the application of paragraphs (19), (20), and (21) of subsection (a) of this section, unless they belong to a class declared to be nonquota immigrants under the provisions of section 101 (a) (27) of this Act, other than subparagraph (C) thereof, or unless they were admitted to Hawaii with an immigration visa. The Attorney General shall by regulations provide a method and procedure for the temporary admission to the United States of the aliens described in this proviso. Any alien described in this paragraph, who is excluded from admission to the United States, shall be immediately deported in the manner provided by section 237 (a) of this Act.

(9) Upon a basis of reciprocity accredited officials of foreign governments, their immediate families, attendants, servants, and employees may be admitted in immediate and continuous transit through the United States without regard to the provisions of this section except paragraphs (26), (27), and (29) of subsection (a) of this section.

(10) Notwithstanding the provisions of paragraph (9) of subsection (a), an alien who has committed a crime which, except for this paragraph, would render such alien ineligible to receive a visa

and inadmissible to the United States, shall be eligible to receive a visa and shall not be excluded from admission to the United States, if (A) such alien committed not more than one such crime and that while under the age of eighteen years, and (B) the Attorney General shall find that (i) there exist special and extenuating circumstances with respect to the commission of such crime by such alien making the application to him of subsection (a) (9) unduly harsh, and (ii) the admission of such alien cannot reasonably be expected to be prejudicial to the best interests of the United States.

(11) Notwithstanding the provisions of paragraph (10) of subsection (a), an alien who has been convicted of offenses which, except for this paragraph, would render such alien ineligible to receive a visa and inadmissible to the United States, shall be eligible to receive a visa and shall not be excluded from admission to the United States, if the Attorney General shall find that (A) there exist special and extenuating circumstances with respect to the commission of such offenses by such alien making the application to him of subsection (a) (10) unduly harsh, and (B) the admission of such alien cannot reasonably be expected to be prejudicial to the best interests of the United States.

(e) When the United States is at war or during the existence of a national emergency proclaimed by the President and the President finds that the entry of any aliens or of any class of aliens into the United States would be deterimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

(f) When the United States is at war or during the existence of a national emergency proclaimed by the President, and the President finds that the entry of any aliens or of any class of aliens into the United States would promote the interests of the United States, or is necessary to provide sanctuary to persecuted alie or any class of aliens and would not be contrary to the best interests of the United States, he may by proclamation, and for such period as he shall deem desirable, suspend such restrictions on the entry of aliens for temporary residence as he may deem appropriate.

(g) The Attorney General may in his discretion, under such regulations as he may prescribe, and without regard to paragraphs (1) through (7) of subsection (a) admit any alien child who is residing

39

outside the United States and wishes to join his parent or parents in the United States, (1) if (A) both such parents have been naturalized, or (B) one such parent has been naturalized and the other parent has been admitted to the United States for permanent residence and is physically present therein, or (C) one such parent has been naturalized and the other parent applies for admission to the United States and is admitted for permanent residence at the same time the child is admitted, or (D) the surviving parent is naturalized if one of the parents is deceased, or (E) the parent having legal custody of the child is naturalized if there has been a legal separation of the parents, and (2) if such child applies for admission to the United States for permanent residence prior to reaching the age of 18 years.

ADMISSION OF ALIENS ON GIVING BOND OR CASH DEPOSIT

SEC. 213. Any alien excludable because he is likely to become a public charge or because of physical disability other than tuberculosis in any form, leprosy, or a dangerous (contagious) disease may, if otherwise admissible be admitted in the discretion of the Attorney General upon the giving of a suitable and proper bond or undertaking approved by the Attorney General, in such amount and containing such conditions as he may prescribe, to the United States and to all States, Territories, counties, towns, municipalities, and districts thereof holding the United States and all States, Territories, counties, towns, municipalities, and districts thereof harmless against such alien becoming a public charge. In lieu of such bond such alien may deposit in cash with the Attorney General such amount as the Attorney General may require, which amount shall be deposited by him in the United States Postal Savings System, a receipt therefor to be given the person furnishing such sums showing the fact and object of its receipt and such other information as the Attorney General may deem advisable. All accruing interest on such deposit during the time it shall be held in the United States Postal Savings System shall be paid to the person furnishing such sum. In the event such alien becomes a public charge, the Attorney General shall dispose of such deposit in the same manner as if it had been collected under a bond as provided in this section. In the event of the permanent departure from the United States, the naturalization, or the death of such alien, such sum shall be returned to the person by whom furnished, or to his legal representatives. The admission of such alien shall be a consideration for the giving of such bond, undertaking, or cash deposit. Suit may be brought thereon in the name and by the proper law officers of the United States for the use

United States require that restrictions and prohibitions in addition to those provided otherwise than by this section be imposed upon the departure of persons from and their entry into the United States, and shall make public proclamation thereof, it shall, until otherwise ordered by the President or the Congress, be unlawful—

   (1) for any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe;

   (2) for any person to transport or attempt to transport from or into the United States another person with knowledge or reasonable cause to believe that the departure or entry of such other person is forbidden by this section;

   (3) for any person knowingly to make any false statement in an application for permission to depart from or enter the United States with intent to induce or secure the granting of such permission either for himself or for another;

   (4) for any person knowingly to furnish or attempt to furnish or assist in furnishing to another a permit or evidence of permission to depart or enter not issued and designed for such other person's use;

   (5) for any person knowingly to use or attempt to use any permit or evidence of permission to depart or enter not issued and designed for his use;

   (6) for any person to forge, counterfeit, mutilate, or alter, or cause or procure to be forged, counterfeited, mutilated, or altered, any permit or evidence of permission to depart from or enter the United States;

   (7) for any person knowingly to use or attempt to use or furnish to another for use any false, forged, counterfeited, mutilated, or altered permit, or evidence of permission, or any permit or evidence of permission which, though originally valid, has become or been made void or invalid.

 (b) After such proclamation as is provided for in subsection (a) has been made and published and while such proclamation is in force, it shall, except as otherwise provided by the President, and subject to such limitations and exceptions as the President may authorize and prescribe, be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid passport.

(c)  Any person who shall willfully violate any of the provisions of this section, or of any order or proclamation of the President promulgated, or of any permit, rule, or regulation issued thereunder, shall upon conviction, be fined not more than $5,000, or, if a natural person, imprisoned for not more than five years, or both; and the officer, director, or agent of any corporation who knowingly participates in such violation shall be punished by like fine or imprisonment, or both; and any vehicle, vessel, or aircraft together with its appurtenances, equipment, tackle, apparel, and furniture, concerned in any such violation, shall be forfeited to the United States.

(d)  The term "United States" as used in this section includes the Canal Zone, and all territory and waters, continental or insular, subject to the jurisdiction of the United States.  The term "person" as used in this section shall be deemed to mean any individual, partnership, association, company, or other incorporated body of individuals, or corporation, or body politic.

(e)  Nothing in this section shall be construed to entitle an alien to whom a permit to enter the United States has been issued to enter the United States, if, upon arrival in the United States, he is found to be inadmissible under any of the provisions of this Act, or any other law, relating to the entry of aliens into the United States.

(f)  The revocation of any proclamation, rule, regulation, or order issued in pursuance of this section shall not prevent prosecution for any offense committed, or the imposition of any penalties or forfeitures, liability for which was incurred under this section prior to the revocation of such proclamation, rule, regulation, or order.

(g)  Passports, visas, reentry permits, and other documents required for entry under this Act may be considered as permits to enter for the purposes of this section.

### CHAPTER 3—ISSUANCE OF ENTRY DOCUMENTS

#### ISSUANCE OF VISAS

SEC. 221.  (a)  Under the conditions hereinafter prescribed and subject to the limitations prescribed in this Act or regulations issued thereunder, a consular officer may issue (1) to an immigrant who has made proper application therefor, an immigrant visa which shall consist of one copy of the application provided for in section 222, visaed by such consular officer, and shall specify the quota, if any, to which the immigrant is charged, the immigrant's particular status under such quota, the particular nonquota category in which the immigrant is classified, if a nonquota immigrant, the date on which the validity of the visa

shall expire, and such additional information as may be required; and (2) to a nonimmigrant who has made proper application therefor, a nonimmigrant visa, which shall specify the classification under section 101 (a) (15) of the nonimmigrant, the period during which the nonimmigrant visa shall be valid, and such additional information as may be required.

(b) Each alien who applies for a visa shall be registered and finger-printed in connection with his application, and shall furnish copies of his photograph signed by him for such use as may be by regulations required.   The requirements of this subsection may be waived in the discretion of the Secretary of State in the case of any alien who is within that class of nonimmigrants enumerated in sections 101 (a) (15) (A), and 101 (a) (15) (G), or in the case of any alien who is granted a diplomatic visa on a diplomatic passport or on the equivalent thereof.

(c) An immigrant visa shall be valid for such period, not exceeding four months, as shall be by regulations prescribed.   In the case of an immigrant arriving in the United States by water or air, or arriving by water or air in foreign contiguous territory on a continuous voyage to the United States, if the vessel or aircraft, before the expiration of the validity of his immigrant visa, departed from the last port outside the United States and outside foreign contiguous territory at which the immigrant embarked, and if the immigrant proceeds on a continuous voyage to the United States, then, regardless of the time of his arrival in the United States, the validity of his immigrant visa shall not be considered to have expired.   A nonimmigrant visa shall be valid for such periods as shall be by regulations prescribed.   In prescribing the period of validity of a nonimmigrant visa in the case of nationals of any foreign country who are eligible for such visas, the Secretary of State shall, insofar as practicable, accord to such nationals the same treatment upon a reciprocal basis as such foreign country accords to nationals of the United States who are within a similar class.   An immigrant visa may be replaced under the original quota number during the quota year in which the original visa was issued for a quota immigrant who establishes to the satisfaction of the consular officer that he was unable to use the original immigrant visa during the period of its validity because of reasons beyond his control and for which he was not responsible: *Provided*, the consular officer is in possession of the duplicate signed copy of the original visa and the immigrant is found by the consular officer to be eligible for an immigrant visa.

44

(d) Prior to the issuance of an immigrant visa to any alien, the consular officer shall require such alien to submit to a physical and mental examination in accordance with such regulations as may be prescribed.   Prior to the issuance of a nonimmigrant visa to any alien, the consular officer may require such alien to submit to a physical or mental examination, or both, if in his opinion such examination is necessary to ascertain whether such alien is eligible to receive a visa.

(e) Each immigrant shall surrender his immigrant visa to the immigration officer at the port of entry, who shall endorse on the visa the date and the port of arrival, the identity of the vessel or other means of transportation by which the immigrant arrived, and such other endorsements as may be by regulations required.

(f) Each nonimmigrant shall present or surrender to the immigration officer at the port of entry such documents as may be by regulation required.   In the case of an alien crewman not in possession of any individual documents other than a passport and until such time as it becomes practicable to issue individual documents, such alien crewman may be admitted, subject to the provisions of this title, if his name appears in the crew list of the vessel or aircraft on which he arrives and the crew list is visaed by a consular officer, but the consular officer shall have the right to exclude any alien crewman from the crew list visa.

(g) No visa or other documentation shall be issued to an alien if (1) the application, or the papers submitted therewith, show that such alien is ineligible to receive a visa or such other documentation under section 212, or any other provision of law, (2) the application fails to comply with the provisions of this Act, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 212, or any other provision of law: *Provided*, That a visa or other documentation may be issued to an alien who is within the purview of section 212 (a) (7), or section 212 (a) (15), if such alien is otherwise entitled to receive a visa or other documentation, upon receipt of notice by the consular officer from the Attorney General of the giving of a bond or undertaking providing indemnity as in the case of aliens admitted under section 213.

(h) Nothing in this Act shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to enter the United States, if, upon arrival at a port of entry in the United States, he is found to be inadmissible under this Act, or any other provision

of law.  The substance of this subsection shall appear upon every visa application.

(i) After the issuance of a visa or other documentation to any alien, the consular officer or the Secretary of State may at any time, in his discretion, revoke such visa or other documentation.  Notice of such revocation shall be communicated to the Attorney General, and such revocation shall invalidate the visa or other documentation from the date of issuance: *Provided*, That carriers or transportation companies, and masters, commanding officers, agents, owners, charterers, or consignees, shall not be penalized under section 273 (b) for action taken in reliance on such visas or other documentation, unless they received due notice of such revocation prior to the alien's embarkation.

### APPLICATIONS FOR VISAS

SEC. 222 (a) Every alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner as shall be by regulations prescribed.  In the application the immigrant shall state his full and true name, and any other name which he has used or by which he has been known; age and sex; the date and place of his birth; present address and places of previous residence; whether married or single, and the names and places of residence of spouse and children, if any; calling or occupation; personal description (including height, complexion, color of hair and eyes, and marks of identification) ; languages he can speak, read, or write; names and addresses of parents, and if neither parent living, then the name and address of his next of kin in the country from which he comes; port of entry into the United States; final destination, if any, beyond the port of entry; whether he has a ticket through to such final destination; whether going to join a relative or friend, and, if so, the name and complete address of such relative and friend; the purpose for which he is going to the United States; the length of time he intends to remain in the United States; whether or not he intends to remain in the United States permanently; whether he was ever arrested, convicted or was ever in prison or almshouse; whether he has ever been the beneficiary of a pardon or an amnesty; whether he has ever been treated in an institution or hospital or other place for insanity or other mental disease; if he claims to be a preference quota or a nonquota immigrant, the facts on which he bases such claim; whether or not he is a member of any class of individuals excluded from admission into the United States, or whether he claims to be exempt from exclusion under the immigration laws; and such addi-

**46**

tional information necessary to the identification of the applicant and the enforcement of the immigration and naturalization laws as may be by regulations prescribed.

(b) Every alien making application for a visa as an immigrant shall present a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Secretary of State. The immigrant shall furnish to the consular officer with his application two copies of a certification by the appropriate police authorities stating what their records show concerning the immigrant; two certified copies of any existing prison record, military record, and record of his birth; and two certified copies of all other records or documents concerning him or his case which may be required by the consular officer. One copy of each document so furnished shall be permanently attached to each copy of the application and become a part thereof. In the event that the immigrant establishes to the satisfaction of the consular officer that any document or record required by this subsection is unobtainable, the consular officer may permit the immigrant to submit in lieu of such document or record other satisfactory evidence of the fact to which such document or record would, if obtainable, pertain.

(c) Every alien applying for a visa and for alien registration as a nonimmigrant shall make application therefor in such form and manner as shall be by regulations prescribed. In the application the alien shall state his full and true name, the date and place of his birth and his nationality; the purpose and length of his intended stay in the United States; personal description (including height, complexion, color of hair and eyes, and marks of identification); his marital status; and such additional information necessary to the identification of the applicant and the enforcement of the immigration and naturalization laws as may be by regulations prescribed.

(d) Every alien applying for a nonimmigrant visa and alien registration shall furnish to the consular officer, with his application, a certified copy of such documents pertaining to him as may be by regulations required.

(e) Except as may be otherwise prescribed by regulations, each copy of an application required by this section shall be signed by the applicant in the presence of the consular officer, and verified by the oath of the applicant administered by the consular officer. One copy of the application for an immigrant visa, when visaed by the consular officer, shall become the immigrant visa, and the other copy shall be disposed of as may be by regulations prescribed. The application for a non-

**47**

immigrant visa or other documentation as a nonimmigrant shall be disposed of as may be by regulations prescribed. The issuance of a nonimmigrant visa shall, except as may be otherwise by regulations prescribed, be evidenced by a stamp placed by the consular officer in the alien's passport.

(f) The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States. In the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

REENTRY PERMITS

SEC. 223. (a) (1) Any alien lawfully admitted for permanent residence, or (2) any alien lawfully admitted to the United States pursuant to clause 6 of section 3 of the Immigration Act of 1924, between July 1, 1924, and July 5, 1932, both dates inclusive, who intends to depart temporarily from the United States may make application to the Attorney General for a permit to reenter the United States, stating the length of his intended absence or absences, and the reasons therefor. Such applications shall be made under oath, and shall be in such form, contain such information, and be accompanied by such photographs of the applicant as may be by regulations prescribed.

(b) If the Attorney General finds (1) that the applicant under subsection (a) (1) has been lawfully admitted to the United States for permanent residence, or that the applicant under subsection (a) (2) has since admission maintained the status required of him at the time of his admission and such applicant desires to visit abroad and to return to the United States to resume the status existing at the time of his departure for such visit, (2) that the application is made in good faith, and (3) that the alien's proposed departure from the United States would not be contrary to the interests of the United States, the Attorney General may, in his discretion, issue the permit, which shall be valid for not more than one year from the date of issuance. On good cause shown, the validity of the permit may be extended for such period or periods, not exceeding six months each, and under such conditions, as shall be by regulations prescribed. The permit shall

be in such form as shall be by regulations prescribed for the complete identification of the alien.

(c) During the period of validity, such permit may be used by the alien in making one or more applications for reentry into the United States.

(d) Upon the return of the alien to the United States the permit shall be presented to the immigration officer at the port of entry, and upon the expiration of its validity, the permit shall be surrendered to the Service.

(e) A permit issued under this section, in the possession of the person to whom issued, shall be accepted in lieu of any visa which otherwise would be required from such person under this Act.   Otherwise a permit issued under this section shall have no effect under the immigration laws except to show that the alien to whom it was issued is returning from a temporary visit abroad; but nothing in this section shall be construed as making such permit the exclusive means of establishing that the alien is so returning.

### NONQUOTA IMMIGRANT VISAS

SEC. 224. A consular officer, may, subject to the limitations provided in sections 204, 205, and 221, issue an immigrant visa to a nonquota immigrant as such upon satisfactory proof, under regulations prescribed under this Act, that the applicant is entitled to a nonquota immigrant status.

### VISA REVIEW BOARD

SEC. 225. (a) There is hereby established in the Department of State a Visa Review Board (hereinafter referred to as the "Board") which shall be composed of three members to be appointed by the Secretary of State.   Persons appointed to the Board shall be selected solely on the basis of their experience and qualifications, and shall be charged with no functions other than those vested in the Board.   The Board shall have authority, as provided in this section, to review the cases of aliens who have been denied visas.

(b) Whenever a consular officer shall deny an immigrant visa to any alien on the ground of ineligibility under section 212 (a), the Board shall review the decision of such officer upon the request of any person, institution, firm, organization, or governmental agency, upon whose petition a nonquota immigration status or a quota preference was granted or accorded to such alien, made within ninety days after such alien has been notified of the denial of a visa.   A consular officer shall inform each alien on whose behalf a review may be

requested under this section, who has been found by him to be ineligible for a visa under section 212 (a), of the provisions for review under this section.   A request for review by any person, institution, firm, organization, or governmental agency in behalf of any alien who has been denied a visa shall be made in writing to the Board and may be accompanied by an affidavit signed by such person, or an officer of such institution, firm, organization, or agency, setting forth any facts which have a bearing upon such alien's eligibility for a visa.

(c) The Board may, under such rules and regulations as it may prescribe with the approval of the Secretary of State, review the case of any other alien who has been denied a visa by a consular officer on the ground of ineligibility under section 212 (a).

(d) Upon receipt of any request for review under subsection (b), the Board shall notify the consular officer with respect to whose decision a review is sought, and, upon receiving such notice, such officer shall promptly forward to the Board a concise statement of the material facts upon which he based his decision to deny a visa in the case of any alien.   The Board may, at any time after receiving a request for review under subsection (b), or in connection with the review of the case of any alien under subsection (c), obtain from any consular officer such information, together with certified copies of such documents, reports, records, and other data, which are available to or obtainable by such officer, as it may deem necessary to enable it to properly review the case of any alien.

(e) In reviewing the decision of a consular officer denying a visa to an alien, the Board shall hear testimony and receive evidence from (1) any official of the Government requesting the privilege to be heard with respect to a matter pending before the Board, and (2) the person, or representatives of the institution, firm, or organization upon whose petition a nonquota immigration status or a preference was granted or accorded to an alien with respect to whose case the Board has granted a review.

(f) In reviewing the decision of any consular officer denying a visa to an alien, the Board shall consider all the information before it with respect to such alien, and shall give due consideration to the reasons set forth by such officer for his denial of a visa.   The decision of the Board shall be concurred in by at least two members, and shall affirm or overrule the decision of such officer.   If the Board shall overrule the decision of a consular officer with respect to the eligibility of an alien for a visa under section 212 (a) of this Act, such officer shall,

upon notification by the Board, promptly cause the visa to be issued to such alien which would have been issued except for his decision that such alien was inadmissible therefor under such section.

(g) Nothing contained in this section shall require the Board, or any officer or employee of the United States or any consular officer to make public disclosure of any confidential information, the disclosure of which, in the opinion of the Board, such officer or employee, or such consular officer, as the case may be, would be prejudicial to the public interest, safety, or security.

### CHAPTER 4—PROVISONS RELATING TO ENTRY AND EXCLUSION

#### LISTS OF ALIEN AND CITIZEN PASSENGERS ARRIVING OR DEPARTING; RECORD OF RESIDENT ALIENS AND CITIZENS LEAVING PERMANENTLY FOR FOREIGN COUNTRY

SEC. 231. (a) Upon the arrival of any person by water or by air at any port within the United States from any place outside the United States, it shall be the duty of the master or commanding officer, or authorized agent, owner, or consignee of the vessel or aircraft, having any such person on board to deliver to the immigration officers at the port of arrival typewritten or printed lists or manifests of the persons on board such vessel or aircraft. Such lists or manifests shall be prepared at such time, be in such form and shall contain such information as the Attorney General shall prescribe by regulation as being necessary for the identification of the persons transported (and) for the enforcement of the immigration laws. This subsection shall not require the master or commanding officer, or authorized agent, owner, or consignee of a vessel or aircraft to furnish a list or manifest relating to an alien crewman or to any other person arriving by air on a trip originating in foreign contiguous territory, except (with respect to such arrivals by air) as may be required by regulations issued pursuant to section 239.

(b) It shall be the duty of the master or commanding officer or authorized agent of every vessel or aircraft taking passengers on board at any port of the United States, who are destined to any place outside the United States, to file with the immigration officers before departure from such port a list of all such persons taken on board. Such list shall be in such form, contain such information, and be accompanied by such documents, as the Attorney General shall prescribe by regulation as necessary for the identification of the persons so transported and for the enforcement of the immigration laws. No master or commanding officer of any such vessel or aircraft shall be

granted clearance papers for his vessel or aircraft until he or the authorized agent has deposited such list or lists and accompanying documents with the immigration officer at such port and made oath that they are full and complete as to the information required to be contained therein, except that in the case of vessels or aircraft which the Attorney General determines are making regular trips to ports of the United States, the Attorney General may, when expedient, arrange for the delivery of lists of outgoing persons at a later date.

(c) The Attorney General may authorize immigration officers to record the following information regarding every resident person leaving the United States by way of the Canadian or Mexican borders for permanent residence in a foreign country: Names, age, and sex; whether married or single; calling or occupation; whether able to read or write; nationality; country of birth; country of which citizen or subject; last permanent residence in the United States; intended future permanent residence; and time and port of last arrival in the United States; and if a United States citizen or national, the facts on which claim to that status is based.

(d) If it shall appear to the satisfaction of the Attorney General that the master or commanding officer, owner, or consignee of any vessel or aircraft, or the agent of any transportation line, as the case may be, has refused or failed to deliver any list or manifest required by subsections (a) or (b), or that the list or manifest delivered is not accurate and full, such master or commanding officer, owner, or consignee, or agent, as the case may be, shall pay to the collector of customs at the port of arrival or departure the sum of $10 for each person concerning whom such accurate and full list or manifest is not furnished, or concerning whom the manifest or list is not prepared and sworn to as prescribed by this section or by regulations issued pursuant thereto. No vessel or aircraft shall be granted clearance pending determination of the question of the liability to the payment of such penalty, or while it remains unpaid, and no such penalty shall be remitted or refunded, except that clearance may be granted prior to the determination of such question upon the deposit with the collector of customs of a bond or undertaking approved by the Attorney General or a sum sufficient to cover such penalty.

(e) The Attorney General is authorized to prescribe the circumstances and conditions under which the list or manifest requirements of subsections (a) and (b) may be waived.

### DETENTION OF ALIENS FOR OBSERVATION AND EXAMINATION

SEC. 232. For the purpose of determining whether aliens (including alien crewmen) arriving at ports of the United States belong to any of the classes excluded by this Act, by reason of being afflicted with any of the diseases or mental or physical defects or disabilities set forth in section 212 (a), or whenever the Attorney General has received information showing that any aliens are coming from a country or have embarked at a place where any of such diseases are prevalent or epidemic, such aliens shall be detained on board the vessel or at the airport of arrival of the aircraft bringing them, unless the Attorney General directs their detention in a United States immigration station or other place specified by him at the expense of such vessel or aircraft except as otherwise provided in this act, as circumstances may require or justify, for a sufficient time to enable the immigration officers and medical officers to subject such aliens to observation and an examination sufficient to determine whether or not they belong to the excluded classes.

### TEMPORARY REMOVAL FOR EXAMINATION UPON ARRIVAL

SEC. 233. (a) Upon the arrival at a port of the United States of any vessel or aircraft bringing aliens (including alien crewmen) the immigration officers may order a temporary removal of such aliens for examination and inspection at a designated time and place, but such temporary removal shall not be considered a landing, nor shall it relieve vessels or aircraft, the transportation lines, or the masters, commanding officers, agents, owners, or consignees of the vessels or aircraft upon which such aliens are brought to any port of the United States from any of the obligations which, in case such aliens remain on board, would, under the provisions of this Act bind such vessels or aircraft, transportation lines, masters, commanding officers, agents, owners, or consignees, except that where removal is made from the vessels or aircraft into the custody of an immigration officer, such vessels or aircraft, transportation lines, masters, commanding officers, agents, owners, or consignees, shall, so long as such removal lasts, be relieved of responsibility for the safekeeping of such aliens.

(b) Whenever a temporary removal of aliens is made under this section, the vessels or aircraft or transportation lines which brought them, and the masters, commanding officers, owners, agents, and consignees of the vessel, aircraft, or transportation line upon which they arrived shall pay all expenses of such removal and all expenses arising during subsequent detention, pending a decision on the aliens' eligi-

bility to enter the United States and until they are either allowed to land or returned to the care of the transportation line or to the vessel or aircraft which brought them. Such expenses shall include maintenance, medical treatment in hospital or elsewhere, burial in the event of death, and transfer to the vessel, aircraft, or transportation line in the event of deportation, except where such expenses arise under section 237 (d), or in such cases as the Attorney General may prescribe in the case of aliens paroled into the United States temporarily under the provisions of section 212 (d) (5). In cases of aliens who arrive in possession of unexpired visas issued by consular officers within sixty days of the aliens' foreign embarkation, detention expenses and expenses incident to detention shall not be assessed the vessels or aircraft or transportation lines which brought them or against the masters, commanding officers, owners, agents, or consignees of such vessels, aircraft, or transportation lines if the sole cause of exclusion is one arising under section 211 (a) (1) or (3) of this Act.

(c) Any refusal or failure to comply with the provisions of this section shall be punished in the manner specified in section 237 (b) of this Act.

PHYSICAL AND MENTAL EXAMINATION

Sec. 234. The physical and mental examination of arriving aliens (including alien crewmen) shall be made by medical officers of the United States Public Health Service, who shall conduct all medical examinations and shall certify, for the information of the immigration officers and the special inquiry officers, any physical and mental defect or disease observed by such medical officers in any such alien. If medical officers of the United States Public Health Service are not available, civil surgeons of not less than four years' professional experience may be employed for such service upon such terms as may be prescribed by the Attorney General. Aliens (including alien crewmen) arriving at ports of the United States shall be examined by at least one such medical officer or civil surgeon under such administrative regulations as the Attorney General may prescribe, and under medical regulations prepared by the Surgeon General of the United States Public Health Service. Medical officers of the United States Public Health Service who have had special training in the diagnosis of insanity and mental defects shall be detailed for duty or employed at such ports of entry as the Attorney General may designate, and such medical officers shall be provided with suitable facilities for the detention and examination of all arriving aliens who it is suspected may be excludable under paragraphs (1), (2), (3), (4), and (5) of section

**54**

212 (a), and the services of interpreters shall be provided for such examination. Any alien certified under paragraphs (1), (2), (3), (4), and (5) of section 212 (a) may appeal to a board of medical officers of the United States Public Health Service, which shall be convened by the Surgeon General of the United States Public Health Service; and any such alien may introduce before such board expert medical witness at his own cost and expense. The alien may be accompanied by his counsel or other recognized representative before (such board) and he shall be permitted to cross-examine the medical officer or officers who executed the certificate of mental or physical disability.

### INSPECTION BY IMMIGRATION OFFICERS

SEC. 235. (a) The inspection, other than the physical and mental examination, of aliens (including alien crewmen) seeking admission or readmission to, or the privilege of passing through the United States shall be conducted by immigration officers, except as otherwise provided in regard to special inquiry officers. All aliens arriving at ports of the United States shall be examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe. Immigration officers are hereby authorized and empowered to board and search any vessel, aircraft, railway car, or other conveyance, or vehicle in which they believe aliens are being brought into the United States. The Attorney General and any immigration officer, including special inquiry officers, shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, pass through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and, where such action may be necessary, to make a written record of such evidence. Any person coming into the United States may be required to state under oath the purpose or purposes for which he comes, the length of time he intends to remain in the United States, whether or not he intends to remain in the United States permanently and, if an alien, whether he intends ' ecome a citizen thereof, and such other items of information as .ill aid the immigration officer in determining whether he is a national of the United States or an alien and, if the latter, whether he belongs to any of the excluded classes enumerated in section 212. The Attorney General and any immigration officer, including (special) inquiry officers, shall have power to require by subpena the attendance and

testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service, and to that end may invoke the aid of any court of the United States. Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer may, in the event of neglect or refusal to respond to a subpena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, issue an order requiring such persons to appear before an immigration officer or special inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.

(b) Every alien (other than an alien crewman), and except as otherwise provided in subsection (c) of this section and in section 273 (d), who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer. The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien, whose privilege to land is so challenged, before a special inquiry officer for further inquiry.

(c) Any alien (including an alien crewman) who may appear to the examining immigration officer or to the special inquiry officer during the examination before either of such officers to be excludable under paragraph (27), (28), or (29) of section 212 (a) shall be temporarily excluded, and no further inquiry by a special inquiry officer shall be conducted until after the case is reported to the Attorney General together with such written statement and accompanying information, if any, as the alien or his representative may desire to submit in connection therewith and such an inquiry or further inquiry is directed by the Attorney General. If the Attorney General is satisfied on the basis of substantial evidence that the alien is excludable under any of such paragraphs on the basis of information of a confidential nature, the public disclosure of which the Attorney General, in the exercise of his discretion, concludes would be prejudicial to the public interest, safety, or security, he may in his discretion order such

alien excluded and deported without any inquiry or further inquiry by a special inquiry officer. From a decision of the Attorney General excluding an alien under the provisions of this subsection, such alien may take a timely appeal to the Board of Immigration Appeals, and any such alien shall be advised of his right to take such appeal. If such Board is satisfied on the basis of substantial evidence that such alien is excludable under any of such paragraphs on the basis of information of a confidential nature furnished to such Board by the Attorney General, the public disclosure of which the Attorney General, in the exercise of his discretion, has concluded would be prejudicial to the public interest, safety, or security, such Board may order such alien excluded and deported without any inquiry or any further inquiry. An appeal by the alien shall operate to stay any final action with respect to such alien until the final decision in the case is made by the Attorny General or by such Board, as the case may be. The decision of such Board with respect to any matter before it under this subsection shall be concurred in by not less than two-thirds of the membership of such Board.

#### EXCLUSIONS OF ALIENS

SEC. 236. (a) A special inquiry officer shall conduct proceedings under this section, administer oaths, present and receive evidence, and interrogate, examine, and cross-examine the alien or witnesses. He shall have authority in any case to determine whether an arriving alien who has been detained for further inquiry under section 235 shall be allowed to enter or shall be excluded and deported. The determination of such special inquiry officer shall be based only on the evidence produced at the inquiry. No special inquiry officer shall conduct a proceeding in any case under this section in which he snall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions. Proceedings before a special inquiry officer under this section shall be conducted in accordance with this section, the applicable provisions of sections 235 and 287 (b), and such regulations as the Attorney General shall prescribe. At such inquiry, which shall be kept separate and apart from the public, the alien may have one friend or relative present, under such conditions as may be prescribed by the Attorney General. A complete record of the proceedings and of all testimony and evidence produced at such inquiry, shall be kept.

(b) From a decision of a special inquiry officer excluding an alien, such an alien may take a timely appeal to the Attorney General, and

any such alien shall be advised of his right to take such appeal.  No appeal may be taken from a temporary exclusion under section 235 (c). From a decision of the special inquiry officer to admit an alien, the immigration officer in charge at the port where the inquiry is held may take a timely appeal to the Attorney General.  From a decision of the Attorney General excluding an alien in any of the aforementioned cases, such alien may take a timely appeal to the Board of Immigration Appeals, and any such alien shall be advised of his right to take such appeal.  An appeal by the alien or such officer in charge shall operate to stay any final action with respect to any alien whose case is so appealed until the final decision in the case is made by the Attorney General or the Board of Immigration Appeals, as the case may be.  Such decision shall be rendered solely upon the evidence adduced before the special inquiry officer.

(c)  Except as provided in subsections (b) and (d), in every case where an alien is excluded from admission into the United States, under this Act or any other law or treaty now existing or hereafter made, the decision of a special inquiry officer shall be final unless reversed on appeal to the Attorney General or to the Board of Immigration Appeals.

(d)  If a medical officer or civil surgeon or board of medical officers has certified under section 234 that an alien is afflicted with a disease specified in section 212 (a) (6), or with any mental disease, defect, or disability which would bring such alien within any of the classes excluded from admission to the United States under paragraphs (1), (2), (3), (4), and (5) of section 212 (a), the decision of the special inquiry officer shall be based solely upon such certification.  If an alien is excluded by a special inquiry officer because of the existence of a physical disease, defect, or disability, the alien may appeal from the excluding decision in accordance with subsection (b) of this section, and seek a reversal of the exclusion order, or apply for a waiver of such ground of inadmissibility upon posting a suitable bond in the discretion of the Attorney General.

### IMMEDIATE DEPORTATION OF ALIENS EXCLUDED FROM ADMISSION OR ENTERING IN VIOLATION OF LAW

SEC. 237. (a) Any alien (other than an alien crewman) arriving in the United States who is excluded under this Act, shall be immediately deported to the country whence he came, in accommodations of the same class in which he arrived, on the vessel or aircraft bringing him, unless the Attorney General, in an individual case, in his discretion,

concludes that immediate deportation is not practicable or proper. The cost of the maintenance including detention expenses and expenses incident to detention of any such alien while he is being detained, as well as the transportation expense of his deportation from the United States, shall be borne by the owner or owners of the vessel or aircraft on which he arrived, except that the cost of maintenance (including detention expenses and expenses incident to detention while the alien is being detained prior to the time he is offered for deportation to the transportation line which brought him to the United States) shall not be assessed against the owner or owners of such vessel or aircraft when the alien is in possession of an unexpired visa issued by a consular officer within sixty days of the alien's foreign embarkation if the sole cause of exclusion is one arising under section 211 (a) (1) or (3) of this Act.

(b) It shall be unlawful for any master, commanding officer, purser, person in charge, agent, owner, or consignee of any vessel or aircraft (1) to refuse to receive any alien (other than an alien crewman), ordered deported under this section back on board such vessel or aircraft or another vessel or aircraft owned or operated by the same interests; (2) to fail to detain any alien (other than an alien crewman) on board any such vessel or at the airport of arrival of the aircraft when required by this Act or if so ordered by an immigration officer, or to fail or refuse to deliver him for medical or other inspection, or for further medical or other inspection, as and when so ordered by such officer; (3) to refuse or fail to remove him from the United States to the country whence he came; (4) to fail to pay the cost of his maintenance while being detained as required by this section or section 233 of this title; (5) to take any fee, deposit, or consideration on a contingent basis to be kept or returned in case the alien is landed or excluded; (6) knowingly to bring to the United States any alien (other than an alien crewman) excluded or arrested and deported under any provision of law until such alien may be lawfully entitled to reapply for admission to the United States; or (7) to make any charge for the return of any such alien, or to take any security for the payment of such charge. If it shall appear to the satisfaction of the Attorney General that any such master, commanding officer, purser, person in charge, agent, owner, or consignee of any vessel or aircraft has violated any of the provisions of this section or of section 233 of this title, such master, commanding officer, purser, person in charge, agent, owner, or consignee shall pay to the collector

of customs of the district in which port of arrival is situated or in which any vessel or aircraft of the line may be found, the sum of $300 for each violation. No such vessel or aircraft shall have clearance from any port of the United States while any such fine is unpaid or while the question of liability to pay any such fine is being determined, nor shall any such fine be remitted or refunded, except that clearance may be granted prior to the determination of such question upon the deposit with the collector of customs of a bond or undertaking approved by the Attorney General or a sum sufficient to cover such fine.

(c) If the vessel or aircraft, by which any alien who has been ordered deported under this section arrived, has left the United States and it is impracticable to deport the alien within a reasonable time by another vessel or aircraft owned by the same person, the cost of deportation may be paid from the appropriation for the enforcement of this Act and recovered by civil suit from any owner, agent, or consignee of the vessel or aircraft.

(d) The Attorney General, under such conditions as are by regulations prescribed, may stay the deportation of any alien deportable under this section, if in his judgment the testimony of such alien is necessary on behalf of the United States in the prosecution of offenders against any provision of this Act or other laws of the United States. The cost of maintenance of any person so detained resulting from a stay of deportation under this subsection and a witness fee in the sum of $1 per day for each day such person is so detained may be paid from the appropriation for the enforcement of this title. Such alien may be released under bond in the penalty of not less than $500 with security approved by the Attorney General on condition that such alien shall be produced when required as a witness (and) for deportation, and on such other conditions as the Attorney General may prescribe.

(e) Upon the certificate of an examining medical officer to the effect that an alien ordered to be excluded and deported under this section is helpless from sickness or mental or physical disability, or infancy, if such alien is accompanied by another alien whose protection or guardianship is required by the alien ordered excluded and deported, such accompanying alien may also be excluded and deported, and the master, commanding officer, agent, owner, or consignee of the vesseel or aircraft in which such alien and accompanying alien arrived in the United States shall be required to return the accompanying alien in the same manner as other aliens denied admission and ordered deported under this section.

ENTRY THROUGH OR FROM FOREIGN CONTIGUOUS TERRITORY AND ADJACENT ISLANDS; LANDING STATIONS

Sec. 238. (a) The Attorney General shall have power to enter into contracts with transportation lines for the entry and inspection of aliens coming to the United States through foreign contiguous territory or through adjacent islands.   In prescribing rules and regulations and making contracts for the entry and inspection of aliens applying for admission through foreign contiguous territory or through adjacent islands, due care shall be exercised to avoid any discriminatory action in favor of transportation companies transporting to such territory or islands aliens destined to the United States, and all such transportation companies shall be required, as a condition precedent to the inspection or examination under such rules and contracts at the ports of such contiguous territory or such adjacent islands of aliens brought thereto by them, to enter into a contract which will require them to submit to and comply with all the requirements of this Act which would apply were they bringing such aliens directly to ports of the United States.

(b) The Attorney General shall have power to enter into contracts with transportation lines for the entry and inspection of aliens coming to the United States from foreign contiguous territory or from adjacent islands.   No such transportation line shall be allowed to land any such alien in the United States until and unless it has entered into any such contracts which may be required by the Attorney General.

(c) Every transportation line engaged in carrying alien passengers for hire to the United States from foreign contiguous territory or from adjacent islands shall provide and maintain at its expense suitable landing stations, approved by the Attorney General, conveniently located at the point or points of entry.   No such transportation line shall be allowed to land any alien passengers in the United States until such landing stations are provided, and unless such stations are thereafter maintained to the satisfaction of the Attorney General.

(d) The Attorney General shall have power to enter into contracts including bonding agreements with transportation lines to guarantee the passage through the United States in immediate and continuous transit of aliens destined to foreign countries.   Notwithstanding any other provision of this Act, such aliens may not have their classification changed under section 248.

(e) As used in this section the terms "transportation line" and "transportation company" include, but are not limited to, the owner, charterer, consignee, or authorized agent operating any vessel or aircraft bringing aliens to the United States, to foreign contiguous territory, or to adjacent islands.

### DESIGNATION OF PORTS OF ENTRY FOR ALIENS ARRIVING BY CIVIL AIRCRAFT

SEC. 239. The Attorney General is authorized (1) by regulation to designate as ports of entry for aliens arriving by aircraft any of the ports of entry for civil aircraft designated as such in accordance with law; and (2) by regulation to provide for the application to civil air navigation of the provisions of this Act and for landing requirements where not expressly so provided in this Act to such extent and upon such conditions as he deems necessary.  Any person who violates any regulations made under this section shall be subject to a civil penalty of $500 which may be remitted or mitigated by the Attorney General in accordance with such proceedings as the Attorney General shall by regulation prescribe.  In case the violation is by the owner or person in command of the aircraft, the penalty shall be a lien upon the aircraft, and such aircraft may be libeled therefor in the appropriate United States court.  The determination under this section as to the remission or mitigation of a civil penalty imposed under this section shall be final.  Any aircraft subject to a lien for any civil penalty imposed under this section may be summarily seized by and placed in the custody of such persons as the Attorney General may by regulation prescribe.  The aircraft shall be released from such custody upon (1) payment of the penalty or so much thereof as is not remitted or mitigated, or (2) deposit of a bond in such amount and with such sureties as the Attorney General may prescribe, conditioned upon the payment of the penalty or so much thereof as is not remitted or mitigated.

### RECORDS OF ADMISSION

SEC. 240. (a) The Attorney General shall cause to be filed, as a record of admission of each immigrant, the immigrant visa required by section 221 (e) to be surrendered at the port of entry by the arriving alien to an immigration officer.

(b) The Attorney General shall cause to be filed such record of the entry into the United States of each immigrant admitted under section 211 (b) and of each nonimmigrant as the Attorney General deems necessary for the enforcement of the immigration laws.

## CHAPTER 5—DEPORTATION; ADJUSTMENT OF STATUS

### GENERAL CLASSES OF DEPORTABLE ALIENS

SEC. 241. (a) Any alien in the United States (including an alien crewman), shall, upon the order of the Attorney General, be deported who—

(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this Act, or in violation of any other law of the United States;

(3) hereafter, within five years after entry, becomes institutionalized at public expense because of mental disease, defect, or deficiency, unless such disease, defect, or deficiency did not exist prior to his admission to the United States:

(4) within five years after entry is convicted of a crime involving moral turpitude and either sentenced to confinement or confined therefor in a prison or corrective institution for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of (criminal) misconduct regardless of whether confined therefor and regardless of whether the convictions were in a single trial;

(5) has willfully failed to comply with the provision of section 265, or has been convicted under section 266 (c) of this title, or under section 36 (c) of the Alien Registration Act, 1940, or has been convicted of violating or conspiracy to violate any provision of the Act entitled "An Act to require the registration of certain persons employed by agencies to disseminate propaganda in the United States, and for other purposes", approved June 8, 1938, as amended, or has been convicted under section 1546 of title 18 of the United States Code;

(6) is or at any time after entry has been a member of any one of the classes of aliens described in paragraph (28) of section 212 (a) of this title, except that this paragraph shall not apply (A) to an alien who was lawfully admitted for permanent residence if the conduct, membership, or affiliation which caused the alien to be a member of any such classes has ceased to exist, or (B) to an alien deportable under this paragraph solely by reason of present membership in, or affiliation with, an organization described in paragraph (28) (E) of such section, if such alien does

not have knowledge or reason to believe that such organization is a Communist organization, and if, within a reasonable time after the commencement of the deportation proceedings, such alien terminates such membership or affiliation, or (C) to an alien deportable under this paragraph solely by reason of past membership in, or affiliation with, an organization described in paragraph (28) (E) of such section, if such alien terminated such membership or affiliation within a reasonable time after acquiring knowledge or reason to believe that such organization was a Communist organization;

(7) has been convicted of engaging in any of the activities described in paragraph (27) or (29) of section 212 (a);

(8) within five years after the entry becomes a public charge from causes not affirmatively shown to have arisen after entry;

(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 248, or to comply with the conditions of any such status;

(10) entered the United States from foreign contiguous territory or adjacent islands, having arrived there on a vessel or aircraft of a nonsignatory transportation company under section 238 (a) and was without the required period of stay in such foreign contiguous territory or adjacent islands following such arrival (other than an alien who is a native-born citizen of any of the countries enumerated in section 101 (a) (27) (C) and an alien described in section 101 (a) (27) (B));

(11) is a narcotic drug addict, or who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, or who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction sustaining opiate;

(12) by reason of any conduct, behavior or activity at any time after entry became a member of any of the classes specified in

64

paragraph (12) of section 212 (a) ; or is or at any time after entry has been the manager, or is or at any time after entry has been connected with the management, of a house of prostitution or any other immoral place ;

(13) prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law ;

(14) at any time after entry, shall have been convicted of possessing or carrying in violation of any law any weapon which shoots or is designed to shoot automatically or semi-automatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun ;

(15) at any time within five years after entry, shall have been convicted of violating the provisions of title I of the Alien Registration Act, 1940 ;

(16) at any time after entry, shall have been convicted more than once of violating the provisions of title I of the Alien Registration Act, 1940 ; or

(b) The provisions of subsection (a) (4) respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, or (2) if the court sentencing such alien for such crime shall at any time make a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State. the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.

(c) An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph (19) of section 212 (a), and to be in the United States in violation of this Act within the meaning of subsection (a) (2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish that such marriage was not contracted for the

purpose of evading any provisions of the immigration laws; or (2) he or she has failed or refused to fulfill his or her marital contract which was made for the purpose of procuring his or her entry as an immigrant.

(d) An alien, admitted as a nonimmigrant under the provisions of either section 101 (a) (15) (A) or 101 (a) (15) (G), and who fails to maintain a status under either of those provisions, shall not be required to depart from the United States without the approval of the Secretary of State.

(e) Notwithstanding the provisions of subsection (a), deportation shall not be ordered in the case of any alien on the grounds that he (1) entered the United States without inspection or at any time or place other than that designated by the Attorney General, or (2) was, at the time of entry (whether occurring before or after the effective date of this Act), excludable by reason of a condition or status described in section 212 (a) (other than in paragraphs (5), (9), (11), (12), (13), (19), (23), (27), (28), (29), or (31) of section 212 (a)), unless deportation proceedings are commenced against such alien within a period of five years from the date of entry of such alien. Any period of time spent outside the United States by such alien shall not be considered in computing such period.

### APPREHENSION AND DEPORTATION OF ALIENS

SEC. 242. (a) Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody, upon a finding that there is reasonable cause to believe that the alien is a security risk or that he will not appear for hearing or deportation or that his release under bond or on conditional parole would be detrimental to the public interest; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of

competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability.

(b)  A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, in which case the Attorney General shall prescribe necessary and proper safeguards for the rights and privileges of such alien. In any case in which an alien has been given a reasonable opportunity to be present at a proceeding under this section and willfully fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present, if it is established that such failure or refusal to attend or remain in attendance is without reasonable cause.  In any case or class of cases in which the Attorney General believes that such procedure would be of aid in making a determination, he may require specifically or by regulation that an additional immigration officer shall be assigned to present the evidence on behalf of the United States and in such case such additional immigration officer shall have authority to present evidence, and to interrogate, examine and cross-examine the alien or other witnesses in the proceedings.  Nothing in the preceding sentence shall be construed to diminish the authority conferred upon the special inquiry officer conducting such proceedings.  No special inquiry officer shall conduct a proceeding in any case under this section in which he shall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions.  Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this Act, as the Attorney General shall prescribe.  Such regulations shall include requirements that—

**67**

(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

In any case in which an alien is ordered deported from the United States under the provisions of this Act, or of any other law or treaty, the decision of the Attorney General shall be final.   In the discretion of the Attorney General, and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 241 if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraph (4), (5), (6), (7), (11), or (12) of section 241 (a).   If any alien who is authorized to depart voluntarily under the preceding sentence is financially unable to depart at his own expense and the Attorney General deems his removal to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this Act.

(c)  When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe.   Any such alien shall be detained only upon a finding that there is reasonable cause to believe that the alien is a security risk or that he will not appear for deportation or that his release would be detrimental to the public interest.

68

Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be waranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section. The Attorney General is hereby authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain under this section. Where no Federal buildings are available or buildings adapted or suitably located for the purpose are available for rental, the Attorney General is hereby authorized, notwithstanding section 3709 of the Revised Statutes, as amended (41 U. S. C. 5), or section 322 of the Act of June 30, 1932, as amended (40 U. S. C. 278a), to expend, from the appropriation provided for the administration and enforcement of the immigration laws, such amounts as may be necessary for the acquisition of land and the erection, acquisition, maintenance, operation, remodeling, or repair of buildings, sheds, and office quarters (including living quarters for officers where none are otherwise available), and adjunct facilities, necessary for the detention of aliens. For the purposes of this section an order of deportation heretofore or hereafter entered against an alien in legal detention or confinement, other than under an immigration process, shall be considered as being made as of the moment he is released from such detention or confinement, and not prior thereto.

(d) Any alien, against whom a final order of deportation as defined in subsection (c) heretofore or hereafter issued has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall include provisions which require any alien subject to supervision (1) to appear from time to time before an immigration officer for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such

other information, whether or not related to the foregoing, as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case. Any alien who shall willfully fail to comply with such regulations, or willfully fail to appear or to give information or submit to medical or psychiatric examination if required, or knowingly give false information in relation to the requirements of such regulations, or knowingly violate a reasonable restriction imposed upon his conduct or activity, shall upon conviction be guilty of a felony, and shall be fined not more than $1,000 or shall be imprisoned not more than one year, or both.

(e) Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in paragraphs (4), (5), (6), (7), (11), or (12) of section 241 (a) who shall willfully fail or refuse to depart from the United States within a period of six months from the date of the final order of deportation under administrative processes, or, if judicial review is had, then from the date of the final order of the court, or from the date of the enactment of the Subversive Activities Control Act of 1950, whichever is the later, or shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, or who shall connive or conspire, or take any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure pursuant to such order of deportation, or who shall willfully fail or refuse to present himself for deportation at the time and place required by the Attorney General pursuant to such order of deportation, shall upon conviction be guilty of a felony, and shall be imprisoned not more than ten years: *Provided*, That this subsection shall not make it illegal for any alien to take any proper steps for the purpose of securing cancellation of or exemption from such order of deportation or for the purpose of securing his release from incarceration or custody: *Provided further*, That the court may for good cause suspend the sentence of such alien and order his release under such conditions as the court may prescribe. In determining whether good cause has been shown to justify releasing the alien, the court shall take into account such factors as (1) the age, health, and period of detention of the alien; (2) the effect of the alien's release upon the national security and public peace or safety; (3) the likelihood of the alien's resuming or following a course of conduct which made or would make him deportable; (4) the character

of the efforts made by such alien himself and by representatives of the country or countries to which his deportation is directed to expedite the alien's departure from the United States; (5) the reason for the inability of the Government of the United States to secure passports, other travel documents, or deportation facilities from the country or countries to which the alien has been ordered deported; and (6) the eligibility of the alien for discretionary relief under the immigration laws.

(f) Should the Attorney General find after hearing that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after the date of enactment of this Act, on any ground described in any of the paragraphs enumerated in subsection (e), the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

(g) If any alien, subject to supervision or detention under subsections (c) or (d) of this section, is able to depart from the United States under the order of deportation, except that he is financially unable to pay his passage, the Attorney General may in his discretion permit such alien to depart voluntarily, and the expense of such passage to the country to which he is destined may be paid from the appropriation for the enforcement of this Act, unless such payment is otherwise provided for under this Act.

(h) An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, probation, or possibility of rearrest or further confinement in respect of the same offense shall not be a ground for deferral of deportation.

COUNTRIES TO WHICH ALIENS SHALL BE DEPORTED; COST OF DEPORTATION

SEC. 243. (a) The deportation of an alien in the United States provided for in this Act, or any other Act of Congress or treaty, shall be directed by the Attorney General to a country promptly designated by the alien, if the alien presents to the Attorney General, within three months following the date of the final order of deportation, written permission from the government of such country for the alien to be deported into its territory, unless the Attorney General, in his

discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. No alien shall be permitted to make more than one such designation, nor shall any alien designate, as the place to which he wishes to be deported, any foreign territory contiguous to the United States or any island adjacent thereto or adjacent to the United States unless such alien is a native, citizen, subject, or national of such designated foreign contiguous territory or adjacent island. If the alien fails to present such written permission to the Attorney General within three months following the date of the final order of deportation establishing that the country designated by the alien will accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject, national, or citizen if such country is willing to accept him into its territory. If the government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, or within such other period as the Attorney General shall deem reasonable under the circumstances in a particular case, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth, either—

(1) to the country from which such alien last entered the United States;

(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

(3) to the country in which he was born;

(4) to the country in which the place of his birth is situated at the time he is ordered deported;

(5) to any country in which he resided prior to entering the country from which he entered the United States; or

(6) to the country which had sovereignty over the birthplace of the alien at the time of his birth.

(b) If the United States is at war and the deportation, in accordance with the provisions of subsection (a), of any alien who is deportable under any law of the United States shall be found by the Attorney General to be impracticable, inadvisable, inconvenient, or impossible because of enemy occupation of the country from which such alien came or wherein is located the foreign port at which he embarked for the United States or because of reasons connected with the war, such

alien may, in the discretion of the Attorney General, be deported as follows:

(1) if such alien is a citizen or subject of a country whose recognized government is in exile, to the country in which is located that government in exile if that country will permit him to enter its territory; or

(2) if such alien is a citizen or subject of a country whose recognized government is not in exile, then to a country or any political or territorial subdivision thereof which is proximate to the country of which the alien is a citizen or subject, or, with the consent of the country of which the alien is a citizen or subject, to any other country.

(c) If deportation proceedings are instituted at any time within five years after the entry of the alien, for causes existing prior to or at the time of entry, the cost of deportation, including one-half of the entire cost of removal to the port of deportation, shall be at the expense of the contractor, procurer, or other person by whom the alien was unlawfully induced to enter the United States, or, if in the opinion of the Attorney General that cannot be done, then the cost of removal to the port of deportation shall be at the expense of the appropriation for the enforcement of this Act, and the deportation from such port shall be at the expense of the owner or owners of the vessel or aircraft by which such alien came, or, if in the opinion of the Attorney General that is not practicable, at the expense of the appropriation for the enforcement of this Act. In the case of an alien crewman, if deportation proceedings are instituted at any time within five years after the granting of the last conditional permit to land temporarily under the provisions of section 252, the cost of removal to the port of deportation shall be at the expense of the appropriation for the enforcement of this Act and the deportation from such port shall be at the expense of the owner or owners of the vessel or aircraft by which such alien came to the United States, or if in the opinion of the Attorney General that is not practicable, at the expense of the appropriation for the enforcement of this Act.

(d) If deportation proceedings are instituted later than five years after the entry of the alien, or, if the deportation is made by reason of causes arising subsequent to entry, or in the case of an alien crewman later than five years after the granting of the last conditional permit to land temporarily, the cost thereof shall be payable from the appropriation for the enforcement of this Act.



(e) A failure or refusal on the part of the master, commanding officer, agent, owner, charterer, or consignee of a vessel, aircraft, or other transportation line to comply with the order of the Attorney General to take on board, guard safely, and transport to the destination specified any alien ordered to be deported under the provisions of this Act, or a failure or refusal by any such person to comply with an order of the Attorney General to pay deportation expenses in accordance with the requirements of this section, shall be punished by the imposition of a penalty in the sum and manner prescribed in section 237 (b).

(f) When in the opinion of the Attorney General the mental or physical condition of an alien being deported is such as to require personal care and attendance, the Attorney General shall, when necessary, employ a suitable person for that purpose who shall accompany such alien to his final destination, and the expense incident to such service shall be defrayed in the same manner as the expense of deporting the accompanied alien is defrayed, and any failure or refusal to defray such expenses shall be punished in the manner prescribed by subsection (e) of this section.

(g) No alien shall be deported under any provisions of this Act to any country in which the Attorney General shall in his discretion find that such alien would be subjected to physical persecution or persecution of any kind because of race, religion, or political opinions.

SUSPENSION OF DEPORTATION; VOLUNTARY DEPARTURE

SEC. 244. (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

(1) is deportable under paragraph (1) of section 241 (a) insofar as such paragraph does not relate to criminals, prostitutes or other immoral persons, subversives, violators of narcotics laws, and similar classes, proves that he has been a person of good moral character for five years; and

(A) has been in the United States for a continuous period of seven years and establishes that his deportation would result in serious detriment to himself; or

(B) establishes that his deportation would result in serious detriment to his spouse, parent, or child who is a citizen or an alien lawfully admitted for permanent residence; or

(2) is deportable under paragraph (1) of section 241 (a)

insofar as it relates to criminals, prostitutes or other immoral persons, subversives, violators of narcotic laws and similar classes or under paragraph (2) of section 241 (a), as a person who entered the United States without inspection or at a time or place other than as designated by the Attorney General, or without the proper documents and is not within the provisions of paragraph (3) of this subsection; and (A) has been physically present in the United States for a continuous period of not less than ten years after such entry and immediately preceding his application under this paragraph and proves that during all of such period he has been and is a person of good moral character, or (B) is a person whose deportation would result in serious detriment to the alien's spouse, parent, or child who is a citizen or an alien lawfully admitted for permanent residence; or

(3) is deportable under paragraph (2) of section 241 (a) as a person who has remained longer in the United States than the period for which he was admitted, or paragraph (4), (5), (6), (7), (11), or (12) of section 241 (a) for an act committed or status acquired subsequent to such entry into the United States; and (A) has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, consituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character, or (B) is a person whose deportation would result in serious detriment to the alien's spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence.

(b) Upon application by any alien who is found by the Attorney General to meet the requirements of subsection (a) of this section, the Attorney General may in his discretion suspend deportation of such alien. If the deportation of any alien is suspended under the provisions of this subsection, a complete and detailed statement of the facts and pertinent provisions of law in the case shall be reported to the Congress with the reasons for such suspension. Such reports shall be submitted on the first and fifteenth day of each calendar month in which Congress is in session. If during the session of the Congress at which a case is reported, or if a case is reported less than thirty days prior to the close of the session, then during the next session of the Congress, either House passes a resolution stating in substance that such House does not favor the suspension of such

deportation, the Attorney General shall thereupon deport such alien in the manner provided by law. If during the session of the Congress at which a case is reported, or if a case is reported less than thirty days prior to the close of the session, then during the next session of the Congress, neither House passes such a resolution, the Attorney General shall cancel deportation proceedings upon the termination of such session.

(c) Upon the cancellation of deportation in the case of any alien under this section, the Attorney General shall record the alien's lawful admission for permanent residence as of the date the cancellation of deporation of such alien is made, and the Secretary of State shall, if the alien was classifiable as a quota immigrant at the time of entry and was not charged to the appropriate quota, reduce by one the quota of the quota area to which the alien is chargeable under section 202 for the fiscal year then current at the time of cancellation or the next following year in which a quota is available. No quota shall be so reduced by more than 50 per centum in any fiscal year.

(d) The Attorney General may, in his discretion, permit any alien under deportation proceedings, other than an alien within the provisions of paragraph (4), (5), (6), (7), (11), or (12) of section 241 (a), (and also any alien within the purview of such paragraphs if he is also within the provisions of paragraph (2) or (3) of subsection (a) of this section), to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

### ADJUSTMENT OF STATUS OF NONIMMIGRANT TO THAT OF PERSON ADMITTED FOR PERMANENT RESIDENCE

SEC. 245. (a) The status of an alien born in or chargeable to the quota of a quota area, who was lawfully admitted to the United States as a bona fide nonimmigrant may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence as a quota immigrant, if (1) the alien makes application for adjustment, (2) the alien is admissible to the United States for permanent residence under this Act, and (3) a quota immigrant visa is available to him at the time his application is approved.

(b) Upon the approval of an application for adjustment made under subsection (a), the Attorney General shall record the alien's lawful admission for permanent residence as of the date of the alien's last entry into the United States, and the Secretary of State shall reduce by one the quota of the quota area to which the alien is chargeable under section 202 for the fiscal year current at the time such adjustment is made.

## RESCISSION OF ADJUSTMENT OF STATUS

Sec. 246. (a) If, at any time within five years after the status of a person has been adjusted under the provisions of sections 244, 245, or 249 of this Act, or any other provision of law, to that of an alien lawfully admitted for permanent residence, the Attorney General shall find after hearing that the person was not in fact eligible for such adjustment of status, he shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred, and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made.

(b) Any person who has become a naturalized citizen of the United States upon the basis of a record of a lawful admission for permanent residence, created as a result of an adjustment of status for which such person was not in fact eligible, and which is subsequently rescinded under subsection (a) of this section, shall be subject to the provisions of section 340 of this Act.

## ADJUSTMENT OF STATUS OF CERTAIN RESIDENT ALIENS TO NONIMMIGRANT STATUS

Sec. 247. (a) The status of an alien lawfully admitted for permanent residence shall be adjusted by the Attorney General, under such regulations as he may prescribe, to that of a nonimmigrant under paragraph (15) (A), (15) (E), or (15) (G) of section 101 (a), if such alien had at the time of entry or subsequently acquires an occupational status which would, if he were seeking admission to the United States, entitle him to a nonimmigrant status under such sections. As of the date of the Attorney General's order making such adjustment of status, the Attorney General shall cancel the record of the alien's admission for permanent residence, and the immigrant status of such alien shall thereby be terminated.

(b) The adjustment of status required by subsection (a) shall not be applicable in the case of any alien who requests that he be permitted to retain his status as an immigrant and who, in such form as

the Attorney General may require, executes and files with the Attorney General a written waiver of all rights, privileges, exemptions, and immunities under any law or any executive order which would otherwise accrue to him because of the acquisition of an occupational status entitling him to a nonimmigrant status under paragraph (15) (A), (15) (E), or (15) (G) of section 101 (a).

#### CHANGE OF NONIMMIGRANT CLASSIFICATION

SEC. 248. The Attorney General may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status, except an alien classified as a nonimmigrant under paragraph 15 (D) of section 101 (a), or an alien classified as a nonimmigrant under paragraph (15) (C) of section 101 (a) unless he applies to have his classification changed from a classification under paragraph (15) (C) to a classification under paragraph (15) (A) or (15) (G) of section 101 (a).

#### RECORD OF ADMISSION FOR PERMANENT RESIDENCE IN THE CASE OF CERTAIN ALIENS WHO ENTERED THE UNITED STATES PRIOR TO JULY 1, 1924

SEC. 249. (a) A record of lawful admission for permanent residence may, in the discretion of the Attorney General and under such regulations as he may prescribe, be made in the case of any alien, if no such record is otherwise available and such alien shall satisfy the Attorney General that he—

(1) entered the United States prior to July 1, 1924;

(2) has had his residence in the United States continuously since such entry;

(3) is a person of good moral character;

(4) is not subject to deportation; and

(5) is not ineligible to citizenship.

(b) An alien in respect of whom a record of admission has been made as authorized by subsection (a), shall be deemed to have been lawfully admitted to the United States for permanent residence as of the date of his entry prior to July 1, 1924.

#### REMOVAL OF ALIENS WHO HAVE FALLEN INTO DISTRESS

SEC. 250. The Attorney General may remove from the United States any alien who falls into distress or who needs public aid from causes arising subsequent to his entry, and is desirous of being so removed, to the native country of such alien, or to the country from which he came, or to the country of which he is a citizen or subject,

or to any other country to which he wishes to go and which will receive him, at the expense of the appropriation for the enforcement of this Act.  Any alien so removed shall be ineligible to apply for or receive a visa or other documentation for readmission, or to apply for admission to the United States except with the prior approval of the Attorney General.

### Chapter 6—Special Provisions Relating to Alien Crewmen

#### Lists of Alien Crewmen; Reports of Illegal Landings

Sec. 251. (a) Upon arrival of any vessel or aircraft in the United States from any place outside the United States it shall be the duty of the owner, agent, consignee, master, or commanding officer thereof to deliver to an immigration officer at the port of arrival (1) a complete, true, and correct list containing the names of all aliens employed on such vessel or aircraft, the positions they respectively hold in the crew of the vessel or aircraft, when and where they were respectively shipped or engaged, and those to be paid off or discharged in the port of arrival; or (2) in the discretion of the Attorney General, such a list containing so much of such information, or such additional or supplemental information, as the Attorney General shall by regulations prescribe.  In the case of a vessel engaged solely in traffic on the Great Lakes, Saint Lawrence River, and connecting waterways, such lists shall be furnished at such times as the Attorney General may require.

(b) It shall be the duty of any owner, agent, consignee, master, or commanding officer of any vessel or aircraft to report to an immigration officer, in writing, as soon as discovered, all cases in which any alien crewman has illegally landed in the United States from the vessel or aircraft, together with a description of such alien and any information likely to lead to his apprehension.

(c) Before the departure of any vessel or aircraft from any port in the United States, it shall be the duty of the owner, agent, consignee, master, or commanding officer thereof, to deliver to an immigration officer at that port (1) a list containing the names of all alien employees who were not employed thereon at the time of the arrival at that port but who will leave such port thereon at the time of the departure of such vessel or aircraft and the names of those, if any, who have been paid off or discharged, and of those, if any, who have deserted or landed at that port, or (2) in the discretion of the Attorney General, such a list containing so much of such information, or such additional or supplemental information, as the Attorney General shall

by regulations prescribe. In the case of a vessel engaged solely in traffic on the Great Lakes, Saint Lawrence River, and connecting waterways, such lists shall be furnished at such times as the Attorney General may require.

(d) In case any owner, agent, consignee, master, or commanding officer shall fail to deliver complete, true, and correct lists or reports of aliens, or to report cases of desertion or landing, as required by subsections (a), (b), and (c), such owner, agent, consignee, master, or commanding officer, shall, if required by the Attorney General, pay to the collector of customs of any customs district in which the vessel or aircraft may at any time be found the sum of $10 for each alien concerning whom such lists are not delivered or such reports are not made as required in the preceding subsections. No such vessel or aircraft shall be granted clearance from any port at which it arrives pending the determination of the question of the liability to the payment of such fine, and if such fine is imposed, while it remains unpaid. No such fine shall be remitted or refunded. Clearance may be granted prior to the determination of such question upon desposit of a bond or a sum sufficent to cover such fine.

(e) The Attorney General is authorized to prescribe by regulations the circumstances under which a vessel or aircraft shall be deemed to be arriving in, or departing from the United States or any port thereof within the meaning of any provision of this chapter.

### CONDITIONAL PERMITS TO LAND TEMPORARILY

Sec. 252. (a) No alien crewman shall be permitted to land temporarily in the United States except as provided in this section, section 212 (d) (3), section 212 (d) (5), and section 253. If an immigration officer finds upon examination that an alien crewman is a nonimmigrant under paragraph (15) (D) of section 101 (a) and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subsequent proceedings as provided in subsection (b), and for a period of time, in any event, not to exceed—

    (1) the period of time (not exceeding twenty-nine days) during which the vessel or aircraft on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel or aircraft on which he arrived; or

    (2) twenty-nine days, if the immigration officer is satisfied that

the crewman intends to depart, within the period for which he is permitted to land, on a vessel or aircraft other than the one on which he arrived.

(b) Pursuant to regulations prescribed by the Attorney General, any immigration officer may, in his discretion, if he determines that an alien is not a bona fide crewman, or does not intend to depart on the vessel or aircraft which brought him, revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a) (1), take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel or aircraft, if practicable, and such crewman shall be deported from the United States at the expense of the transportation line which brought him to the United States. Until such alien is so deported, any expenses of his detention shall be borne by such transportation company. Nothing in this section shall be construed to require the procedure prescribed in section 242 of this Act to cases falling within the provisions of this subsection.

(c) Any alien crewman who willfully remains in the United States in excess of the number of days allowed in any conditional permit issued under subsection (a) shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $500 or shall be imprisoned for not more than six months, or both.

HOSPITAL TREATMENT OF ALIEN CREWMEN AFFLICTED WITH CERTAIN DISEASES

SEC. 253. An alien crewman, including an alien crewman ineligible for a conditional permit to land under section 252 (a), who is found on arrival in a port of the United States to be afflicted with any of the disabilities or diseases mentioned in section 255, shall be placed in a hospital designated by the immigration officer in charge at the port of arrival and treated, all expenses connected therewith, including burial in the event of death, to be borne by the owner, agent, consignee, commanding officer, or master of the vessel or aircraft, and not to be deducted from the crewman's wages. No vessel or aircraft shall be granted clearance until such expenses are paid, or their payment appropriately guaranteed, and the collector of customs is so notified by the immigration officer in charge. An alien crewman suspected of being afflicted with any such disability or disease may be removed from the vessel or aircraft on which he arrived to an immigration station, or other appropriate place, for such observation as will enable the examining surgeons to determine definitely whether or not he is

81

so afflicted, all expenses connected therewith be borne in the manner hereinbefore prescribed. In cases in which it appears to the satisfaction of the immigration officer in charge that it will not be possible within a reasonable time to effect a cure, the return of the alien crewman shall be enforced on, or at the expense of, the transportation line on which he came, upon such conditions as the Attorney General shall prescribe, to insure that the alien shall be properly cared for and protected, and that the spread of contagion shall be guarded against.

### CONTROL OF ALIEN CREWMEN

Sec. 254. (a) The owner, agent, consignee, charterer, master, or commanding officer of any vessel or aircraft arriving in the United States from any place outside thereof who fails (1) to detain on board the vessel, or in the case of an aircraft to detain at a place specified by an immigration officer at the expense of the airline, any alien crewman employed thereon until an immigration officer has completely inspected such alien crewman, including a physical examination by the medical examiner, or (2) to detain any alien crewman on board the vessel, or in the case here of an aircraft at a place specified by an immigration officer at the expense of the airline, after such inspection unless a conditional permit to land temporarily has been granted such alien crewman under section 252 or unless an alien crewman has been permitted to land temporarily under section 212 (d) (5) or 253 for medical or hospital treatment, or (3) to deport such alien crewman if required to do so by an immigration officer, whether such deportation requirement is imposed before or after the crewman is permitted to land temporarily under section 212 (d) (5), 252, or 253, shall pay to the collector of customs of the customs district in which the port of arrival is located or in which the failure to comply with the orders of the officer occurs the sum of $1,000 for each alien crewman in respect of whom any such failure occurs. No such vessel or aircraft shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs. The Attorney General may, upon application in writing therefor, mitigate such penalty to not less than $200 for each alien crewman in respect of whom such failure occurs, upon such terms as he shall think proper.

S. 2842——6

(b) Proof that an alien crewman did not appear upon the outgoing manifest of the vessel or aircraft on which he arrived in the United States from any place outside thereof, or that he was reported by the master or commanding officer of such vessel or aircraft as a deserter, shall be prima facie evidence of a failure to detain or deport such alien crewman.

(c) If the Attorney General finds that deportation of an alien crewman under this section on the vessel or aircraft on which he arrived is impracticable or impossible, or would cause undue hardship to such alien crewman, he may cause the alien crewman to be deported from the port of arrival or any other port on another vessel or aircraft of the same transportation line, unless the Attorney General finds this to be impracticable. All expenses incurred in connection with such deportation, including expenses incurred in transferring an alien crewman from one place in the United States to another under such conditions and safeguards as the Attorney General shall impose, shall be paid by the vessel or aircraft on which the alien arrived in the United States. The vessel or aircraft on which the alien arrived shall not be granted clearance until such expenses have been paid or their payment guaranteed to the satisfaction of the Attorney General. An alien crewman who is transferred within the United States in accordance with this subsection shall not be regarded as having been landed in the United States.

EMPLOYMENT ON PASSENGER VESSELS OF ALIENS AFFLICTED WITH CERTAIN DISABILITIES

SEC. 255. It shall be unlawful for any vessel or aircraft carrying passengers between a port of the United States and a port outside thereof to have employed on board upon arrival in the United States any alien afflicted with feeble-mindedness, insanity, epilepsy, tuberculosis in any form, leprosy, or any dangerous contagious disease. If it appears to the satisfaction of the Attorney General, from an examination made by a medical officer of the United States Public Health Service, and is so certified by such officer, that any such alien was so afflicted at the time he was shipped or engaged and taken on board such vessel or aircraft and that the existence of such affliction might have been detected by means of a competent medical examination at such time, the owner, commanding officer, agent, consignee, or master thereof shall pay for each alien so afflicted to the collector of customs of the customs district in which the port of arrival is located the sum of $50. No vessel or aircraft shall be granted clearance pending the determination of the question of the liability to the

payment of such sums, or while such sums remain unpaid, except that
clearance may be granted prior to the determination of such question
upon the deposit of an amount sufficient to cover such sums or of a
bond approved by the collector of customs with sufficient surety to
secure the payment thereof.  Any such fine may, in the discretion of
the Attorney General, be mitigated or remitted.

### DISCHARGE OF ALIEN CREWMEN

SEC. 256. It shall be unlawful for any person, including the owner,
agent, consignee, charterer, master, or commanding officer of any
vessel or aircraft, to pay off or discharge any alien crewmen, except
an alien lawfully admitted for permanent residence, employed on
board a vessel or aircraft arriving in the United States without first
having obtained the consent of the Attorney General.  If it shall
appear to the satisfaction of the Attorney General that any alien
crewman has been paid off or discharged in the United States in vio-
lation of the provisions of this section, such owner, agent, consignee,
charterer, master, commanding officer, or other person, shall pay
to the collector of customs of the customs district in which the violation
occurred the sum of $1,000 for each such violation.  No vessel or air-
craft shall be granted clearance pending the determination of the
question of the liability to the payment of such sums, or while such
sums remain unpaid, except that clearance may be granted prior to the
determination of such question upon the deposit of an amount suffi-
cient to cover such sums, or of a bond approved by the collector of
customs with sufficient surety to secure the payment thereof.  Such
fine may, in the discretion of the Attorney General, be mitigated to
not less than $500 for each violation, upon such terms as he shall
think proper.

### BRINGING ALIEN CREWMEN INTO UNITED STATES WITH INTENT TO EVADE IMMIGRATION LAWS

SEC. 257. Any person, including the owner, agent, consignee, master,
or commanding officer of any vessel or aircraft arriving in the United
States from any place outside thereof, who shall knowingly sign on
the vessel's articles, or bring to the United States as one of the crew
of such vessel or aircraft, any alien, with intent to permit or assist
such alien to enter or land in the United States in violation of law,
or who shall falsely and knowingly represent to a consular officer at
the time of application for visa, or to the immigration officer at the
port of arrival in the United States, that such alien is a bona fide
member of the crew employed in any capacity regularly required for

normal operation and services aboard such vessel or aircraft, shall be liable to a penalty not exceeding $5,000 for each such violation, for which sum such vessel or aircraft shall be liable and may be seized and proceeded against by way of libel in any district court of the United States having jurisdiction of the offense.

## CHAPTER 7—REGISTRATION OF ALIENS

### ALIENS SEEKING ENTRY INTO THE UNITED STATES

SEC. 261. No visa shall be issued to any alien seeking to enter the United States until such alien has been registered and fingerprinted in accordance with section 221 (b), unless such alien has been exempted from being fingerprinted as provided in that section.

### REGISTRATION OF ALIENS IN THE UNITED STATES

SEC. 262. (a) Except where the registration and fingerprinting requirements have been waived under section 221 (b), it shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and finger-printed under section 221 (b) of this Act or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days.

(b) Except where the registration and fingerprinting requirements have been waived under section 221 (b), it shall be the duty of every parent or legal guardian of any alien now or hereafter in the United States, who (1) is less than fourteen years of age, (2) has not been registered under section 221 (b) of this Act or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for the registration of such alien before the expiration of such thirty days. Whenever any alien attains his fourteenth birthday in the United States he shall, within thirty days thereafter, apply in person for registration and to be finger-printed.

### PROVISIONS GOVERNING REGISTRATION OF SPECIAL GROUPS

SEC. 263. Notwithstanding the provisions of sections 261 and 262, the Attorney General is authorized to prescribe special regulations and forms for the registration and fingerprinting, except where these requirements have been waived under section 221 (b) of this Act, of (1) alien crewmen, (2) holders of border-crossing identification cards, (3) aliens confined in institutions within the United States, (4) aliens under order of deportation, and (5) aliens of any other class not law-fully admitted to the United States for permanent residence.

FORMS AND PROCEDURE

SEC. 264. (a) The Attorney General and the Secretary of State jointly are authorized and directed to prepare forms for the registration and fingerprinting of aliens under section 261 of this title, and the Attorney General is authorized and directed to prepare forms for the registration and fingerprinting of aliens under section 262 of this title. Such forms shall contain inquiries with respect to (1) the date and place of entry of the alien into the United States; (2) activities in which he has been and intends to be engaged; (3) the length of time he expects to remain in the United States; (4) the police and criminal record, if any, of such alien; and (5) such additional matters as may be prescribed.

(b) All registration and fingerprint records made under the provisions of this title shall be confidential, and shall be made available only to such persons or agencies as may be designated by the Attorney General.

(c) Every person required to apply for the registration of himself or another under this title shall submit under oath the information required for such registration. Any person authorized under regulations issued by the Attorney General to register aliens under this title shall be authorized to administer oaths for such purpose.

(d) Every alien in the United States who has been registered and fingerprinted under the provisions of the Alien Registration Act, 1940, or under the provisions of this Act shall be issued a certificate of alien registration or an alien registration receipt card in such form and manner and at such time as shall be prescribed under regulations issued by the Attorney General.

(e) Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to subsection (d). Any alien who willfully fails to comply with the provisions of this subsection shall be guilty of a misdemeanor and shall upon conviction for each offense be fined not to exceed $100 or be imprisoned not more than thirty days, or both.

NOTICES OF CHANGE OF ADDRESS

SEC. 265. Every alien required to be registered under this title, or who was required to be registered under the Alien Registration Act, 1940, as amended, who is within the United States on the first day of January following the effective date of this Act, or on the first day of January of each succeeding year shall, within thirty days fol-

lowing such dates, notify the Attorney General in writing of his current address and furnish such additional information as may by regulations be required by the Attorney General.  Any such alien shall likewise notify the Attorney General in writing of each change of address and new address within ten days from the date of such change.  Any such alien who is temporarily absent from the United States on the first day of January following the effective date of this Act, or on the first day of January of any succeeding year shall furnish his current address and other information as required by this section within thirty days after his return.  Any such alien in the United States in a lawful temporary residence status shall in like manner also notify the Attorney General in writing of his address at the expiration of each three-month period during which he remains in the United States, regardless of whether there has been any change of address. In the case of an alien for whom a parent or legal guardian is required to apply for registration, the notice required by this section shall be given by such parent or legal guardian.

### PENALTIES

Sec. 266. (a)  Any alien required to apply for registration and to be fingerprinted in the United States who willfully fails or refuses to make such application or to be fingerprinted, and any parent or legal guardian required to apply for the registration of any alien who willfully fails or refuses to file application for the registration of such alien shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $1,000 or be imprisoned not more than six months, or both.

(b)  Any alien or any parent or legal guardian in the United States of any alien who willfully fails to give written notice to the Attorney General, as required by section 265 of this title, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $200 or be imprisoned not more than thirty days, or both.

(c)  Any alien or any parent or legal guardian of any alien, who files an application for registration, containing statements known by him to be false, or who procures or attempts to procure registration of himself or another person through fraud, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not to exceed $1,000, or be imprisoned not more than six months, or both.

(d)  Any person who with unlawful intent photographs, prints, or in any other manner makes, or executes, any engraving, photograph, print, or impression in the likeness of any certificate of alien registra-

tion or an alien registration receipt card or any colorable imitation thereof, except when and as authorized under such rules and regulations as may be prescribed by the Attorney General, shall upon conviction be fined not to exceed $5,000 or be imprisoned not more than five years, or both.

## Chapter 8—General Penalty Provisions

### UNAUTHORIZED LANDING OF VESSELS; PREVENTION OF UNAUTHORIZED LANDING OF ALIENS

Sec. 271. (a) It shall be the duty of every person, including the owners, masters, officers, and agents of vessels, aircraft, transportation lines, or international bridges or toll roads, other than transportation lines which enter into a contract as provided in section 238, bringing an alien to, or providing a means for an alien to come to, the United States (except an alien crewman whose case is within the purview of section 254) to prevent the landing or entry of such alien into the United States at any port or place other than one designated by the Attorney General as a port of entry for aliens, or at any time or place other than as designated by the immigration officers at such port. Any such person, owner, master, officer, or agent who fails to comply with any of the foregoing requirements shall be liable to a penalty to be imposed by the Attorney General of not less than $200 nor more than $1,000 for each such failure. The determination by the Attorney General of liability and the amount thereof under this section shall be final. In the event of failure or refusal to pay upon demand by the Attorney General, such penalty may be recovered by civil suit, in the name of the United States, against any person made subject thereto by this section. In cases involving vessels or aircraft such penalty shall, in addition, be a lien against the vessel or aircraft and when imposed, may, at the discretion of the Attorney General, be collected by libel against the vessel or in the case of aircraft by proceedings in rem which shall conform as nearly as may be to civil suits in admiralty. The Supreme Court of the United States and, under its direction, other courts of the United States are authorized to prescribe rules regulating such proceedings against aircraft in any particular not otherwise provided by law. Any aircraft made subject to a lien by this section may be summarily seized by, and placed in the custody of, such persons as the Attorney General may by regulation prescribe. The aircraft may be released from such custody upon deposit of such amount not exceeding $1,000 as the Attorney General prescribe, or of a bond in such sum and with such sureties as

the Attorney General may prescribe, conditioned upon the payment of the penalty which may be finally determined by the Attorney General.

(b) Proof that the alien failed to present himself at the time and place designated by the immigration officers shall be prima facie evidence that such alien has landed in the United States at a time or place other than as designated by the immigration officers.

BRINGING IN ALIENS SUBJECT TO DISABILITY OR AFFLICTED WITH DISEASE

SEC. 272. (a) It shall be unlawful for any person, including any transportation company other than railway lines entering the United States from foreign contiguous territory, or the master, commanding officer, owner, agent, or consignee of any vessel or aircraft to bring into the United States any alien (other than an alien crewman) who is (1) feeble-minded, (2) insane, (3) an epileptic, (4) a chronic alcoholic, (5) afflicted with tuberculosis in any form, (6) afflicted with leprosy or any dangerous contagious disease, or (7) a narcotic drug addict, and if it shall appear to the Attorney General that any alien so brought to the United States was afflicted with any of such diseases or disabilities at the time of foreign embarkation, and that the existence of such disease or disability might have been detected by means of a competent medical examination at such time, such person or transportation company or the master, commanding officer, owner, agent, or consignee of any such vessel or aircraft shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival for each and every violation of the provisions of this subsection, such latter sum to be delivered by the collector of customs to the alien on whose account assessed.

(b) It shall also be unlawful for any such person to bring to any port of the United States any alien afflicted with any mental defect other than those enumerated in subsection (a) of this section, or any physical defect of a nature which may affect his ability to earn a living, as provided in section 212 (a) (7), and if it shall appear to the satisfaction of the Attorney General that any alien so brought to the United States was so afflicted at the time of foreign embarkation and that the existence of such mental or physical defect might have been detected by means of a competent medical examination at such time, such person shall pay to the collector of customs of the customs

89

district in which the port of arrival is located, the sum of $250, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival for each and every violation of this provision, such latter sum to be delivered by the collector of customs to the alien for whose account assessed.

(c) No vessel or aircraft shall be granted clearance papers pending determination of the question of liability to the payment of any fine under this section, or while the fines remain unpaid, nor shall such fines be remitted or refunded; but clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fines or of a bond with sufficient surety to secure the payment thereof, approved by the collector of customs.

(d) Nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of entry in the United States aliens who are entitled by law to exemption from the excluding provisions of section 212 (a).

(e) As used in this section, the term "person" means the owner, master, agent, commanding officer, charterer, or consignee of any vessel or aircraft.

### UNLAWFUL BRINGING OF ALIENS INTO UNITED STATES

SEC. 273. (a) It shall be unlawful for any person, including any transportation company, or the owner, master, commanding officer, agent, charterer, or consignee of any vessel or aircraft, to bring to the United States from any place outside thereof (other than from foreign contiguous territory) any alien who does not have an unexpired visa, if a visa was required under this Act or regulations issued thereunder.

(b) If it appears to the satisfaction of the Attorney General that any alien has been so brought, such person, or transportation company, or the master, commanding officer, agent, owner, charterer, or consignee of any such vessel or aircraft, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien so brought and, except in the case of any such alien who is admitted, or permitted to land temporarily, in addition, a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, such latter sum to be delivered by the collector of customs to the alien on whose account the assessment is made. No vessel or aircraft shall be granted clearance pending the determination of the liability to the payment of such sums or while such sums remain

unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of an amount sufficient to cover such sums, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

(c) Such sums shall not be remitted or refunded, unless it appears to the satisfaction of the Attorney General that such person, and the owner, master, commanding officer, agent, charterer, and consignee of the vessel or aircraft, prior to the departure of the vessel or aircraft from the last port outside the United States, did not know, and could not have ascertained by the exercise of reasonable diligence, that the individual transported was an alien and that a visa was required.

(d) The owner, charterer, agent, consignee, commanding officer, or master of any vessel or aircraft arriving at the United States from any place outside thereof who fails to detain on board or at such other place as may be designated by an immigration officer any alien stowaway until such stowaway has been inspected by an immigration officer, or who fails to detain such stowaway on board or at such other designated place after inspection if ordered to do so by an immigration officer, or who fails to deport such stowaway on the vessel or aircraft on which he arrived or on another vessel or aircraft at the expense of the vessel or aircraft on which he arrived when required to do so by an immigration officer, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien stowaway, in respect of whom any such failure occurs. Pending final determination of liability for such fine, no such vessel or aircraft shall be granted clearance, except that clearance may be granted upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

(e) The owner, charterer, agent, consignee, commanding officer, or master of any vessel or aircraft arriving in the United States from any place outside thereof which has on board any alien stowaway shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $500 for each such alien stowaway aboard such vessel or aircraft. Pending final determination for liability to such fine, no such vessel or aircraft shall be granted clearance while such fine is unpaid, except that clearance may be granted upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs. The Attorney General may, upon application in

writing therefor, remit, refund, or mitigate such fine or penalty for any such violation for which such penalty is imposed, upon proof satisfactory to him that the presence of the alien stowaway aboard the vessel or aircraft at the time of its embarkation from the last port outside the United States was not known to and could not have been ascertained by the exercise of reasonable diligence by the owner, charterer, agent, consignee, commanding officer, or master of the vessel or aircraft aboard which such stowaway arrived in the United States.

### BRINGING IN AND HARBORING CERTAIN ALIENS

SEC. 274. (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who brings into or lands in the United States by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise, any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or to reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs.

(b) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

(1) knowing or having reasonable cause to believe that he is in the United States in violation of law, transports or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law; or

(2) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation; or

(3) encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or to reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens,

shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs.

(c) No officer or person shall have authority to make any arrest for a violation of any provision of this section except officers and employees of the Service designated by the Attorney General, either individually or as a member of a class, and all other officers of the United States whose duty it is to enforce criminal laws.

### ENTRY OF ALIEN AT IMPROPER TIME OR PLACE; MISREPRESENTATION AND CONCEALMENT OF FACTS

Sec. 275. Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both, and for a subsequent commission of any such offenses shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not more than two years, or by a fine of not more than $1,000, or both.

### REENTRY OF DEPORTED ALIEN

Sec. 276. Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

#### AIDING OR ASSISTING SUBVERSIVE ALIEN TO ENTER THE UNITED STATES

SEC. 277. Any person who knowingly aids or assists any alien exclud-able under section 212 (a) (27), (28), or (29) to enter the United States, or who connives or conspires with any person or persons to allow, procure, or permit any such alien to enter the United States, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine of not more than $5,000 or by imprisonment for not more than five years, or both.

#### IMPORTATION OF ALIEN FOR IMMORAL PURPOSE

SEC. 278. The importation into the United States of any alien for the purpose of prostitution, or for any other immoral purpose, is hereby forbidden. Whoever shall, directly or indirectly, import, or attempt to import into the United States any alien for the purpose of prostitution or for any other immoral purpose, or shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, any alien, in pursuance of such illegal importation, shall, in every such case, be guilty of a felony and upon conviction thereof shall be punished by a fine of not more than $5,000 and by imprisonment for a term of not more than ten years. The trial and punishment of offenses under this section may be in any district to or into which such alien is brought in pursuance of importation by the person or persons accused, or in any district in which a violation of any of the provisions of this section occurs. In all prosecutions under this section, the testimony of a husband or wife shall be admissible and competent evidence against each other.

#### JURISDICTION OF DISTRICT COURTS

SEC. 279. The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this title. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under sections 275 or 276 may be apprehended. No suit or proceeding for a violation of any of the provisions of this title shall be settled,

compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor.

### COLLECTION OF PENALTIES AND EXPENSES

SEC. 280. Notwithstanding any other provisions of this title, the withholding or denial of clearance of or a lien upon any vessel or aircraft provided for in section 231, 237, 239, 243, 251, 253, 254, 255, 256, 271, 272, or 273 of this title shall not be regarded as the sole and exclusive means or remedy for the enforcement of payment of any fine, penalty or expenses imposed or incurred under such sections, but, in the discretion of the Attorney General, the amount thereof may be recovered by civil suit, in the name of the United States, from any person made liable under any of such sections.

## CHAPTER 9—MISCELLANEOUS

### SCHEDULE OF FEES

SEC. 281. The following fees shall be charged:

(1) For the furnishing and verification of each application for an immigrant visa (which shall include the furnishing and verification of the duplicate), $5;

(2) For the issuance of each immigrant visa, $20;

(3) For the issuance of each reentry permit, $10;

(4) For the filing of each application for adjustment of status under sections 245 and 248, for the creation of a record of admission for permanent residence under section 249, or for suspension of deportation, $25;

(5) For the issuance of each extension of stay to nonimmigrants, other than nonimmigrants described in section 101 (a) (15) (F) and, upon a basis of reciprocity, the nonimmigrants described in section 101 (a) (15) (A) (iii) or 101 (a) (15) (G) (v), $10;

(6) For filing with the Attorney General of each petition under sections 204 (b), 205 (b), and 215 (c), $10;

(7) For approval of each application for, including issuance of each certificate of, admission to practice as attorney or representative before the Service, pursuant to such regulations as may be prescribed by the Attorney General, $25; or

(8) For the creation of a record of admission for permanent residence under section 4 of the Displaced Persons Act of 1948, as amended, $18.

The fees for the furnishing and verification of applications for visas by nonimmigrants of each foreign country and for the issuance of visas

95

to nonimmigrants of each foreign country shall be prescribed by the Secretary of State in amounts corresponding, as nearly as practicable, to the total of all similar visa, entry, residence, or other fees, taxes, or charges assessed or levied against nationals of the United States by the foreign countries of which such nonimmigrants are nationals or stateless residents: *Provided*, That nonimmigrant visas issued to aliens coming to the United States in transit to and from the headquarters district of the United Nations in accordance with the provisions of the Headquarters Agreement shall be gratis.

### PRINTING OF REENTRY PERMITS AND BLANK FORMS OF MANIFESTS AND CREW LISTS

SEC. 282. (a) Reentry permits issued under section 223 shall be printed on distinctive safety paper and shall be prepared and issued under regulations prescribed by the Attorney General.

(b) The Public Printer is authorized to print for sale to the public by the Superintendent of Documents, upon prepayment, copies of blank forms of manifests and crew lists and such other forms as may be prescribed and authorized by the Attorney General to be sold pursuant to the provisions of this title.

### TRAVEL EXPENSES AND EXPENSE OF TRANSPORTING REMAINS OF OFFICERS AND EMPLOYEES WHO DIE OUTSIDE THE UNITED STATES

SEC. 283. When officers, inspectors, or other employees of the Service are ordered to perform duties in a foreign country, or are transferred from one station to another, in the United States or in a foreign country, or while performing duties in any foreign country become eligible for voluntary retirement and return to the United States, they shall be allowed their traveling expenses in accordance with such regulations as the Attorney General may deem advisable, and they may also be allowed, within the discretion and under written orders of the Attorney General, the expenses incurred for the transfer of their wives and dependent children, their household effects and other personal property, including the expenses for packing, crating, freight, unpacking, temporary storage, and drayage thereof in accordance with the Act of August 2, 1946 (60 Stat. 806; 5 U. S. C., sec. 73b–1). The expense of transporting the remains of such officers, inspectors, or other employees who die while in, or in transit to, a foreign country in the discharge of their official duties to their former homes in this country for interment, and the ordinary and necessary expenses of such interment and of preparation for shipment, are authorized to be paid on the written order of the Attorney General.

## MEMBERS OF THE ARMED FORCES

SEC. 284. Nothing contained in this title shall be construed so as to limit, restrict, deny, or affect the coming into or departure from the United States of an alien member of the Armed Forces of the United States who is in the uniform of, or who bears documents identifying him as a member of, such Armed Forces, and who is coming to or departing from the United States under official orders or permits of such Armed Forces: *Provided,* That nothing contained in this section shall be construed to give to or confer upon any such alien any other privileges, rights, benefits, exemptions, or immunities under this Act, which are not otherwise specifically granted by this Act.

### DISPOSAL OF PRIVILEGES AT IMMIGRANT STATIONS

SEC. 285. (a) Subject to such conditions and limitations as the Attorney General shall prescribe, all exclusive privileges of exchanging money, transporting passengers or baggage, keeping eating houses, or other like privileges in connection with any United States immigrant station, shall be disposed of to the lowest responsible and capable bidder (other than an alien) in accordance with the provisions of section 3709 of the Revised Statutes, as amended (41 U. S. C. 5), and for the use of Government property in connection with the exercise of such exclusive privileges a reasonable rental may be charged.  The feeding of aliens, or the furnishing of any other necessary service connection with any United States immigrant station, may be performed by the Service without regard to the foregoing provisions of this subsection if the Attorney General shall find that it would be advantageous to the Government in terms of economy and efficiency. No intoxicating liquors shall be sold at any immigrant station.

(b)  Such articles determined by the Attorney General to be necessary to the health and welfare of aliens detained at any immigrant station, when not otherwise readily procurable by such aliens, may be sold at reasonable prices to such aliens through Government canteens operated by the Service, under such conditions and limitations as the Attorney General shall prescribe.

(c)  All rentals or other receipts accruing from the disposal of privileges, and all moneys arising from the sale of articles through Service-operated canteens, authorized by this section, shall be covered into the Treasury to the credit of the appropriation for the enforcement of this title.

DISPOSITION OF MONEYS COLLECTED UNDER THE PROVISIONS OF THIS TITLE

SEC. 286. (a) All moneys paid into the Treasury to reimburse the Service for detention, transportation, hospitalization, and all other expenses of detained aliens paid from the appropriation for the enforcement of this Act, and all moneys paid into the Treasury to reimburse the Service for expenses of landing stations referred to in section 238 (c) paid by the Service from the appropriation for the enforcement of this Act, shall be credited to the appropriation for the enforcement of this Act for the fiscal year in which the expenses were incurred.

(b) Except as otherwise provided in subsection (a), or in any other provision of this title, all moneys received in payment of fees and administrative fines and penalties under this title shall be covered into the Treasury as miscellaneous receipts: *Provided, however*, That all fees received from applicants residing in the Virgin Islands of the United States, and in Guam, required to be paid under section 281, shall be paid over to the Treasury of the Virgin Islands and to the Treasury of Guam, respectively.

POWERS OF IMMIGRATION OFFICERS AND EMPLOYEES

SEC. 287. (a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

(1) to interrogate any alien who the officer or employee has reason to believe has no right to be or remain in the United States, or who has otherwise violated the immigration laws;

(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, or expulsion of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States;

(3) to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, within a reasonable distance from any external boundary of the United States, if there are reasonable grounds for believing that any alien attempting to enter the United States unlawfully is aboard such vessels or is in such car, aircraft, conveyance, or vehicle; and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; and

(4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, or expulsion of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States. Any such employee shall also have the power to execute any warrant or other process issued by any officer under any law regulating the admission, exclusion, or expulsion of aliens.

(b) Any officer or employee of the Service designated by the Attorney General, whether individually or as one of a class, shall have power and authority to administer oaths and to take and consider evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States, or concerning any matter which is material or relevant to the enforcement of this Act and the administration of the Service; and any person to whom such oath has been administered, under the provisions of this Act, who shall knowingly or willfully give false evidence or swear to any false statement concerning any matter referred to in this subsection shall be guilty of perjury and shall be punished as provided by section 1621, title 18, United States Code.

(c) Any officer or employee of the Service authorized and designated under regulations prescribed by the Attorney General, whether individually or as one of a class, shall have power to conduct a search, without warrant, of the person, and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer or employee may have reasonable cause to

suspect that grounds exist for exclusion from the United States under this Act which would be disclosed by such search.

(d) When the Attorney General or any officer, designated either individually or as one of a class by the Attorney General for that purpose, has information indicating a reasonable cause to believe that in any designated lands or other property aliens are illegally within the United States, he shall issue his warrant authorizing the immigration officer named therein to go upon or within such designated lands or other property, other than a dwelling, in which the warrant states there may be aliens illegally within the United States, for the purpose of interrogating such aliens concerning their right to enter or to be or remain in the United States. Such warrant shall state therein the time of day or night for its use and the period of its validity which in no case shall be construed as affecting any authority granted in the preceding subsections of this section.

### LOCAL JURISDICTION OVER IMMIGRANT STATIONS

SEC. 288. The officers in charge of the various immigrant stations shall admit therein the proper State and local officers charged with the enforcement of the laws of the State or Territory of the United States in which any such immigrant station is located in order that such State and local officers may preserve the peace and make arrests for crimes under the laws of the States and Territories. For the purpose of this section the jurisdiction of such State and local officers and of the State and local courts shall extend over such immigrant stations.

### AMERICAN INDIANS BORN IN CANADA

SEC. 289. Nothing in this title shall be construed to affect the right of American Indians born in Canada to pass the borders of the United States.

### CENTRAL FILE; INFORMATION FROM OTHER DEPARTMENTS AND AGENCIES

SEC. 290. (a) There shall be established in the office of the Commissioner, for the use of the security and enforcement agencies of the Government of the United States, a central index, which shall contain the names of all aliens heretofore admitted to the United States, or excluded therefrom, insofar as such information is available from the existing records of the Service, and the names of all aliens hereafter admitted to the United States, or excluded therefrom, the names of their sponsors of record, if any, and such other relevant information as the Attorney General shall require as an aid to the proper enforcement of this Act.

(b) Any information in any records kept by any department or agency of the Government as to the identity and location of aliens in the United States shall be made available to the Service upon request made by the Attorney General to the head of any such department or agency.

(c) The Federal Security Administrator shall notify the Attorney General upon request whenever any alien is issued a social security account number and social security card. The Administrator shall also furnish such available information as may be requested by the Attorney General regarding the identity and location of aliens in the United States.

(d) A written certification signed by the Attorney General or by any officer of the Service designed by the Attorney General to make such certification, that after diligent search no record or entry of a specified nature is found to exist in the records of the Service, shall be admissible as evidence in any proceeding as evidence that the records of the Service contain no such record or entry, and shall have the same effect as the testimony of a witness given in open court.

### BURDEN OF PROOF

SEC. 291. Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is not subject to exclusion under any provision of this Act, and, if an alien, that he is entitled to the nonimmigrant, quota immigrant, or nonquota immigrant status claimed, as the case may be. If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa or other document required for entry, no visa or other document required for entry shall be issued to such person, nor shall such person be admitted to the United States unless he establishes to the satisfaction of the Attorney General that he is not subject to exclusion under any provision of this Act. In any deportation proceeding under chapter 5 against any alien, the burden of proof shall be upon such alien to show the time, place, and manner of his entry into the United States, but in presenting such proof he shall be entitled to the production of his visa or other entry document, if any and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service. If such burden of proof is not sustained, such alien shall be presumed to be in the United States in violation of law.

### RIGHT TO COUNSEL

SEC. 292. In any proceedings before the Attorney General, the Commissioner, or any officer or employee of the Service, or before the Board of Immigration Appeals, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

## TITLE III—NATIONALITY AND NATURALIZATION

### CHAPTER 1—NATIONALITY AT BIRTH AND BY COLLECTIVE NATURALIZATION

#### NATIONALS AND CITIZENS OF THE UNITED STATES AT BIRTH

SEC. 301. (a) The following shall be nationals and citizens of the United States at birth:

(1) a person born in the United States, and subject to the jurisdiction thereof;

(2) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: *Provided*, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property;

(3) a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person;

(4) a person born outside of the United States and its outlying possessions of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year prior to the birth of such person, and the other of whom is a national, but not a citizen of the United States;

(5) a person born in an outlying possession of the United States of parents one of whom is a citizen of the United States who has been physically present in the United States or one of its outlying possessions for a continuous period of one year at any time prior to the birth of such person;

(6) a person of unknown parentage found in the United States, until shown, prior to his attaining the age of twenty-one years, not to have been born in the United States;

(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a continuous period of one year: *Provided,* That any periods of honorable service in the armed forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph.

(b) Any person who is a national and citizen of the United States at birth under paragraph (7) of subsection (a), shall lose his nationality and citizenship unless he shall come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United States for at least five years: *Provided,* That such physical presence follows the attainment of the age of fourteen years and precedes the age of twenty-eight years.  For the purposes of this subsection, any period of time spent by a member of the family of an officer or employee of the United States, or a member of the Armed Forces of the United States, residing with such officer, employee, or member outside the United States, shall be considered to constitute physical presence in the United States.

(c) Subsection (b) shall apply to a person born abroad subsequent to May 24, 1934: *Provided, however,* That nothing contained in this subsection shall be construed to alter or affect the citizenship of any person born abroad subsequent to May 24, 1934, who, prior to the effective date of this Act, has taken up a residence in the United States before attaining the age of sixteen years, and thereafter, whether before or after the effective date of this Act, complies or shall comply with the residence requirements for retention of citizenship specified in subsections (g) and (h) of section 201 of the Nationality Act of 1940, as amended.

### PERSONS BORN IN PUERTO RICO ON OR AFTER APRIL 11, 1899

Sec. 302. All persons born in Puerto Rico on or after April 11, 1899, and prior to January 13, 1941, subject to the jurisdiction of the United States, residing on January 13, 1941, in Puerto Rico or other territory over which the United States exercises rights of sovereignty and not citizens of the United States under any other Act, are hereby declared to be citizens of the United States as of January 13, 1941. All persons born in Puerto Rico on or after January 13, 1941, and

subject to the jurisdiction of the United States, are citizens of the United States at birth.

#### PERSONS BORN IN THE CANAL ZONE OR REPUBLIC OF PANAMA ON OR AFTER FEBRUARY 26, 1904

SEC. 303. (a) Any person born in the Canal Zone on or after February 26, 1904, and whether before or after the effective date of this Act, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States, is declared to be a citizen of the United States.

(b) Any person born in the Republic of Panama on or after February 26, 1904, and whether before or after the effective date of this Act, whose father or mother or both at the time of the birth of such person was or is a citizen of the United States employed by the Government of the United States or by the Panama Railroad Company, is declared to be a citizen of the United States.

#### PERSONS BORN IN ALASKA ON OR AFTER MARCH 30, 1867

SEC. 304. A person born in Alaska on or after March 30, 1867, except a noncitizen Indian, is a citizen of the United States at birth. A noncitizen Indian born in Alaska on or after March 30, 1867, and prior to June 2, 1924, is declared to be a citizen of the United States as of June 2, 1924. An Indian born in Alaska on or after June 2, 1924, is a citizen of the United States at birth.

#### PERSONS BORN IN HAWAII

SEC. 305. A person born in Hawaii on or after August 12, 1898, and before April 30, 1900, is declared to be a citizen of the United States as of April 30, 1900. A person born in Hawaii on or after April 30, 1900, is a citizen of the United States at birth. A person who was a citizen of the Republic of Hawaii on Auugst 12, 1898, is declared to be a citizen of the United States as of April 30, 1900.

#### PERSONS LIVING IN AND BORN IN THE VIRGIN ISLANDS

SEC. 306. (a) The following persons and their children born subsequent to January 17, 1917, and prior to February 25, 1927, are declared to be citizens of the United States as of February 25, 1927:

(1) All former Danish citizens who, on January 17, 1917, resided in the Virgin Islands of the United States, and were residing in those islands or in the United States or Puerto Rico on February 25, 1927, and who did not make the declaration required to preserve their Danish citizenship by article 6 of the treaty entered into on August 4, 1916, between the United States and Denmark, or who, having made

such a declaration have heretofore renounced or may hereafter renounce it by a declaration before a court of record;

(2) All natives of the Virgin Islands of the United States who, on January 17, 1917, resided in those islands, and were residing in those islands or in the United States or Puerto Rico on February 25, 1927, and who were not on February 25, 1927, citizens or subjects of any foreign country;

(3) All natives of the Virgin Islands of the United States who, on January 17, 1917, resided in the United States, and were residing in those islands on February 25, 1927, and who were not on February 25, 1927, citizens or subjects of any foreign country; and

(4) All natives of the Virgin Islands of the United States who, on June 28, 1932, were residing in continental United States, the Virgin Islands of the United States, Puerto Rico, the Canal Zone, or any other insular possession or Territory of the United States, and who, on June 28, 1932, were not citizens or subjects of any foreign country, regardless of their place of residence on January 17, 1917.

(b) All persons born in the Virgin Islands of the United States on or after January 17, 1917, and prior to February 25, 1927, and subject to the jurisdiction of the United States, are declared to be citizens of the United States as of February 25, 1927; and all persons born in those islands on or after February 25, 1927, and subject to the jurisdiction of the United States, are declared to be citizens of the United States at birth.

### PERSONS LIVING IN AND BORN IN GUAM

SEC. 307. (a) The following persons, and their children born after April 11, 1899, are declared to be citizens of the United States as of August 1, 1950, if they were residing on August 1, 1950, on the island of Guam or other territory over which the United States exercises rights of sovereignty:

(1) All inhabitants of the island of Guam on April 11, 1899, including those temporarily absent from the island on that date, who were Spanish subjects, who after that date continued to reside in Guam or other territory over which the United States exercises sovereignty, and who have taken no affirmative steps to preserve or acquire foreign nationality; and

(2) All persons born in the island of Guam who resided in Guam on April 11, 1899, including those temporarily absent from the island on that date, who after that date continued to reside in Guam or other territory over which the United States exercises sovereignty, and

who have taken no affirmative steps to preserve or acquire foreign nationality.

(b) All persons born in the island of Guam on or after April 11, 1899 (whether before or after August 1, 1950), subject to the jurisdiction of the United States, are hereby declared to be citizens of the United States: *Provided*, That in the case of any person born before August 1, 1950, he has taken no affirmative steps to preserve or acquire foreign nationality.

(c) Any person hereinbefore described who is a citizen or national of a country other than the United States and desires to retain his present political status shall make, prior to August 1, 1952, a declaration under oath of such desire, said declaration to be in form and executed in the manner prescribed by regulations. From and after the making of such a declaration any such person shall be held not to be a national of the United States by virtue of this Act.

### NATIONALS BUT NOT CITIZENS OF THE UNITED STATES AT BIRTH

SEC. 308. Unless otherwise provided in section 301 of this title, the following shall be nationals, but not citizens, of the United States at birth:

(1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession;

(2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person; and

(3) A person of unknown parentage found in an outlying possession of the United States, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession.

### CHILDREN BORN OUT OF WEDLOCK

SEC. 309. (a) The provisions of paragraphs (3), (4), (5), and (7) of section 301 (a), and of paragraph (2) of section 308, of this title shall apply as of the date of birth to a child born out of wedlock on or after the effective date of this Act, if the paternity of such child is established while such child is under the age of twenty-one years by legitimation.

(b) Except as otherwise provided in section 404, the provisions of section 301 (a) (7) shall apply to a child born out of wedlock on or after January 13, 1941, and prior to the effective date of this Act, as of the date of birth, if the paternity of such child is established before or

after the effective date of this Act and while such child is under the age of twenty-one years by legitimation.

(c) Notwithstanding the provision of subsection (a) of this section, a person born, on or after the effective date of this Act, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

## Chapter 2—Nationality Through Naturalization

### JURISDICTION TO NATURALIZE

Sec. 310. (a) Exclusive jurisdiction to naturalize persons as citizens of the United States is hereby conferred upon the following specified courts: District courts of the United States now existing, or which may hereafter be established by Congress in any State, District Courts of the United States for the Territories of Hawaii and Alaska, and for the District of Columbia and for Puerto Rico, the District Court of the Virgin Islands of the United States, and the District Court of Guam; also all courts of record in any State or Territory now existing, or which may hereafter be created, having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited. The jurisdiction of all the courts herein specified to naturalize persons shall extend only to such persons resident within the respective jurisdiction of such courts, except as otherwise specifically provided in this title.

(b) A person who petitions for naturalization in any State court having naturalization jurisdiction may petition within the State judicial district or State judicial circuit in which he resides, whether or not he resides within the county in which the petition for naturalization is filed.

(c) The courts herein specified, upon request of the clerks of such courts, shall be furnished from time to time by the Attorney General with such blank forms as may be required in naturalization proceedings.

(d) A person may be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this title, and not otherwise.

### ELIGIBILITY FOR NATURALIZATION

Sec. 311. The right of a person to become a naturalized citizen of the United States shall not be denied or abridged because of race or

sex or because such person is married.   Notwithstanding section 405 (b), this section shall apply to any person whose petition for naturalization shall hereafter be filed, or shall have been pending on the effective date of this Act.

### REQUIREMENTS AS TO UNDERSTANDING THE ENGLISH LANGUAGE, HISTORY, PRINCIPLES, AND FORM OF GOVERNMENT OF THE UNITED STATES

SEC. 312. No person except as otherwise provided in this title shall hereafter be naturalized as a citizen of the United States upon his own petition who cannot demonstrate—

(1) an understanding of the English language, including an ability to read and speak words in ordinary usage in the English language: *Provided*, That this requirement shall not apply to any person physically unable to comply therewith, if otherwise qualified to be naturalized, or to any person who, at the time of petition for naturalization, is over fifty years of age and has been living in the United States for twenty years: *Provided further*, That the requirements of this section relating to ability to read shall be met if the applicant can read simple words and phrases to the end that a reasonable test of his literacy shall be made and that no extraordinary or unreasonable condition shall be imposed upon the applicant; and

(2) a knowledge and understanding of the fundamentals of the history, and of the principles and form of government, of the United States.

### PROHIBITION UPON THE NATURALIZATION OF PERSONS OPPOSED TO GOVERNMENT OR LAW, OR WHO FAVOR TOTALITARIAN FORMS OF GOVERNMENT

SEC. 313. (a) No person shall hereafter be naturalized as a citizen of the United States —

(1) who advocates or teaches, or who is a member of or affiliated with any organization that advocates or teaches, opposition to all organized government; or

(2) who is a member of or affiliated with (A) the Communist Party of the United States; (B) any other totalitarian party of the United States; (C) the Communist political association; (D) the Communist or other totalitarian party of any State of the United States, of any foreign state, or of any political or geographical subdivision of any foreign state; (E) any section, subsidiary, branch, affiliate, or subdivision of any such association or party, regardless of what name the group or organization

may have used, may now bear, or may hereafter adopt; or (F) who, regardless of whether he is within any of the other provisions of this section, is a member of or affiliated with any organization during the time it is registered or required to be registered under section 7 of the Subversive Activities Control Act of 1950, except that this clause shall not apply to an alien who is ineligible for naturalization solely by reason of (i) present membership or affiliation in such organization, if such alien does not have knowledge or reason to believe that such organization is a Communist organization and shall terminate such membership or affiliation within a reasonable time after acquiring such knowledge or reason to believe, or (ii) past membership or affiliation in such organization, if such alien terminated such membership or affiliation within a reasonable time after having acquired such knowledge or reason to believe; or

(3) who, although not within any of the other provisions of this section, advocates the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, or who is a member of or affiliated with any organization that advocates the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship, either through its own utterances or through any written or printed publications issued or published by or with the permission or consent of or under authority of such organization or paid for by the funds of such organization; or

(4) who advocates or teaches or who is a member of or affiliated with any organization that advocates or teaches (A) the overthrow by force or violence or other unconstitutional means of the Government of the United States or of all forms of law; or (B) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government because of his or their official character; or (C) the unlawful damage, injury, or destruction of property; or (D) sabotage; or

(5) who, in pursuance of any activities specified in paragraphs (1) through (4), writes or publishes or causes to be written or published, or knowingly circulates, distributes, prints, or displays, or knowingly causes to be circulated, distributed, printed,

published, or displayed, or knowingly has in his possession for the purpose of circulation, publication, distribution, or display, any written or printed matter, advocating or teaching opposition to all organized government, or advocating (A) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law; or (B) the duty, necessity, or propriety of the unlawful assaulting or killing of any officer or officers (either of specific individuals or of officers generally) of the Government of the United States or of any other organized government, because of his or their official character; or (C) the unlawful damage, injury, or destruction of property; or (D) sabotage; or (E) the economic, international, and governmental doctrines of world communism or the establishment in the United States of a totalitarian dictatorship; or

(6) who, in pursuance of any activities specified in paragraphs (1) through (4), is a member of or affiliated with any organization that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in subparagraph (5).

(b) The provisions of this section or of any other section of this Act shall not be construed as declaring that any of the organizations referred to in this section or in any other section of this Act do not advocate the overthrow of the Government of the United States by force, violence, or other unconstitutional means.

(c) The provisions of this section shall be applicable to any applicant for naturalization who at any time within a period of ten years immediately preceding the filing of the petition for naturalization or after such filing and before taking the final oath of citizenship is, or has been found to be within any of the classes enumerated within this section, notwithstanding that at the time the petition is filed he may not be included within such classes.

(d) Any person who is within any of the classes described in subsection (a) solely because of past membership in, or past affiliation with, a party or organization may be naturalized without regard to the provisions of subsection (c) if such person establishes that such membership or affiliation is or was involuntary, or without knowledge of the aims or purposes of such party or organization, or occurred and

terminated prior to the attainment by such alien of the age of sixteen years, or that such membership or affiliation is or was by operation of law, or was for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes.

### INELIGIBILITY TO NATURALIZATION OF DESERTERS FROM THE ARMED FORCES OF THE UNITED STATES

SEC. 314. A person who, at any time during which the United States has been or shall be at war, deserted or shall desert the military, air, or naval forces of the United States, or who, having been duly enrolled, departed, or shall depart from the jurisdiction of the district in which enrolled, or who, whether or not having been duly enrolled, went or shall go beyond the limits of the United States, with intent to avoid any draft into the military, air, or naval service, lawfully ordered, shall, upon conviction thereof by a court martial or a court of competent jurisdiction, be permanently ineligible to become a citizen of the United States; and such deserters and evaders shall be forever incapable of holding any office of trust or of profit under the United States, or of exercising any rights of citizens thereof.  This section shall not apply to an alien, who has been lawfully admitted to the United States as a nonimmigrant and who is maintaining such status, who prior to enrollment goes beyond the limits of the United States with intent to avoid draft into such service.

### ALIEN RELIEVED FROM TRAINING AND SERVICE IN THE ARMED FORCES OF THE UNITED STATES BECAUSE OF ALIENAGE BARRED FROM CITIZENSHIP

SEC. 315. Any alien, other than an alien who has been lawfully admitted to the United States as a nonimmigrant and who is maintaining such status, who applies or has applied for exemption or discharge from training or service in the armed forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

### REQUIREMENTS AS TO RESIDENCE, GOOD MORAL CHARACTER, ATTACHMENT TO THE PRINCIPLES OF THE CONSTITUTION, AND FAVORABLE DISPOSITION TO THE UNITED STATES

SEC. 316. (a) No person, except as otherwise provided in this title, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfuly admitted for permanent residence, within the United States for at least five years and during the five years

111

immediately preceding the date of filing his petition has been physically present therein for periods totaling at least half of that time, and who has resided within the State in which the petitioner filed the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

(b) Absence from the United States of more than six months but less than one year during the period for which continuous residence is required for admission to citizenship, immediately preceding the date of filing the petition for naturalization, or during the period between the date of filing the petition and the date of final hearing, shall break the continuity of such residence, unless the petitioner shall establish to the satisfaction of the court that he did not in fact abandon his residence in the United States during such period.

Absence from the United States for a continuous period of one year or more during the period for which continuous residence is required for admission to citizenship (whether preceding or subsequent to the filing of the petition for naturalization) shall break the continuity of such residence, except that in the case of a person who has been physically present and residing in the United States, after being lawfully admitted for permanent residence, for an uninterrupted period of at least one year, and who thereafter is employed by or under contract with the Government of the United States or an American institution of research recognized as such by the Attorney General, serves as a member of the Armed Forces of the United States, or is employed by an American or international social service or philanthropic organization which is recognized as such by the Attorney General and has a principal office in the United States, or is employed by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof more than 50 per centum of whose stock is owned by an American firm or corporation, or is employed by a public international organization of which the United States is a member by treaty or statute and by which the alien was not employed until after being lawfully admitted for permanent residence, no period of absence from the United States shall break the continuity of residence if—

(1) prior to the beginning of such period of employment or service (whether such period begins before or after his departure from the United States), but prior to the expiration of one year of continuous absence from the United States, the person has established to the satisfaction of the Attorney General that his absence from the United States for such period is to be on behalf of such Government, or on behalf of such American or international social service or philanthropic organization, or for the purpose of carrying on scientific research on behalf of such institution, or to be engaged in the development of such foreign trade and commerce or whose residence abroad is necessary to the protection of the property rights in such countries of such firm or corporation, or to be employed by a public international organization of which the United States is a member by treaty or statute and by which the alien was not employed until after being lawfully admitted for permanent residence; and

(2) such person proves to the satisfaction of the court that his absence from the United States for such period has been for such purpose.

(c) The granting of the benefits of subsection (b) of this section shall not relieve the petitioner from the requirement of physical presence within the United States for the period specified in subsection (a) of this section, except in the case of those persons who are employed by, or under contract with, the Government of the United States, or serve in the Armed Forces of the United States.

(d) In determining whether the petitioner has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the court shall not be limited to the petitioner's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the petitioner's conduct and acts at any time prior to that period.

(e) Naturalization shall not be granted to a petitioner by a naturalization court while registration proceedings or proceedings to require registration against an organization of which the petitioner is a member or affiliate are pending under section 13 or 14 of the Subversive Activities Control Act of 1950.

(f) A person who has resided in the United States since July 1, 1924, shall be deemed to have been lawfully admitted into the United States for permanent residence, and no record of registry under section 249

of this Act shall be required for the naturalization of any such person.

TEMPORARY ABSENCE OF PERSONS PERFORMING RELIGIOUS DUTIES

SEC. 317. Any person who is authorized to perform the ministerial or priestly functions of a religious denomination having a bona fide organization within the United States, or any person who is engaged solely by a religious denomination or by an interdenominational mission organization having a bona fide organization within the United States as a missionary, brother, nun, or sister, who (1) has been lawfully admitted to the United States for permanent residence, (2) has at any time thereafter and before filing a petition for naturalization been physically present and residing within the United States for an uninterrupted period of at least one year, and (3) has heretofore been or may hereafter be absent temporarily from the United States in connection with or for the purpose of performing the ministerial or priestly functions of such religious denomination, or serving as a missionary, brother, nun, or sister, shall be considered as being physically present and residing in the United States for the purpose of naturalization within the meaning of section 316· (a), notwithstanding any such absence from the United States, if he shall in all other respects comply with the requirements of the naturalization law. Such person shall prove to the satisfaction of the Attorney General and the naturalization court that his absence from the United States has been solely for the purpose of performing the ministerial or priestly functions of such religious denomination, or of serving as a missionary, brother, nun, or sister.

PREREQUISITES TO NATURALIZATION; BURDEN OF PROOF

SEC. 318. Except as otherwise provided in this title, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act.   The burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service.   Except as otherwise provided in section 329·(b), no person shall be naturalized against whom there is outstanding a final finding of deportability entered within ten years from the time of naturaliza-

tion pursuant to a warrant of arrest issued under the provisions of this or any other Act: *Provided*, That the findings of the Attorney General terminating deportation proceedings or suspending the deportation of an alien pursuant to the provisions of this Act, shall not be deemed binding in any way upon the naturalization court with respect to the question of whether such person has established his eligibility for naturalization as required by this title.

### MARRIED PERSONS

SEC. 319. (a) Any person whose spouse is a citizen of the United States may be naturalized upon compliance with all the requirements of this title, except the provisions of clause (1) of section 316 (a), if such person immediately preceding the date of filing his petition for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least two years, and during the two years immediately preceding the date of filing his petition has been living in marital union with the citizen spouse, who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State in which he filed his petition for at least six months.

(b) Any person, (1) whose spouse is (A) a citizen of the United States, (B) in the employment of the Government of the United States, or of an American institution of research recognized as such by the Attorney General, or of an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States, or a subsidiary thereof, or of a public international organization in which the United States participates by treaty or statute, or of an American or international social service or philanthropic organization recognized as such by the Attorney General, or serving in the armed forces of the United States, and (C) regularly stationed abroad in such employment, and (2) who is in the United States at the time of naturalization, and (3) who declares before the naturalization court in good faith an intention to take up residence within the United States immediately upon the termination of such employment abroad of the citizen spouse, may be naturalized upon compliance with all the requirements of the naturalization laws, except that no prior residence or specified period of physical presence within the United States or within the jurisdiction of the naturalization court or proof thereof shall be required.

CHILD BORN OUTSIDE OF UNITED STATES OF ONE ALIEN AND ONE CITIZEN PARENT AT TIME OF BIRTH; CONDITIONS UNDER WHICH CITIZENSHIP AUTOMATICALLY ACQUIRED

SEC. 320. (a) A child born outside of the United States, one of whose parents at the time of the child's birth was an alien and the other of whose parents then was and never thereafter ceased to be a citizen of the United States, shall, if such alien parent is naturalized, become a citizen of the United States, when—

(1) such naturalization takes place while such child is under the age of eighteen years; and

(2) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of naturalization or thereafter and begins to reside permanently in the United States while under the age of eighteen years.

(b) Subsection (a) of this section shall not apply to an adopted child.

CHILD BORN OUTSIDE OF UNITED STATES OF ALIEN PARENT; CONDITIONS UNDER WHICH CITIZENSHIP AUTOMATICALLY ACQUIRED

SEC. 321. (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of one parent if the other parent has been lawfully admitted to the United States for permanent residence and is physically present therein; or

(3) The naturalization of the surviving parent if one of the parents is deceased; or

(4) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents; and if

(5) Such naturalization takes place while such child is under the age of eighteen years; and

(6) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2), (3), or (4) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

(b) Subsection (a) of this section shall not apply to an adopted child.

### CHILD BORN OUTSIDE OF UNITED STATES; NATURALIZATION ON PETITION OF CITIZEN PARENT; REQUIREMENTS AND EXEMPTIONS

SEC. 322. (a) A child born outside of the United States, one or both of whose parents is at the time of petitioning for the naturalization of the child, a citizen of the United States, either by birth or naturalization, may be naturalized if under the age of eighteen years and not otherwise disqualified from becoming a citizen by reason of sections 313, 314, 315, or 318 of this Act, and if residing permanently in the United States, with the citizen parent, pursuant to a lawful admission for permanent residence, on the petition of such citizen parent, upon compliance with all the provisions of this title, except that no particular period of residence or physical presence in the United States shall be required.   If the child is of tender years he may be presumed to be of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States.

(b) Subsection (a) of this section shall not apply to an adopted child.

### CHILDREN ADOPTED BY UNITED STATES CITIZENS

SEC. 323. (a) An adopted child may, if not otherwise disqualified from becoming a citizen by reason of sections 313, 314, 315, or 318 of this Act, be naturalized before reaching the age of eighteen years upon the petition of the adoptive parent or parents, upon compliance with all the provisions of this title, if the adoptive parent or parents are citizens of the United States, and the child—

    (1) was lawfully admitted to the United States for permanent residence;

    (2) was adopted before attaining the age of sixteen years; and

    (3) subsequent to such adoption has resided continuously in the United States in legal custody of the adoptive parent or parents for two years prior to the date of filing such petition.

(b) In lieu of the residence and physical presence requirements of section 316 (a) of this Act such child shall be required to establish only two years' residence and one year's physical presence in the United States during the two-year period immediately preceding the filing of the petition.   If the child is of tender years he may be presumed to be of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States.

### FORMER CITIZENS OF UNITED STATES REGAINING UNITED STATES CITIZENSHIP

SEC. 324. (a) (1) Any person formerly a citizen of the United States who (A) prior to September 22, 1922, lost United States citizenship by marriage to an alien, or by the loss of United States citizenship of such person's spouse, or (B) on or after September 22, 1922, lost United States citizenship by marriage to an alien ineligible to citizenship, may if no other nationality was acquired by an affirmative act of such person other than by marriage be naturalized upon compliance with all requirements of this title, except—

(i) no period of residence or specified period of physical presence within the United States or within the State where the petition is filed shall be required;

(ii) the petition need not set forth that it is the intention of the petitioner to reside permanently within the United States;

(iii) the petition may be filed in any court having naturalization jurisdiction, regardless of the residence of the petitioner;

(iv) the petition may be heard at any time after filing if there is attached to the petition at the time of filing a certificate from a naturalization examiner stating that the petitioner and the witnesses have appeared before such examiner for examination.

(2) Any person who (A) loses his United States nationality under paragraph (2), (3), (4), or (5) of section 349 (a) or under section 352 of this Act, and who (B), within five years from the date upon which such loss of nationality occurs, establishes to the satisfaction of the Secretary of State that it is his intention to proceed to the United States to reside permanently therein may be naturalized upon compliance with all requirements of this title, except—

(i) no period of residence or specified period of physical presence within the United States or within the State where the petition is filed shall be required;

(ii) the petition may be filed in any court having naturalization jurisdiction, regardless of the residence of the petitioner; and

(iii) the petition may be heard at any time after filing if there is attached to the petition at the time of filing a certificate from a naturalization examiner stating that the petitioner and the witnesses have appeared before such examiner for examination.

Any such person who has availed himself of the provisions of this paragraph for the purpose of regaining his United States nationality, and who thereafter loses such nationality, shall not be eligible for

the benefits conferred by this paragraph.  The benefits conferred by this paragraph shall not be available to any person who lost his United States nationality while residing in a country which at the time of such loss is engaged in hostilities against the United States.  Any person who, prior to the enactment of this Act, lost his United States nationality under subsections (b), (c), (d), or (e) of section 401 or under section 404 of the Nationality Act of 1940 shall be entitled to the benefits of this paragraph for a period of one year from the date of the enactment of this Act.

(3) Any person eligible for naturalization under this subsection, or any person who was naturalized in accordance with the provisions of section 317 (a) of the Nationality Act of 1940, shall have, from and after his naturalization, the status of a native-born or naturalized citizen of the United States, whichever status existed in the case of such person prior to the loss of citizenship: *Provided*, That nothing contained herein or in any other provision of law shall be construed as conferring United States citizenship retroactively upon such person, or upon any person who was naturalized in accordance with the provisions of section 317 (a) of the Nationality Act of 1940, during any period in which such person was not a citizen.

(b) No person who is otherwise eligible for naturalization in accordance with the provisions of subsection (a) of this section shall be naturalized unless such person shall establish to the satisfaction of the naturalization court that he has been a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States for a period of not less than five years immediately preceding the date of filing a petition for naturalization and up to the time of admission to citizenship, and, except in the case of a person eligible for naturalization under subsection (a) (1) who has resided continuously in the United States since the date of his marriage, has been lawfully admitted for permanent residence prior to the filing of the petition for naturalization.

(c) (1) A woman who was a citizen of the United States at birth and (A) who has or is believed to have lost her United States citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, or by her marriage on or after such date to an alien ineligible to citizenship, (B) whose marriage to such alien shall have terminated subsequent to January 12, 1941, and (C) who has not acquired by an affirmative act other than by marriage any other nationality, shall,

from and after taking the oath of allegiance required by section 337 of this title, be a citizen of the United States and have the status of a citizen of the United States by birth, without filing a petition for naturalization, and notwithstanding any of the other provisions of this title: *Provided*, That nothing contained herein or in any other provision of law shall be construed as conferring United States citizenship retroactively upon such person, or upon any person who was naturalized in accordance with the provisions of section 317 (b) of the Nationality Act of 1940, during any period in which such person was not a citizen.

(2) Such oath of allegiance may be taken abroad before a diplomatic or consular officer of the United States, or in the United States before the judge or clerk of a naturalization court.

(3) Such oath of allegiance shall be entered in the records of the appropriate embassy, legation, consulate, or naturalization court, and, upon demand, a certified copy of the proceedings, including a copy of the oath administered, under the seal of the embassy, legation, consulate, or naturalization court, shall be delivered to such woman at a cost not exceeding $5, which certified copy shall be evidence of the facts stated therein before any court of record or judicial tribunal and in any department or agency of the Government of the United States.

NATIONALS BUT NOT CITIZENS OF THE UNITED STATES; RESIDENCE WITHIN OUTLYING POSSESSIONS

SEC. 325. A person not a citizen who owes permanent allegiance to the United States, and who is otherwise qualified, may, if he becomes a resident of any State, be naturalized upon compliance with the applicable requirements of this title, except that in petitions for naturalization filed under the provisions of this section residence and physical presence within the United States within the meaning of this title shall include residence and physical presence within any of the outlying possessions of the United States.

RESIDENT PHILIPPINE CITIZENS EXCEPTED FROM CERTAIN REQUIREMENTS

SEC. 326. Any person who (1) was a citizen of the Commonwealth of the Philippines on July 2, 1946, (2) entered the United States prior to May 1, 1934, and (3) has, since such entry, resided continuously in the United States shall be regarded as having been lawfully admitted to the United States for permanent residence for the purpose of petitioning for naturalization under this title.

120

FORMER UNITED STATES CITIZENS LOSING CITIZENSHIP BY ENTERING THE
ARMED FORCES OF FOREIGN COUNTRIES DURING WORLD WAR II

SEC. 327. (a) Any person who, (1) during World War II and while
a citizen of the United States, served in the military, air, or naval
forces of any country at war with a country with which the United
States was at war after December 7, 1941, and before September 2,
1945, and (2) has lost United States citizenship by reason of entering
or serving in such forces, or taking an oath or obligation for the
purpose of entering such forces, may, upon compliance with all the
provisions of title III of this Act, except section 316 (a), and except
as otherwise provided in subsection (b), be naturalized by taking be-
fore any naturalization court specified in section 310 (a) of this title
the oath required by section 337 of this title. Certified copies of such
oath shall be sent by such court to the Department of State and to the
Department of Justice.

(b) No person shall be naturalized under subsection (a) of this
section unless he—

(1) is, and has been for a period of at least five years immedi-
ately preceding taking the oath required in subsection (a), a per-
son of good moral character, attached to the principles of the
Constitution of the United States and well disposed to the good
order and happiness of the United States; and

(2) has been lawfully admitted to the United States for per-
manent residence and intends to reside permanently in the United
States.

(c) Any person naturalized in accordance with the provisions of
this section, or any person who was naturalized in accordance with the
provisions of section 323 of the Nationality Act of 1940, shall have,
from and after such naturalization, the status of a native-born, or
naturalized, citizen of the United States, whichever status existed in
the case of such person prior to the loss of citizenship: *Provided*, That
nothing contained herein, or in any other provision of law, shall be
construed as conferring United States citizenship retroactively upon
any such person during any period in which such person was not a
citizen.

(d) For the purposes of this section, World War II shall be deemed
to have begun on September 1, 1939, and to have terminated on
September 2, 1945.

(e) This section shall not apply to any person who during World
War II served in the armed forces of a country while such country was
at war with the United States.

### NATURALIZATION THROUGH SERVICE IN THE ARMED FORCES OF THE UNITED STATES

Sec. 328. (a) A person who has served honorably at any time in the armed forces of the United States for a period or periods aggregating three years, and who, if separated from such service, was never separated except under honorable conditions, may be naturalized without having resided, continuously immediately preceding the date of filing such person's petition, in the United States for at least five years, and in the State in which the petition for naturalization is filed for at least six months, and without having been physically present in the United States for any specified period, if such petition is filed while the petitioner is still in the service or within six months after the termination of such service.

(b) A person filing a petition under subsection (a) of this section shall comply in all other respects with the requirements of this title, except that—

(1) no residence within the jurisdiction of the court shall be required;

(2) notwithstanding section 336 (c), such petitioner may be naturalized immediately if the petitioner be then actually in the armed services of the United States, and if prior to the filing of the petition, the petitioner and the witnesses shall have appeared before and been examined by a representative of the Service;

(3) the petitioner shall furnish to the Attorney General, prior to the final hearing upon his petition, a certified statement from the proper executive department for each period of his service upon which he relies for the benefits of this section, clearly showing that such service was honorable and that no discharges from service, including periods of service not relied upon by him for the benefits of this section, were other than honorable. The certificate or certificates herein provided for shall be conclusive evidence of such service and discharge.

(c) In the case such petitioner's service was not continuous, the petitioner's residence in the United States and State, good moral character, attachment to the principles of the Constitution of the United States, and favorable disposition toward the good order and happiness of the United States, during any period within five years immediately preceding the date of filing such petition between the periods of petitioner's service in the armed services, shall be alleged in the petition filed under the provisions of subsection (a) of this section, and proved at the final hearing thereon. Such allegation and

122

proof shall also be made as to any period between the termination of petitioner's service and the filing of the petition for naturalization.

(d) The petitioner shall comply with the requirements of section 316 (a) of this title, if the termination of such service has been more than six months preceding the date of filing the petition for naturalization, except that such service within five years immediately preceding the date of filing such petition shall be considered as residence and physical presence within the United States.

(e) Any such period or periods of service under honorable conditions, and good moral character, attachment to the principles of the Constitution of the United States, and favorable disposition toward the good order and happiness of the United States, during such service, shall be proved by duly authenticated copies of the records of the executive departments having custody of the records of such service, and such authenticated copies of records shall be accepted in lieu of compliance with the provisions of section 316 (a).

### NATURALIZATION THROUGH ACTIVE-DUTY SERVICE IN ARMED FORCES DURING WORLD WAR I OR WORLD WAR II OR THE KOREAN HOSTILITIES

SEC. 329. (a) Any person who, while an alien or a noncitizen national of the United States, has served honorably in an active-duty status in the military, air, or naval forces of the United States during either World War I, or during the period beginning September 1, 1939, and ending December 31, 1946, or during the period beginning June 25, 1950, and ending on such date as the President by proclamation shall prescribe, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, the Canal Zone, American Samoa, or Swain's Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence. The executive department under which such person served shall determine whether persons have served honorably in an active-duty status, and whether separation from such service was under honorable conditions: *Provided, however,* That no person who is or has been separated from such service on account of alienage, or who was a conscientious objector who performed no military, air, or naval duty whatever or refused to wear the uniform, shall be regarded as having served honorably or having been separated under honorable conditions for the purposes of

123

this section.  No period of service in the Armed Forces shall be made the basis of a petition for naturalization under this section if the applicant has previously been naturalized on the basis of the same period of service.

(b) A person filing a petition under subsection (a) of this section shall comply in all other respects with the requirements of this title, except that—

(1) he may be naturalized regardless of age, and notwithstanding the provisions of section 331 of this title;

(2) he may be naturalized regardless of the existence of an outstanding finding of deportability, if such finding is not based upon charges of crime, subversion, or immorality;

(3) no period of residence or specified period of physical presence within the United States or any State shall be required;

(4) the petition for naturalization may be filed in any court having naturalization jurisdiction regardless of the residence of the petitioner;

(5) service in the military, air, or naval forces of the United States shall be proved by a duly authenticated certification from the executive department under which the petitioner served or is serving, which shall state whether the petitioner served honorably in an active-duty status during either World War I, or during the period beginning September 1, 1939, and ending December 31, 1946, or during the period beginning June 25, 1950, and ending on such date as the President by proclamation shall prescribe, and was separated from such service under honorable conditions; and

(6) notwithstanding section 336 (c) of this title, the petitioner may be naturalized immediately if prior to the filing of the petition the petitioner and the witnesses shall have appeared before and been examined by a representative of the Service.

(c) Citizenship granted pursuant to this section may be revoked in accordance with section 340 of this title if at any time subsequent to naturalization the person is separated from the military, air, or naval forces under other than honorable conditions, and such ground for revocation shall be in addition to any other provided by law.  The fact that the naturalized person was separated from the service under other than honorable conditions shall be proved by a duly authenticated certification from the executive department under which the person was serving at the time of separation.

124

(d) The eligibility for naturalization of any person who filed a petition for naturalization prior to January 1, 1947, under section 701 of the Nationality Act of 1940, as amended (56 Stat. 182, 58 Stat. 886, 59 Stat. 658; 8 U. S. C. 1001), and which is still pending on the effective date of this Act, shall be determined in accordance with the provisions of this section.

CONSTRUCTIVE RESIDENCE THROUGH SERVICE ON CERTAIN
UNITED STATES VESSELS

SEC. 330. (a) (1) Any periods of time during all of which a person who was previously lawfully admitted for permanent residence has served honorably or with good conduct, in any capacity other than as a member of the armed forces of the United States, (A) on board a vessel operated by the United States, or an agency thereof, the full legal and equitable title to which is in the United States; or (B) on board a vessel whose home port is in the United States, and (i) which is registered under the laws of the United States, or (ii) the full legal and equitable title to which is in a citizen of the United States, or a corporation organized under the laws of any of the several States of the United States, shall be deemed residence and physical presence within the United States within the meaning of section 316 (a) of this title, if such service occurred within five years immediately preceding the date such person shall file a petition for naturalization. Service on vessels described in clause (A) of this subsection shall be proved by duly authenticated copies of the records of the executive departments or agency having custody of the records of such service. Service on vessels described in clause (B) of this subsection may be proved by certificates from the masters of such vessels.

(2) For the purposes of this subsection, any periods of time prior to September 23, 1950, during all of which any person had served honorably or with good conduct for an aggregate period of five years on any vessel described in section 325 (a) of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, shall be deemed residence and physical presence within the United States within the meaning of section 316 (a) of this title, if such petition is filed within one year from the effective date of this Act. Notwithstanding the provisions of section 318, a person entitled to claim the exemptions contained in this paragraph shall not be required to establish a lawful admission for permanent residence.

(3) For the purposes of this subsection, any periods of time prior to September 23, 1950, during all of which any person not within the provisions of paragraph (2) had, prior to September 23, 1950,

served honorably or with good conduct on any vessel described in section 325 (a) of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, and was so serving on September 23, 1950, shall be deemed residence and physical presence within the United States within the meaning of section 316 (a) of this title, if such person at any time prior to filing his petition for naturalization shall have been lawfully admitted to the United States for permanent residence, and if such petition is filed on or before September 23, 1955.

(b) Any person who was excepted from certain requirements of the naturalization laws under section 325 of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, and had filed a petition for naturalization under section 325 of the Nationality Act of 1940, may, if such petition was pending on September 23, 1950, and is still pending on the effective date of this Act, be naturalized upon compliance with the applicable provisions of the naturalization laws in effect upon the date such petition was filed.

ALIEN ENEMIES; NATURALIZATION UNDER SPECIFIED CONDITIONS AND PROCEDURE

SEC. 331. (a) An alien who is a native, citizen, subject, or denizen of any country, state, or sovereignty with which the United States is at war may, after his loyalty has been fully established upon investigation by the Attorney General, be naturalized as a citizen of the United States if such alien's petition for naturalization shall be pending at the beginning of the state of war and the petitioner is otherwise entitled to admission to citizenship.

(b) An alien embraced within this section shall not have his petition for naturalization called for a hearing, or heard, except after ninety days' notice given by the clerk of the court to the Attorney General to be represented at the hearing, and the Attorney General's objection to such final hearing shall cause the petition to be continued from time to time for so long as the Attorney General may require.

(c) The Attorney General may, in his discretion, upon investigation fully establishing the loyalty of any alien enemy who did not have a petition for naturalization pending at the beginning of the state of war, except such alien enemy from the classification of alien enemy for the purposes of this title, and thereupon such alien shall have the privilege of filing a petition for naturalization.

(d) An alien who is a native, citizen, subject, or denizen of any country, state, or sovereignty with which the United States is at war shall cease to be an alien enemy within the meaning of this section upon the determination by proclamation of the President, or by concurrent reso-

lution of the Congress, that hostilities between the United States and such country, state, or sovereignty have ended.  Notwithstanding the provisions of section 404 (b), this subsection shall also apply to the case of any such alien whose petition for naturalization was filed prior to the effective date of this Act and which is still pending on that date.

(e)  Nothing contained herein shall be taken or construed to interfere with or prevent the apprehension and removal, consistent with law, of any alien enemy at any time prior to the actual naturalization of such alien.

PROCEDURAL AND ADMINISTRATIVE PROVISIONS; EXECUTIVE FUNCTIONS

SEC. 332. (a) The Attorney General shall make such rules and regulations as may be necessary to carry into effect the provisions of this chapter and is authorized to prescribe the scope and nature of the examination of petitioners for naturalization as to their admissibility to citizenship for the purpose of making appropriate recommendations to the naturalization courts.  Such examination, in the discretion of the Attorney General, and under such rules and regulations as may be prescribed by him, may be conducted before or after the applicant has filed his petition for naturalization.  Such examination shall be limited to inquiry concerning the applicant's residence, physical presence in the United States, good moral character, understanding of and attachment to the fundamental principles of the Constitution of the United States, ability to read and speak English, and other qualifications to become a naturalized citizen as required by law, and shall be uniform throughout the United States.

(b) The Attorney General is authorized to promote instruction and training in citizenship responsibilities of applicants for naturalization including the sending of names of candidates for naturalization to the public schools, preparing and distributing citizenship textbooks to such candidates as are receiving instruction in preparation for citizenship within or under the supervision of the public schools, preparing and distributing monthly an immigration and naturalization bulletin and securing the aid of and cooperating with official State and national organizations, including those concerned with vocational education.

(c) The Attorney General shall prescribe and furnish such forms as may be required to give effect to the provisions of this chapter, and only such forms as may be so provided shall be legal.  All certificates of naturalization and of citizenship shall be printed on safety paper and shall be consecutively numbered in separate series.

(d) Employees of the Service may be designated by the Attorney General to administer oaths and to take depositions without charge in matters relating to the administration of the naturalization and citizenship laws. In cases where there is a likelihood of unusual delay or of hardship, the Attorney General may, in his discretion, authorize such depositions to be taken before a postmaster without charge, or before a notary public or other person authorized to administer oaths for general purposes.

(e) A certificate of naturalization or of citizenship issued by the Attorney General under the authority of this title shall have the same effect in all courts, tribunals, and public offices of the United States, at home and abroad, of the District of Columbia, and of each State, Territory, and outlying possession of the United States, as a certificate of naturalization or of citizenship issued by a court having naturalization jurisdiction.

(f) Certifications and certified copies of all papers, documents, certificates, and records required or authorized to be issued, used, filed, recorded, or kept under any and all provisions of this Act shall be admitted in evidence equally with the originals in any and all cases and proceedings under this Act and in all cases and proceedings in which the originals thereof might be admissible as evidence.

(g) The officers in charge of property owned or leased by the Government are authorized, upon the recommendation of the Attorney General, to provide quarters, without payment of rent, in any building occupied by the Service, for a photographic studio, operated by welfare organizations without profit and solely for the benefit of persons seeking to comply with requirements under the immigration and nationality laws. Such studio shall be under the supervision of the Attorney General.

### PHOTOGRAPHS

Sec. 333. (a) Three identical photographs of the applicant shall be signed by and furnished by each petitioner for naturalization or citizenship. One of such photographs shall be affixed by the clerk of the court to the original certificate of naturalization issued to the naturalized citizen and one to the duplicate certificate of naturalization required to be forwarded to the Service.

(b) Three identical photographs of the applicant shall be furnished by each applicant for—

(1) a record of lawful admission for permanent residence to be made under section 249 (a);

(2) a certificate of derivative citizenship;

(3) a certificate of naturalization or of citizenship;

(4) a special certificate of naturalization;

(5) a certificate of naturalization or of citizenship, in lieu of one lost, mutilated, or destroyed;

(6) a new certificate of citizenship in the new name of any naturalized citizen who, subsequent to naturalization, has had his name changed by order of a court of competent jurisdiction or by marriage; and

(7) a declaration of intention.

One such photograph shall be affixed to each such certificate issued by the Attorney General and one shall be affixed to the copy of such certificate retained by the Service.

### PETITION FOR NATURALIZATION; DECLARATION OF INTENTION

SEC. 334. (a) An applicant for naturalization shall make and file in the office of the clerk of a naturalization court, in duplicate, a sworn petition in writing, signed by the applicant in the applicant's own handwriting if physically able to write, and duly verified by two witnesses, which petition shall be on a form prescribed by the Attorney General and shall include averments of all facts which in the opinion of the Attorney General may be material to the applicant's naturalization, and required to be proved upon the hearing of such petition.

(b) No person shall file a valid petition for naturalization unless (1) he shall have attained the age of eighteen years and (2) he shall have first filed an application therefor at an office of the Service in the form and manner prescribed by the Attorney General. An application for petition for naturalization by an alien shall contain an averment of lawful admission for permanent residence.

(c) Petitions for naturalization may be made and filed during the term time or vacation of the naturalization court and shall be docketed the same day as filed, but final action thereon shall be had only on stated days, to be fixed by rule of the court.

(d) If the applicant for naturalization is prevented by sickness or other disability from presenting himself in the office of the clerk to make the petition required by subsection (a), such applicant may make such petition at such other place as may be designated by the clerk of court or by such clerk's authorized deputy.

(e) Before a petition for naturalization may be made outside of the office of the clerk of the court, pursuant to subsection (d) above, or before a final hearing on a petition may be held or the oath of allegiance administered outside of open court, pursuant to sections 336 (a) and

**129**

337 (c) respectively of this title, the court must satisfy itself that the illness or other disability is sufficiently serious to prevent appearance in the office of the clerk of court and is of a permanent nature, or of a nature which so incapacitates the person as to prevent him from personally appearing in the office of the clerk of court or in court as otherwise required by law.

(f) Any alien over eighteen years of age who is residing in the United States pursuant to a lawful admission for permanent residence may, upon an application prescribed, filed with, and approved by the Service, make and file in duplicate in the office of the clerk of court, regardless of the alien's place of residence in the United States, a signed declaration of intention to become a citizen of the United States, in such form as the Attorney General shall prescribe. Nothing in this subsection shall be construed as requiring any such alien to make and file a declaration of intention as a condition precedent to filing a petition for naturalization.

### INVESTIGATION OF PETITIONERS; PRELIMINARY EXAMINATIONS ON PETITIONS

SEC. 335. (a) Prior to the holding of a preliminary examination upon a petition for naturalization provided for by subsection (b), or prior to the final hearing if no such preliminary examination is held, an employee of the Service, or of the United States designated by the Attorney General, shall conduct an investigation, as prescribed by the Attorney General, of the person petitioning for naturalization.

(b) The Attorney General shall designate employees of the Service to conduct preliminary examinations upon petitions for naturalization to any naturalization court and to make recommendations thereon to such court. For such purposes any such employee so designated is hereby authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any petitioner for naturalization, to administer oaths, including the oath of the petitioner for naturalization and the oaths of petitioner's witnesses to the petition for naturalization, and to require by subpena the attendance and testimony of witnesses, including petitioner, before such employee so designated and the production of relevant books, papers, and documents, and to that end may invoke the aid of any court exercising naturalization jurisdiction as specified in section 310 of this title; and any such court may, in the event of neglect or refusal to respond to a subpena issued by any such employee so designated or refusal

to testify before such employee so designated issue an order requiring such person to appear before such employee so designated, produce relevant books, papers, and documents if demanded, and testify; and any failure to obey such order of the court may be punished by the court as a contempt thereof. The record of the preliminary examination authorized by this subsection shall be admissible as evidence in any final hearing conducted by a naturalization court designated in section 310 of this title.

(c) The record of the preliminary examination upon any petition for naturalization may, in the discretion of the Attorney General, be transmitted to the Attorney General and the recommendation with respect thereto of the employee designated to conduct such preliminary examination shall when made also be transmitted to the Attorney General.

(d) The recommendation of the employee designated to conduct any such preliminary examination shall be submitted to the court at the hearing upon the petition and shall include a recommendation that the petition be granted, or denied, or continued, with reasons therefor. In any case in which the recommendation of the Attorney General does not agree with that of the employee designated to conduct such preliminary examination, the recommendation only of the Attorney General shall be submitted to the court at the hearing upon the petition. The recommendations of such employee or of the Attorney General shall be accompanied by duplicate lists containing the names of the petitioners, classified according to the character of the recommendations, and signed by such employee or the Attorney General, as the case may be. The judge to whom such recommendations are submitted shall, if he approve such recommendations, enter a written order with such exceptions as the judge may deem proper, by subscribing his name to each such list when corrected to conform to his conclusions upon such recommendations. One of each such lists shall thereafter be filed permanently of record in such court and the duplicate of each such list shall be sent by the clerk of such court to the Attorney General.

(e) After the petition for naturalization has been filed in the office of the clerk of court, the petitioner shall not be permitted to withdraw his petition, except by leave of the court after notice has been given to the Attorney General.

(f) As to each period and place of residence in the State in which the petitioner resides at the time of filing the petition, during the entire period of at least six months immediately preceding the date

of filing the petition, there shall be included in the petition for natural-ization the affidavits of at least two credible witnesses, citizens of the United States, stating that each has personally known the petitioner to have been a resident at such place for such period, and that the petitioner is and during all such periods has been a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

(g) At the hearing on the petition, residence in the State in which the petitioner resides at the time of filing the petition, for at least six months immediately preceding the date of filing the petition, and the other qualifications required by subsection (a) of section 316 during such residence shall be proved by the oral testimony of at least two credible witnesses, citizens of the United States, in addition to the affidavits required by subsection (f) of this section to be included in the petition.  At the hearing, residence and physical presence within the United States during the five-year period required by section 316 (a), but outside the State, or within the State but prior to the six months immediately preceding the date of filing the petition, and the other qualifications required by subsection (a) of section 316 during such period at such places, shall be proved either by depositions taken in accordance with subsection (d) of section 332, or oral testimony, of at least two such witnesses for each place of residence.

(h) Notwithstanding the provisions of subsections (f) and (g) of this section, the requirements of subsection (a) of section 316 as to the petitioner's residence, good moral character, attachment to the principles of the Constitution of the United States, and disposition toward the good order and happiness of the United States may be established by any evidence satisfactory to the naturalization court in those cases under subsection (b) of section 316 in which the alien has been absent from the United States because of his employment by or contract with the Government of the United States or an American institution of research, recognized as such by the Attorney General, because of service in the Armed Forces of the United States, or because of employment by an American or international social service or philanthropic organization, employment by an American firm or corporation engaged in whole or in part in the development of foreign trade and commerce of the United States or a subsidiary thereof, or employment by a public international organization in which the United States participates.

(i) (1) A petitioner for naturalization who removes from the jurisdiction of the court in which his petition for naturalization is pending may, at any time thereafter, make application to the court for transfer of the petition to a naturalization court exercising jurisdiction over the petitioner's place of residence, or to any other naturalization court if the petition was not required to be filed in a naturalization court exercising jurisdiction over the petitioner's place of residence: *Provided*, That such transfer shall not be made without the consent of the Attorney General, and of the court to which the petition is transferred.

(2) Where transfer of the petition is authorized the clerk of court in which the petition was filed shall forward a certified copy of the petition and the original record in the case to the clerk of court to which the petition is transferred, and proceedings on the petition shall thereafter continue as though the petition had originally been filed in the court to which transferred, except that the court to which the petition is transferred may in its discretion, require the production of two credible United States witnesses to testify as to the petitioner's qualifications for naturalization since the date of such transfer.

FINAL HEARING ·IN OPEN COURT· UPON PETITIONS FOR NATURALIZATION; FINAL ORDER UNDER THE HAND OF THE COURT ENTERED UPON RECORD; EXAMINATION OF PETITIONER AND WITNESSES BEFORE THE COURT

SEC. 336. (a) Every final hearing upon a petition for naturalization shall be had in open court before a judge or judges thereof, and every final order which may be made upon such petition shall be under the hand of the court and entered in full upon a record kept for that purpose, and upon such final hearing of such petition the petitioner and the witnesses, except as provided in subsection (b) of this section, shall be examined under oath before the court and in the presence of the court. If the petitioner is prevented by sickness or other disability from being in open court for the final hearing upon a petition for naturalization, such final hearing may be had before a judge or judges of the court at such place as may be designated by the court.

(b) The requirement of subsection (a) of this section for the examination of the petitioner and the witnesses under oath before the court and in the presence of the court shall not apply in any case where an employee designated under section 335 (b) has conducted the preliminary examination authorized by subsection (b) of section 335; except that the court may, in its discretion, and shall, upon demand of the petitioner, require the examination of the petitioner and the witnesses under oath before the court and in the presence of the court.

(c) Except as otherwise specifically provided in this title, no final hearing shall be held on any petition for naturalization nor shall any person be naturalized nor shall any certificate of naturalization be issued by any court within a period of thirty days after the filing of the petition for naturalization.   The Attorney General may waive such period in an individual case if he finds that the waiver will be in the public interest and will promote the security of the United States. Notwithstanding any other provisions of this title, but except as provided in sections 328 (b) (2) and 329 (b) (5), in any case in which the final hearing on any petition for naturalization is scheduled to be held within sixty days preceding the holding of a general election within the territorial jurisdiction of the naturalization court, such final hearing may be held, but the petitioner shall not be permitted to take the oath required in section 337 (a) of this title prior to the tenth day next following such general election.   In any case in which the oath is not taken at the time of the final hearing, the petitioner shall not be a citizen of the United States until such oath has been taken.

(d) The Attorney General shall have the right to appear before any court in any naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of the petition concerning any matter touching or in way affecting the petitioner's right to admission to citizenship, and shall have the right to call witnesses, including the petitioner, produce evidence, and be heard in opposition to, or in favor of, the granting of any petition in naturalization proceedings.

(e) The clerk of court shall, if the petitioner request it at the time of filing the petition for naturalization, issue a subpena for the witnesses named by such petitioner to appear upon the day set for the final hearing, but in case such witnesses cannot be produced upon the final hearing other witnesses may be summoned upon notice to the Attorney General, in such manner and at such time as the Attorney General may by regulation prescribe.   If it should appear after the petition has been filed that any of the verifying witnesses thereto are not competent, and it further appears that the petitioner has acted in good faith in producing such witnesses found to be incompetent, other witnesses may be substituted in accordance with such regulations.

(f) It shall be lawful at the time and as a part of the naturalization of any person, for the court, in its discretion, upon the bona fide prayer of the petitioner included in the petition for naturalization of

134

such person, to make a decree changing the name of said person, and the certificate of naturalization shall be issued in accordance therewith.

OATH OF RENUNCIATION AND ALLEGIANCE

Sec. 337. (a) A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5) (A) to bear arms on behalf of the United States when required by the law, or (B) to perform noncombatant service in the armed forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law: *Provided*, That in the case of the naturalization of a child under the provisions of section 322 or 323 of this title the naturalization court may waive the taking of the oath if in the opinion of the court the child is unable to understand its meaning. Any such person shall be required to take an oath containing the substance of clauses (1) through (5) of the preceding sentence, except that a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to the bearing of arms in the armed forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1) through (4) and clauses 5 (B) and 5 (C), and a person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the armed forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of clauses (1) through (4) and clause 5 (C).

(b) In case the person petitioning for naturalization has borne any hereditary title, or has been of any of the orders of nobility in any foreign state, the petitioner shall in addition to complying with the requirements of subsection (a) of this section, make under oath in open court in the court in which the petition for naturalization is made, an express renunciation of such title or order of nobility, and such renunciation shall be recorded in the court as a part of such proceedings.

(c) If the petitioner is prevented by sickness or other disability from being in open court, the oath required to be taken by subsection (a) of this section may be taken before a judge of the court at such place as may be designated by the court.

#### CERTIFICATE OF NATURALIZATION; CONTENTS

SEC. 338. A person admitted to citizenship by a naturalization court in conformity with the provisions of this title shall be entitled upon such admission to receive from the clerk of such court a certificate of naturalization, which shall contain substantially the following information: Number of petition for naturalization; number of certificate of naturalization; date of naturalization; name, signature, place of residence, autographc photograph, and personal description of the naturalized person, including age, sex, marital status, and country of former nationality; title, venue, and location of the naturalization court; statement that the court, having found that the petitioner intends to reside permanently in the United States, except in cases falling within the provisions of section 324 (a) of this title, had complied in all respects with all of the applicable provisions of the naturalization laws of the United States, and was entitled to be admitted a citizen of the United States of America, thereupon ordered that the petitioner be admitted as a citizen of the United States of America; attestation of the clerk of the naturalization court; and seal of the court. A person deriving citizenship through the naturalization of a parent or parents shall be entitled, at the time of such naturalization, to receive from the clerk of the naturalization court a certificate of citizenship.

#### FUNCTIONS AND DUTIES OF CLERKS

SEC. 339. (a) It shall be the duty of the clerk of each and every naturalization court to forward to the Attorney General a duplicate of each petition for naturalization within thirty days after the close of the month in which such petition was filed, and to forward to the Attorney General certified copies of such other proceedings and orders instituted in or issued out of said court affecting or relating to the naturalization of persons as may be required from time to time by the Attorney General.

(b) It shall be the duty of the clerk of each and every naturalization court to issue to any person admitted by such court to citizenship a certificate of naturalization and to forward to the Attorney General within thirty days after the close of the month in which such certificate was issued, a duplicate thereof, and to make and keep on file in

136

the clerk's office a stub for each certificate so issued, whereon shall be entered a memorandum of all the essential facts set forth in such certificate, and to forward a duplicate of each such stub to the Attorney General within thirty days after the close of the month in which such certificate was issued.

(c) It shall be the duty of the clerk of each and every naturalization court to report to the Attorney General, within thirty days after the close of the month in which the final hearing and decision of the court was had, the name and number of the petition of each and every person who shall be denied naturalization together with the cause of such denial.

(d) Clerks of courts shall be responsible for all blank certificates of naturalization received by them from time to time from the Attorney General, and shall account to the Attorney General for them whenever required to do so. No certificate of naturalization received by any clerk of court which may be defaced or injured in such manner as to prevent its use as herein provided shall in any case be destroyed, but such certificates shall be returned to the Attorney General.

(e) It shall be the duty of the clerk of each and every naturalization court to cause to be filed in chronological order in separate volumes, indexed, consecutively numbered, and made a part of the records of such court, all declarations of intention and petitions for naturalization.

(f) It is hereby made the duty of the clerk of each and every naturalization court to retain the original of each declaration of intention, to forward the duplicate thereof to the Attorney General within thirty days after the close of the month in which such declaration was filed, and to furnish the declarant with the triplicate thereof.

### REVOCATION OF NATURALIZATION

SEC. 340. (a) It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 310 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively.

137

(b) The party to whom was granted the naturalization alleged to have been fraudulently or illegally procured shall, in any such proceedings under subsection (a) of this section, have sixty days' personal notice, unless waived by such party, in which to make answer to the petition of the United States; and if such naturalized person be absent from the United States or from the judicial district in which such person last had his residence, such notice shall be given either by personal service upon him or, if personal service cannot be obtained, by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

(c) If a person who shall have been naturalized after the effective date of this Act shall within five years next following such naturalization become a member of or affiliated with any organization, membership in or affiliation with which at the time of naturalization would have precluded such person from naturalization under the provisions of section 313, it shall be considered prima facie evidence that such person was not attached to the principles of the Constitution of the United States and was not well disposed to the good order and happiness of the United States at the time of naturalization, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the revocation and setting aside of the order admitting such person to citizenship and the cancellation of the certificate of naturalization as having been obtained by fraud or illegal procurement, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively.

(d) If a person who shall have been naturalized shall, within five years after such naturalization, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such person to reside permanently in the United States at the time of filing his petition for naturalization, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the revocation and setting aside of the order admitting such person to citizenship and the cancellation of the certificate of naturalization as having been obtained by fraud, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certifi-

cate, respectively.   The diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with statements of the names of those persons within their respective jurisdictions who have been so naturalized and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to revoke and set aside the order admitting to citizenship and to cancel the certificate of naturalization.

(e) The revocation and setting aside of the order admitting any person to citizenship and canceling his certificate of naturalization under the provisions of subsection (a) of section 338 of the Nationality Act of 1940 shall not, where such action takes place after the effective date of this Act, result in the loss of citizenship or any right or privilege of citizenship which would have been derived by or be available to a wife or minor child of the naturalized person had such naturalization not been revoked: *Provided*, That this subsection shall not apply in any case in which the revocation and setting aside of the order was the result of actual fraud.

(f) Any person who claims United States citizenship through the naturalization of a parent or spouse in whose case there is a revocation and setting aside of the order admitting such parent or spouse to citizenship under the provisions of subsection (a) of this section on the ground of fraud or on the ground that the order and certificate of naturalization were illegally procured shall be deemed to have lost and to lose his citizenship and any right or privilege of citizenship which he may have, now has, or may hereafter acquire under and by virtue of such naturalization of such parent or spouse, regardless of whether such person is residing within or without the United States at the time of the revocation and setting aside of the order admitting such parent or spouse to citizenship.   Any person who claims United States citizenship through the naturalization of a parent or spouse in whose case there is a revocation and setting aside of the order admitting such parent or spouse to citizenship and the cancellation of the certificate of naturalization under the provisions of subsection (c) or (d) of this section, under the provisions of section 329 (c) of this title, shall be deemed to have lost and to lose his citizenship and any right or privilege of citizenship which would have been enjoyed by such person had there not been a revocation and setting aside of the order admitting such parent or spouse to citizenship and the cancellation of the certifi-

cate of naturalization, unless such person is residing in the United States at the time of the revocation and setting aside of the order admitting such parent or spouse to citizenship and the cancellation of the certificate of naturalization, or unless such person is residing abroad at such time and returns to the United States within two years thereafter or returns prior to attaining the age of 21 years.

(g) When a person shall be convicted under section 1425 of title 18 of the United States Code of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled. Jurisdiction is hereby conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

(h) Whenever an order admitting an alien to citizenship shall be revoked and set aside or a certificate of naturalization shall be canceled, or both, as provided in this section, the court in which such judgment or decree is rendered shall make an order canceling such certificate and shall send a certified copy of such order to the Attorney General. In case such certificate was not originally issued by the court making such order, it shall direct the clerk of court in which the order is revoked and set aside to transmit a copy of such order and judgment to the court out of which such certificate of naturalization shall have been originally issued. It shall thereupon be the duty of the clerk of the court receiving such certified copy of the order and judgment of the court to enter the same of record and to cancel such original certificate of naturalization, if there be any, upon the records and to notify the Attorney General of the entry of such order and of such cancellation. A person holding a certificate of naturalization or citizenship which has been canceled as provided by this section shall upon notice by the court by which the decree of cancellation was made, or by the Attorney General, surrender the same to the Attorney General.

(i) The provisions of this section shall apply not only to any naturalization granted and to certificates of naturalization and citizenship issued under the provisions of this title, but to any naturalization heretofore granted by any court, and to all certificates of naturalization and citizenship which may have been issued heretofore by any court or by the Commissioner based upon naturalization granted by any court, or by a designated representative of the Commissioner

140

under the provisions of section 702 of the Nationality Act of 1940, as amended.

### CERTIFICATES OF CITIZENSHIP; PROCEDURE

SEC. 341. A person who claims to have derived United States citizenship through the naturalization of a parent or through the naturalization or citizenship of a husband, or who is a citizen of the United States by virtue of the provisions of section 1993 of the United States Revised Statutes, or of section 1993 of the United States Revised Statutes, as amended by section 1 of the Act of May 24, 1934 (48 Stat. 797), or who is a citizen of the United States by virtue of the provisions of subsection (c), (d), (e), (g), or (i) of section 201 of the Nationality Act of 1940, as amended (54 Stat. 1138; 8 U. S. C. 601), or of the Act of May 7, 1934 (48 Stat. 667), or of paragraph (3), (4), (5), or (7) of section 301 (a) of this title, or under the provisions of the Act of August 4, 1937 (50 Stat. 558), or under the provisions of section 203 or 205 of the Nationality Act of 1940 (54 Stat. 1139; 8 U. S. C. 603, 605), or under the provisions of section 303 of this title, may apply to the Attorney General for a certificate of citizenship. Upon proof to the satisfaction of the Attorney General that the applicant is a citizen, and that the applicant's alleged citizenship was derived as claimed, or acquired, as the case may be, and upon taking and subscribing before a member of the Service within the United States to the oath of allegiance required by this Act of a petitioner for naturalization, such individual shall be furnished by the Attorney General with a certificate of citizenship, but only if such individual is at the time within the United States.

### REVOCATION OF CERTIFICATES ISSUED BY THE ATTORNEY GENERAL, THE COMMISSIONER OR A DEPUTY COMMISSIONER; ACTION NOT TO AFFECT CITIZENSHIP STATUS

SEC. 342. The Attorney General is authorized to cancel any certificate of citizenship, certificate of naturalization, copy of a declaration of intention, or other certificate, document or record heretofore issued or made by the Commissioner or a Deputy Commissioner or hereafter made by the Attorney General if it shall appear to the Attorney General, upon the basis of substantial evidence, that such document or record was illegally or fraudulently obtained from, or was created through illegality or by fraud practiced upon, him or the Commissioner or a Deputy Commissioner; but the person for or to whom such document or record has been issued or made shall be given written notice of the intention to cancel such document or record with the reasons therefor and shall be given at least sixty days in which to show

**141**

cause why such document or record should not be canceled.  The can-
cellation under this section of any document purporting to show the
citizenship status of the person to whom it was issued shall affect only
the document and not the citizenship status of the person in whose name
the document was issued.

### DOCUMENTS AND COPIES ISSUED BY THE ATTORNEY GENERAL

SEC. 343. (a)  A person who claims to have been naturalized in the
United States under section 323 of the Nationality Act of 1940 may
make application to the Attorney General for a certificate of naturali-
zation.  Upon proof to the satisfaction of the Attorney General that
the applicant is a citizen and that he has been naturalized as claimed
in the application, such individual shall be furnished a certificate of
naturalization by the Attorney General, but only if the applicant is at
the time within the United States.

(b)  If any certificate of naturalization or citizenship issued to any
citizen or any declaration of intention furnished to any declarant is
lost, mutilated, or destroyed, the citizen or declarant may make appli-
cation to the Attorney General for a new certificate or declaration.  If
the Attorney General finds that the certificate or declaration is lost,
mutilated, or destroyed, he shall issue to the applicant a new certificate
or declaration.  If the certificate or declaration has been mutilated,
it shall be surrendered to the Attorney General before the applicant
may receive such new certificate or declaration.  If the certificate or
declaration has been lost, the applicant or any other person who shall
have, or may come into possession of it is hereby required to surrender
it to the Attorney General.

(c)  The Attorney General shall issue for any naturalized citizen,
on such citizen's application therefor, a special certificate of naturali-
zation for use by such citizen only for the purpose of obtaining recog-
nition as a citizen of the United States by a foreign state.  Such cer-
tificate when issued shall be furnished to the Secretary of State for
transmission to the proper authority in such foreign state.

(d)  If the name of any naturalized citizen has, subsequent to
naturalization, been changed by order of any court of competent juris-
diction, or by marriage, the citizen may make application for a new
certificate of naturalization in the new name of such citizen.  If the
Attorney General finds the name of the applicant to have been changed
as claimed, the Attorney General shall issue to the applicant a new
certificate and shall notify the naturalization court of such action.

(e)  The Attorney General is authorized to make and issue certifica-

tions of any part of the naturalization records of any court, or of any certificate of naturalization or citizenship, for use in complying with any statute, State or Federal, or in any judicial proceeding. No such certification shall be made by any clerk of court except upon order of the court.

#### FISCAL PROVISIONS

SEC. 344. (a) The clerk of court shall charge, collect, and account for the following fees:

(1) For making, filing, and docketing a petition for naturalization, $10, including the final hearing on such petition, if such hearing be held, and a certificate of naturalization, if the issuance of such certificate is authorized by the naturalization court.

(2) For receiving and filing a declaration of intention, and issuing a duplicate thereof, $5.

(b) The Attorney General shall charge, collect, and account for the following fees:

(1) For application for a certificate of naturalization or declaration of intention in lieu of a certificate or declaration alleged to have been lost, mutilated, or destroyed, $5.

(2) For application for a certificate of citizenship, $5.

(3) For application for the issuance of a special certificate of citizenship to obtain recognition, $5.

(4) For application for a certificate of naturalization under section 323 of the Nationality Act of 1940, or under section 343 (a) of this title, $5.

(5) For application for a certificate of citizenship in changed name, $5.

(6) Reasonable fees in cases where such fees have not been established by law, to cover the cost of furnishing copies, whether certified or uncertified, of any part of the records, or information from the records, of the Service. Such fees shall not exceed a maximum of 25 cents per folio of one hundred words, with a minimum fee of 50 cents for any one such service, in addition to a fee of $1 for any official certification furnished under seal. No such fee shall be required from officers or agencies of the United States or of any State or any subdivision thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.

(7) Notwithstanding the preceding provisions of this subsection, no fee shall be charged or collected for an application for declaration of intention or a certificate of naturalization in lieu of a declaration or a certificate alleged to have been lost, mutilated, or destroyed, sub-

mitted by a person who was a member of the military or naval forces of the United States at any time after April 20, 1898, and before July 5, 1902; or at any time after April 5, 1917, and before November 12, 1918; or who served on the Mexican border as a member of the Regular Army or National Guard between June 1916 and April 1917; or who has served or hereafter serves in the military, air, or naval forces of the United States after September 16, 1940, and who was not at any time during such period or thereafter separated from such forces under other than honorable conditions, who was not a conscientious objector who performed no military duty whatever or refused to wear the uniform, or who was not at any time during such period or thereafter discharged from such military, air, or naval forces on account of alienage.

(c) The clerk of any naturalization court specified in subsection (a) of section 310 (except the courts specified in subsection (d) of this section) shall account for and pay over to the Attorney General one-half of all fees up to the sum of $6,000, and all fees in excess of $6,000, collected by any such clerk in naturalization proceedings in any fiscal year.

(d) The clerk of any United States district court (except in Alaska and in the District Court of the Virgin Islands of the United States and in the District Court of Guam) shall account for and pay over to the Attorney General all fees collected by any such clerk in naturalization proceedings: *Provided, however*, That the clerk of the District Court of the Virgin Islands of the United States and of the District Court of Guam shall report but shall not be required to pay over to the Attorney General the fees collected by any such clerk in naturalization proceedings.

(e) The accounting required by subsections (c) and (d) of this section shall be made and the fees paid over to the Attorney General by such respective clerks in their quarterly accounts which they are hereby required to render to the Attorney General within thirty days from the close of each quarter of each and every fiscal year, in accordance with regulations prescribed by the Attorney General.

(f) The clerks of the various naturalization courts shall pay all additional clerical force that may be required in performing the duties imposed by this title upon clerks of courts from fees retained under the provisions of this section by such clerks in naturalization proceedings.

(g) All fees collected by the Attorney General and all fees paid over to the Attorney General by clerks of courts under the provisions

144

of this title shall be deposited by the Attorney General in the Treasury of the United States: *Provided, however,* That all fees received from applicants residing in the Virgin Islands of the United States, and in Guam, required to be paid under subsection (b) of this section, shall be paid over to the treasury of the Virgin Islands and to the treasury of Guam, respectively.

(h) In all naturalization proceedings in which an alien applying for a certificate of naturalization or of citizenship is represented by counsel, there is hereby established a limit of $50 for counsel's fees, except where legal action before a court requires extended legal service when the court may approve a reasonable fee in excess of $50.

(i) During the time when the United States is at war no clerk of a United States court shall charge or collect a naturalization fee from an alien in the military, air, or naval service of the United States for filing a petition for naturalization or issuing a certificate of naturalization upon admission to citizenship, and no clerk of any State court shall charge or collect any fee for such services unless the laws of the State require such charge to be made, in which case nothing more than the portion of the fee required to be paid to the State shall be charged or collected. A report of all transactions under this subsection shall be made to the Attorney General as in the case of other reports required of clerks of courts by this title.

(j) In addition to the other fees required by this title, the petitioner for naturalization shall, upon the filing of a petition for naturalization, deposit with and pay to the clerk of court a sum of money sufficient to cover the expenses of subpenaing and paying the legal fees of any witnesses for whom such petitioner may request a subpena, and upon the final discharge of such witnesses, they shall receive, if they demand the same from the clerk, the customary and usual witness fees from the moneys which the petitioner shall have paid to such clerk for such purpose, and the residue, if any, shall be returned by the clerk to the petitioner.

MAIL RELATING TO NATURALIZATION TRANSMITTED FREE OF POSTAGE AND REGISTERED

SEC. 345. All mail matter of whatever class, relating to naturalization, including duplicate papers required by law or regulation to be sent to the Service by clerks of courts addressed to the Department of Justice or the Service, or any official thereof, and endorsed "Official Business", shall be transmitted free of postage and, if necessary, by registered mail without fee, and so marked.

#### AUTHORIZATION GRANTED FOR PUBLICATION AND DISTRIBUTION OF CITIZENSHIP TEXTBOOKS FROM NATURALIZATION FEES

SEC. 346. Authorization is hereby granted for the publication and distribution of the citizenship textbook described in subsection (b) of section 332 and for the reimbursement of the appropriation of the Department of Justice upon the records of the Treasury Department from the naturalization fees deposited in the Treasury through the Service for the cost of such publication and distribution, such reimbursement to be made upon statements by the Attorney General of books so published and distributed.

#### COMPILATION OF NATURALIZATION STATISTICS AND PAYMENT FOR EQUIPMENT

SEC. 347. The Attorney General is authorized and directed to prepare from the records in the custody of the Service a report upon those heretofore seeking citizenship to show by nationalities their relation to the numbers of aliens annually arriving and to the prevailing census populations of the foreign-born, their economic, vocational, and other classification, in statistical form, with analytical comment thereon, and to prepare such report annually hereafter. Payment for the equipment used in preparing such compilation shall be made from the appropriation for the enforcement of this Act by the Service.

#### ADMISSIBILITY IN EVIDENCE OF TESTIMONY AS TO STATEMENTS VOLUNTARILY MADE TO OFFICERS OR EMPLOYEES IN THE COURSE OF THEIR OFFICIAL DUTIES

SEC. 348. (a) It shall be lawful and admissible as evidence in any proceedings founded under this title, or any of the penal or criminal provisions of any law relating to immigration, naturalization, or citizenship, for any officer or employee of the United States to render testimony as to any statement voluntarily made to such officer or employee in the course of the performance of the official duties of such officer or employee by any defendant at the time or subsequent to the alleged commission of any crime or offense which may tend to show that such defendant did not have or could not have had knowledge of any matter concerning which such defendant is shown to have made affidavit, or oath, or to have been a witness pursuant to such law or laws.

(b) In case any clerk of court shall refuse or neglect to comply with any of the provisions of section 339 (a), (b), or (c), such clerk of court shall forfeit and pay to the United States the sum of $25 in each and every case in which such violation or omission occurs,

and the amount of such forfeiture may be recovered by the United States in a civil action against such clerk.

(c) If any clerk of court shall fail to return to the Service or properly account for any certificate of naturalization furnished by the Service as provided in subsection (d) of section 339, such clerk of court shall be liable to the United States in the sum of $50, to be recovered in a civil action, for each and every such certificate not properly accounted for or returned.

### CHAPTER 3—LOSS OF NATIONALITY

#### LOSS OF NATIONALITY BY NATIVE-BORN OR NATURALIZED CITIZEN

SEC. 349. (a) From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by—

(1) obtaining naturalization in a foreign state upon his own application, upon an application filed in his behalf by a parent, guardian, or duly authorized agent, or through the naturalization of a parent having legal custody of such person: *Provided*, That nationality shall not be lost by any person under this section as the result of the naturalization of a parent or parents while such person is under the age of twenty-one years, or as the result of a naturalization obtained on behalf of a person under twenty-one years of age by a parent, guardian, or duly authorized agent, unless such person shall fail to enter the United States to establish a permanent residence prior to his twenty-fifth birthday: *And provided further*, That a person who shall have lost nationality prior to January 1, 1948, through the naturalization in a foreign state of a parent or parents, may, within one year from the effective date of this Act, apply for a visa and for admission to the United States as a nonquota immigrant under the provisions of section 101 (a) (27) (E); or

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof; or

(3) entering, or serving in, the armed forces of a foreign state if he has or thereby acquires the nationality of such foreign state, unless, prior to such entry or service, such entry or service is specifically authorized in writing by the Secretary of State and the Secretary of Defense, or is otherwise authorized by law: *Provided*, That the entry into such service by a person prior to the attainment of his eighteenth birthday shall serve to expatriate

such person only if there exists an option to secure a release from such service and such person fails to exercise such option at the attainment of his eighteenth birthday; or

(4) (A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, if he has or thereby acquires the nationality of such foreign state; or (B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

(5) voting in a national political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory, unless such political election, election, or plebiscite is conducted under the auspices of the United States; or

(6) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

(7) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(8) deserting the military, air, or naval forces of the United States in time of war, if and when he is convicted thereof by court martial and as the result of such conviction is dismissed or dishonorably discharged from the service of such military, air, or naval forces: *Provided*, That, notwithstanding loss of nationality or citizenship under the terms of this or previous laws by reason of desertion committed in time of war, restoration to active duty with such military, air, or naval forces in time of war or the reenlistment or induction of such a person in time of war with permission of competent military, air, or naval authority shall be deemed to have the immediate effect of restoring such nationality or citizenship heretofore or hereafter so lost; or

(9) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction; or

(10) departing from or remaining outside of the jurisdiction of the United States in time of war or during a period declared by the President to be a period of national emergency for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States. For the purposes of this paragraph failure to comply with any provision of any compulsory service laws of the United States shall raise the presumption that the departure from or absence from the United States was for the purpose of evading or avoiding training and service in the military, air, or naval forces of the United States.

(b) Any person who commits or performs any act specified in subsection (a) shall be conclusively presumed to have done so voluntarily and without having been subjected to duress of any kind, if such person at the time of the act was a national of the state in which the act was performed and had been physically present in such state for a period or periods totaling ten years or more immediately prior to such act.

#### DUAL NATIONALS; DIVESTITURE OF NATIONALITY

SEC. 350. A person who (1) is a national of the United States, at birth, and is also a national of a foreign state, at birth, (2) has not succeeded in legally divesting himself of the nationality of the foreign state, and (3), before attaining the age of eighteen years, becomes a resident of such foreign state, shall lose his United States nationality unless (A), after becoming a resident of such foreign state, he acquires permanent residence in the United States before reaching the age of twenty-one years, or (B) he takes an oath of allegiance before a diplomatic or consular officer of the United States while between the ages of sixteen years and twenty-one years and thereafter acquires permanent residence in the United States before reaching the age of twenty-five years. An oath taken in accordance with this section shall be entered in the records of the appropriate embassy, legation, or consulate and a certified copy of the proceedings, including a copy of the oath administered, under the seal of the embassy, legation, or consulate shall be delivered to the person taking such oath without cost, which certified copy shall be evidence of the facts stated therein before any court of record or judicial tribunal and in any department of the United States.

#### RESTRICTIONS ON EXPATRIATION

SEC. 351. (a) Except as provided in paragraphs (7), (8), and (9) of section 349 of this title, no national of the United States can expatriate himself, or be expatriated, under this Act while within the United

States or any of its outlying possessions, but expatriation shall result from the performance within the United States or any of its outlying possessions of any of the acts or the fulfillment of any of the conditions specified in this chapter if and when the national thereafter takes up a residence outside the United States and its outlying possessions.

(b) A national who within six months after attaining the age of eighteen years asserts his claim to United States nationality, in such manner as the Secretary of State shall by regulation prescribe, shall not be deemed to have expatriated himself by the commission, prior to his eighteenth birthday, of any of the acts specified in paragraphs (2), (4), (5), and (6) of section 349 (a) of this title.

### LOSS OF NATIONALITY BY NATURALIZED NATIONAL

SEC. 352. (a)  A person who has become a national by naturalization shall lose his nationality by having a continuous residence for three years in the territory of a foreign state of which he was formerly a national or in which the place of his birth is situated, except as provided in section 353 of this title, whether such residence commenced before or after the effective date of this Act.

(b) For the purpose of subsection (a) of this section, the time during which the person had his residence abroad solely or principally for a reason or purpose within the scope of any provision of section 353 shall not be counted in computing quantum of residence.

### SECTION 352 NOT EFFECTIVE AS TO CERTAIN PERSONS

SEC. 353. Section 352 (a) shall have no application to a national who—

(1)  has his residence abroad in the employment of the Government of the United States; or

(2)  is receiving compensation from the Government of the United States and has his residence abroad on account of disability incurred in its service; or

(3)  shall have had his residence in the United States for not less than twenty years subsequent to his naturalization and shall have attained the age of fifty years when the foreign residence is established; or

(4)  had his residence abroad on October 14, 1940 and temporarily has his residence abroad, or who thereafter has gone or goes abroad and temporarily has his residence abroad, solely or principally to represent a bona fide American educational, scientific, philanthropic, commercial, financial, or business organization, having its principal office or place of business in the United

150

States, or a bona fide religious organization having an office and representative in the United States, or an international agency of an official character in which the United States participates, for which he receives a substantial compensation; or

(5) has his residence abroad and is prevented from returning to the United States exclusively (A) by his own ill health; or (B) by the ill health of his parent, spouse, or child who cannot be brought to the United States, whose condition requires his personal care and attendance: *Provided*, That in such case the person having his residence abroad shall, at least every six months, register at the appropriate Foreign Service office and submit evidence satisfactory to the Secretary of State that his case continues to meet the requirements of this subparagraph; or (C) by reason of the death of his parent, spouse, or child: *Provided*, That in the case of the death of such parent, spouse, or child the person having his residence abroad shall return to the United States within six months after the death of such relative; or

(6) has his residence abroad for the purpose of pursuing a full course of study of a specialized character or attending full-time an institution of learning of a grade above that of a preparatory school: *Provided*, That such residence does not exceed five years; or

(7) is the spouse or child of an American citizen, and who has his residence abroad for the purpose of being with his American citizen spouse or parent who (A) has his residence abroad for one of the objects or causes specified in paragraph (1), (2), (3), (4), (5), or (6) of this section, or (B) has established to the satisfaction of the Secretary of State, as evidenced by possession of a valid unexpired United States passport or other valid document issued by the Secretary of State, that his residence is temporarily outside of the United States for the purpose of (i) carrying on a commercial enterprise which in the opinion of the Secretary of State will directly and substantially benefit American trade or commerce; or (ii) carrying on scientific research on behalf of an institution accredited by the Secretary of State and engaged in research which in the opinion of the Secretary of State is directly and substantially beneficial to the interests of the United States; or (iii) engaging in such work or activities, under such unique or unusual circumstances, as may be determined by the Secretary of State to be directly and substantially beneficial to the interests of the United States; or

(8) is the spouse or child of an American national by birth who while under the age of twenty-one years had his residence in the United States for a period or periods totaling ten years, and has his residence abroad for the purpose of being with said spouse or parent; or

(9) was born in the United States or one of its outlying possessions, who originally had American nationality and who, after having lost such nationality through marriage to an alien, reacquired it; or

(10) has, by Act of Congress or by treaty, United States nationality solely by reason of former nationality and birth or residence in an area outside the continental United States; or

(11) is a veteran of the Spanish-American War, World War I, or World War II, or the spouse, child, or dependent parent of any such veteran; or

(12) prior to the expiration of the three year period prescribed in section 352, appears before a consular officer and, in accordance with regulations prescribed by the Secretary of State, affirms his United States nationality and his desire to retain such nationality, and gives reasons satisfactory to the Secretary of State for continuing residence in the territory of such foreign state beyond the expiration of such three year period: *Provided*, That for the purpose of section 352, a new period of residence in such territory shall commence with the date of such appearance.

#### UNFORESEEN EXIGENCIES PREVENTING RETURN OF UNITED STATES NATIONALS

SEC. 354. Any national of the United States who by reason of some unforeseen and controlling exigency has been prevented from carrying out a bona fide intention to return to the United States within the time prescribed by law and who has a bona fide intention to return and reside permanently in the United States immediately upon the removal of the preventing cause, shall not lose nationality of the United States under any of the provisions of this title providing for loss of nationality because of residence abroad or failure to return to the United States.

#### LOSS OF AMERICAN NATIONALITY THROUGH PARENT'S EXPATRIATION; NOT EFFECTIVE UNTIL PERSON ATTAINS AGE OF TWENTY-FIVE YEARS

SEC. 355. A person having American nationality, who is under the age of twenty-one and whose residence is in a foreign state with or under the legal custody of a parent who hereafter loses American

nationality under section 350 or 352 of this title, shall also lose his American nationality if such person has or acquires the nationality of such foreign state: *Provided*, That, in such case, American nationality shall not be lost as the result of loss of American nationality by the parent   less and until the person attains the age of twenty-five years without having established his residence in the United States.

#### NATIONALITY LOST SOLELY FROM PERFORMANCE OF ACTS OR FULFILLMENT OF CONDITIONS

SEC. 356. The loss of nationality under this chapter shall result solely from the performance by a national of the acts or fulfillment of the conditions specified in this chapter.

#### APPLICATION OF TREATIES; EXCEPTIONS

SEC. 357. Nothing in this title shall be applied in contravention of the provisions of any treaty or convention to which the United States is a party and which has been ratified by the Senate upon the effective date of this title: *Provided, however,* That no woman who was a national of the United States shall be deemed to have lost her nationality solely by reason of her marriage to an alien on or after September 22, 1922, or to an alien racially ineligible to citizenship on or after March 3, 1931, or, in the case of a woman who was a United States citizen at birth, through residence abroad following such marriage, notwithstanding the provisions of any existing treaty or convention.

### CHAPTER 4—MISCELLANEOUS

#### CERTIFICATE OF DIPLOMATIC OR CONSULAR OFFICER OF THE UNITED STATES AS TO LOSS OF AMERICAN NATIONALITY UNDER CHAPTER IV, NATIONALITY ACT OF 1940, OR UNDER CHAPTER 3 OF THIS TITLE

SEC. 358. Whenever a diplomatic or consular officer of the United States has reason to believe that a person while in a foreign state has lost his American nationality under any provision of chapter 3 of this title, or under any provision of chapter IV of the Nationality Act of 1940, as amended, he shall certify the facts upon which such belief is based to the Department of State, in writing, under regulations prescribed by the Secretary of State. If the report of the diplomatic or consular office is approved by the Secretary of State, a copy of the certificate shall be forwaded to the Attorney General, for his information, and the diplomatic or consular office in which the report was made shall be directed to forward a copy of the certificate to the person to whom it relates.

Case 1:21-cr-00179-AJT   Document 29-2   Filed 09/23/21   Page 153 of 165 PageID# 68?

153

CERTIFICATE OF NATIONALITY TO BE ISSUED BY THE SECRETARY OF STATE
FOR A PERSON NOT A NATURALIZED CITIZEN OF THE UNITED STATES FOR
USE IN PROCEEDINGS OF A FOREIGN STATE

SEC. 359. The Secretary of State is hereby authorized to issue, in his discretion and in accordance with rules and regulations prescribed by him, a certificate of nationality for any person not a naturalized citizen of the United States who presents satisfactory evidence that he is an American national and that such certificate is needed for use in judicial or administrative proceedings in a foreign state. Such certificate shall be solely for use in the case for which it was issued and shall be transmitted by the Secretary of State through appropriate official channels to the judicial or administrative officers of the foreign state in which it is to be used.

PROCEEDINGS FOR DECLARATION OF UNITED STATES NATIONALITY IN THE
EVENT OF DENIAL OF RIGHTS AND PRIVILEGES AS NATIONAL

SEC. 360. (a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action against the head of such department or independent agency for a judgment declaring him to be a national of the United States. An action under this subsection shall be filed in the United States District Court for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is hereby conferred upon those courts.

(b) If any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action against the head of such department or independent agency for a judgment declaring him to be a national of the United States. Such action shall be filed in the United States District Court for the district in which such person claims to have last resided or in the United States District Court for the District of Columbia, and jurisdiction over such officials in such cases is hereby conferred upon those courts. A person who has instituted an action under this subsection may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling

to the United States to prosecute his action for determination of his citizenship status. Upon proof to the satisfaction of such diplomatic or consular officer that such action was instituted in good faith and upon a substantial basis, he shall issue to such person a certificate of identity stating that his nationality status is pending before the court and valid for travel to the United States. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision. The Secretary of State shall prescribe rules and regulations for the issuance of certificates of identity as above provided.

(c) A person who has been issued a certificate of identity under the provisions of subsection (b), and while in possession thereof, may apply for admission to the United States at any port of entry for the purpose of prosecuting his action for a determination of his nationality status, and may be admitted upon such terms and conditions to guarantee his departure or deportation if it shall be determined by the court that he is not a national of the United States, as the Attorney General may by regulations prescribe, and under such restrictions pending final determination by the court as the Attorney General deems necessary for the protection of the security of the United States.

### TITLE IV—MISCELLANEOUS

#### JOINT CONGRESSIONAL COMMITTEE

SEC. 401. (a) There is hereby established a joint congressional committee to be known as the Joint Committee on Immigration and Naturalization Policy (hereinafter referred to as the "Committee") to be composed of ten members as follows: (1) five members who are members of the Committee on the Judiciary of the Senate, three from the majority and two from the minority party to be appointed by the President of the Senate; and (2) five members who are members of the Committee on the Judiciary of the House of Representatives, three from the majority and two from the minority party to be appointed by the Speaker of the House of Representatives.

(b) No person shall continue to serve as a member of the Committee after he has ceased to be a member of the Committee on the Judiciary of either the Senate or the House of Representatives.

(c) A vacancy in the membership of the Committee shall be filled in the same manner as the original selection and the Committee shall elect a Chairman from among its members.

**155**

(d)  It shall be the function of the Committee to make a continuous study of (1) the administration of this Act, its effect on the national security, the economy and the social welfare of the United States, and (2) such conditions within or without the United States which in the opinion of the Committee might have any bearing on the immigration and naturalization policy of the United States.

(e)  The Committee shall make from time to time a report to the Senate and the House of Representatives concerning the results of its studies together with such recommendations as it may deem desirable.

(f)  The Committee or any duly authorized Subcommittee thereof is authorized to hold such hearings; to sit and act at such times and places; to require by subpena or otherwise the attendance of such witnesses and the production of such books, papers, and documents; to administer such oaths; to take such testimony; to procure such printing and binding as it deems advisable.  The provisions of sections 102 and 104, inclusive, of the Revised Statutes shall apply in case of any failure of any witnesses to comply with any subpena or to testify when summoned under the authority of this Act.

(g)  The members of the Committee shall serve without compensation in addition  that received for their services as Members of Congress but they shall be reimbursed for travel subsistence and other expenses incurred by them in the performance of the duties vested in the Committee other than expenses in connection with meetings of the Committee held in the District of Columbia during such times as the Congress is in session.

(h)  The Committee is authorized to appoint and fix the compensation of such clerks, experts, consultants, and clerical and stenographic assistants as it deems necessary and advisable, but the compensation so fixed shall not exceed the compensation prescribed under the Classification Act of 1949, as amended, for comparable duties.  The Committee is authorized to reimburse the members of its staff for travel, subsistence and the other necessary expenses incurred by them in the performance of the duties vested in the Committee other than expenses in connection with meetings of the Committee held in the District of Columbia during such times as the Congress is in session.

(i)  The expenses of the Committee shall be paid one-half from the contingent funds of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers signed by the Chairman of the Committee or by any member of the Committee duly authorized by the Chairman.

**156**

### AMENDMENTS TO OTHER LAWS

Sec. 402. (a) Section 1546 of title 18 of the United States Code is amended to read as follows:

"§ 1546.  Fraud and misuse of visas, permits, and other entry documents

"Whoever, knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, or document, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or

"Whoever, except under direction of the Attorney General or the Commissioner of the Immigration and Naturalization Service, or other proper officer, knowingly prossesses any blank permit, or engraves, sells, brings into the United States, or has in his control or possession any plate in the likeness of a plate designed for the printing of permits, or makes any print, photograph, or impression in the likeness of any immigrant or nonimmigrant visa, permit or other document required for entry into the United States, or has in his possession a distinctive paper which has been adopted by the Attorney General or the Commissioner of the Immigration and Naturalization Service for the printing of such visas, permits, or documents; or

"Whoever, when applying for an immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or for admission to the United States personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name without disclosing his true identity, or sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, such visa, permit, or other document, to any person not authorized by law to receive such document; or

"Whoever knowingly makes under oath any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

**157**

(b) Chapter 69 of title 18, United States Code, is amended by adding after section 1428 the following new section:

"Sec. 1429. Penalties for neglect or refusal to answer subpena.

"Any person who has been subpenaed under the provisions of subsection (e) of section 336 of the Immigration and Nationality Act to appear at the final hearing of a petition for naturalization, and who shall neglect or refuse to so appear and to testify, if in the power of such person to do so, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

(c) Section 1114 of title 18, United States Code, is amended by deleting the language "any immigrant inspector or any immigration patrol inspector" and by substituting therefor the language "any immigration officer".

(d) Subsection (c) of section 8 of the Act of June 8, 1938 (52 Stat. 631; 22 U. S. C. 611–621), entitled "An Act to require the registration of certain persons employed by agencies to disseminate propaganda in the United States, and for other purposes", as amended, is hereby further amended by deleting the language "sections 19 and 20 of the Immigration Act of 1917 (39 Stat. 889, 890), as amended." and by substituting therefor the language "sections 241, 242, and 243 of the Immigration and Nationality Act."

(e) Section 4 of the Act of June 30, 1950 (Public Law 597, Eighty-first Congress, second session), entitled "An Act to provide for the enlistment of aliens in the regular army" is amended to read as follows:

"Sec. 4. Notwithstanding the dates or periods of service specified and designated in section 329 of the Immigration and Nationality Act, the provisions of that section are applicable to aliens enlisted or reenlisted pursuant to the provisions of this Act and who have completed five or more years of military service, if honorably discharged therefrom. Any alien enlisted or reenlisted pursuant to the provisions of this Act who subsequently enters the United States, American Samoa, Swain's Island, or the Canal Zone, pursuant to military orders shall, if otherwise qualified for citizenship, and after completion of five or more years of military service, if honorably discharged therefrom, be deemed to have been lawfully admitted to the United States for permanent residence within the meaning of such section 329 (a)."

(f) Section 201 of the Act of January 27, 1948 (Public Law 402, Eightieth Congress, second session, 62 Stat. 6) entitled "An Act to promote the better understanding of the United States among the

peoples of the world and to strengthen cooperative international relations" is amended to read as follows:

"SEC. 201. The Secretary is authorized to provide for interchanges on a reciprocal basis between the United States and other countries of students, trainees, teachers, guest instructors, professors, and leaders in fields of specialized knowledge or skill and shall wherever possible provide these interchanges by using the services of existing reputable agencies which are successfully engaged in such activity. The Secretary may provide for orientation courses and other appropriate services for such persons from other countries upon their arrival in the United States, and for such persons going to other countries from the United States. When any country fails or refuses to cooperate in such program on a basis of reciprocity the Secretary shall terminate or limit such program, with respect to such country, to the extent he deems to be advisable in the interests of the United States. The persons specified in this section shall be admitted as nonimmigrants under section 101 (a) (15) of the Immigration and Nationality Act, for such time and under such conditions as may be prescribed by regulations promulgated by the Secretary of State and the Attorney General. A person admitted under this section who fails to maintain the status under which he was admitted or who fails to depart from the United States at the expiration of the time for which he was admitted, or who engages in activities of a political nature detrimental to the interests of the United States, or in activities not consistent with the security of the United States, shall, upon the warrant of the Attorney General, be taken into custody and promptly deported pursuant to sections 241, 242, and 243 of the Immigration and Nationality Act. Deportation proceedings under this section shall be summary and the findings of the Attorney General as to matters of fact shall be conclusive. Such persons shall not be eligible for suspension of deportation under section 244 of the Immigration and Nationality Act."

(g) Paragraph 7 of section 1 of the Act of February 4, 1887, as amended (24 Stat. 379; 54 Stat. 899; 62 Stat. 602; 49 U. S. C. 1 (7)), is further amended by deleting the words "immigration inspectors" and by substituti: therefor the words "immigration officers".

(h) (1) The first sentence of subsection (c) of section 3 of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is amended by deleting therefrom the language "from the immigration quota for the country of the alien's nationality as defined in section 12 of the

**159**

Immigration Act of May 26, 1924 (8 U. S. C. 212)" and by substituting therefor the language "from the annual quota to which an immigrant is chargeable as provided in section 202 of the Immigration and Nationality Act,".

(2) The second proviso to subsection (c) of section 3 of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is amended by deleting the language "as defined in section 6 of the Act of May 26, 1924, as amended (8 U. S. C. 206)," and by substituting therefor "as provided in section 203 (a) (3) of the Immigration and Nationality Act,".

(3) Section (4) (a) of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is further amended by deleting the language "upon receipt of a fee of $18, which shall be deposited in the Treasury of the United States to the account of miscellaneous receipts,". The proviso to section 4 (a) of the Act of June 25, 1948, as amended, is amended by deleting the language "the immigration quota of the country of the alien's nationality as defined in section 12 of the Immigration Act of May 26, 1924," and by substituting therefor the language "the annual quota to which an immigrant is chargeable as provided in section 202 of the Immigration and Nationality Act,".

(4) Section 5 of the Act of June 25, 1948, as amended (62 Stat. 1009; Public Law 60, Eighty-second Congress), is amended to read as follows:

"SEC. 5. The quota to which an alien is chargeable for the purposes of this Act shall be determined in accordance with the provisions of section 202 of the Immigration and Nationality Act and no eligible displaced person shall be issued an immigrant visa if he is known or believed by the consular officer to be subject to exclusion from the United States under any provision of the immgration laws, with the exception of section 212 (a) (14) of the Immigration and Nationality Act; and all eligible displaced persons, eligible displaced orphans and orphans under section 2 (f) shall be exempt from paying visa fees and head taxes."

(5) Section 6 of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is further amended by deleting the language "section 6 of the Immigration Act of 1924, as amended (8 U. S. C. 206)," and by substituting therefor the language "section 203 of the Immigration and Nationality Act,". The last sentence of section 6 of the Act of June 25, 1948, is amended by deleting the language "sections 19 and 20 of the Immigration Act of February 5, 1917, as

amended." and by substituting therefor the language "sections 241, 242, and 243 of the Immigration and Nationality Act."

(6) The first sentence of subsection (a) of section 12 of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is amended by deleting the language "section 12 of the Act of May 26, 1924, as amended," and by substituting therefor the language "section 202 of the Immigration and Nationality Act,".  Subsection (b) of section 12 of the Act of June 25, 1948, as amended (62 Stat. 1009; 64 Stat. 219), is amended by deleting the language "section 11 (f) of the Immigration Act of May 26, 1924 (8 U. S. C. 211)," and by substituting therefor the language "section 201 of the Immigration and Nationality Act,".  Subsection (b) of section 12 of the Act of June 25, 1948, as amended, is amended by deleting the language "from the immigration quota of the country of nationality of the person who receives the visa as defined in section 12 of the Immigration Act of May 26, 1924 (8 U. S. C. 212)" and by substituting therefor the language "from the annual quota to which the person who receives the visa is chargeable as provided in section 202 of the Immigration and Nationality Act".  The last sentence of subsection (c) of section 12 of the Act of June 25, 1948, as amended, is further amended to read as follows:

"Those provisions of section 5 of this Act which relate to section 212 (a) (14) of the Immigration and Nationality Act shall be applicable to persons whose admission is authorized under the provisions of this section."

(i) (1) Section 1 of the Act of March 2, 1931 (46 Stat. 1467; 8 U. S. C. 109a), is amended by deleting the word "inspectors" and by substituting therefor the words "immigration officers".

(2) The Act of August 22, 1940 (54 Stat. 858; 8 U. S. C. 109c), is amended by deleting the word "inspectors" and by substituting therefor the words "immigration officers".

(j) Public Law 114, Eighty-second Congress, first session, is hereby amended to read as follows:

"That a person who, while a citizen of the United States, has lost citizenship of the United States solely by reason of having voted in a political election or plebiscite held in Italy on June 2, 1946, or on April 18, 1948, and who has not subsequent to such voting committed any act which, had he remained a citizen, would have operated to expatriate him, may be naturalized by taking, prior to two years from the enactment of this Act, before any naturalization court specified

in subsection (a) of section 310 of the Immigration and Nationality Act, or before any diplomatic or consular officer of the United States abroad, the oath required by section 337 of the Immigration and Nationality Act. Certified copies of such oath shall be sent by such diplomatic or consular officer or such court to the Department of State and to the Department of Justice. Such person shall have, from and after naturalization under this section, the same citizenship status as that which existed immediately prior to its loss: *Provided*, That no such person shall be eligible to take the oath required by section 337 of the Immigration and Nationality Act unless he shall first take an oath before any naturalization court specified in subsection (a) of section 310 of the Immigration and Nationality Act, or before any diplomatic or consular officer of the United States abroad, that he has done nothing to promote the cause of communism. The illegal or fraudulent procurement of naturalization under this amendment shall be subject to cancellation in the same manner as provided in section 340 of the Immigration and Nationality Act.

"Sec. 2. The Act of August 7, 1946 (Public Law 614; 60 Stat. 866), is hereby repealed."

(k) The first section of the Act of May 10, 1920 (41 Stat. 593; 8 U. S. C. 157) is amended by substituting the words "Attorney General" for "Secretary of Labor" in both instances in which these words appear, and substituting "sections 243 and 244 of the Immigration and Nationality Act" for "sections 19 and 20 of the Act of February 5, 1917."

### LAWS REPEALED

Sec. 403. (a) The following Acts and all amendments thereto and parts of Acts and all amendments thereto are repealed:

(1) Section 2164 of the Revised Statutes (8 U. S. C. 135);

(2) Act of February 26, 1885 (23 Stat. 332);

(3) Second paragraph under the heading "Treasury Department" in Act of October 19, 1888 (25 Stat. 567; 8 U. S. C 140);

(4) Second and fourth sentences of section 7 of the Act of March 3, 1891 (26 Stat. 1085; 8 U. S. C. 101);

(5) Section 8 of Act of March 3, 1893 (27 Stat. 570; 8 U. S. C. 172);

(6) The last paragraph of section 10 of Act of April 30, 1900 (31 Stat. 143; 48 U. S. C. 504);

(7) Section 3 of Act of April 29, 1902 (32 Stat. 177);

(8) The proviso to the paragraph headed "Bureau of Immigration"

under caption "Department of Commerce and Labor" in Act of February 3, 1905 (33 Stat. 684);

(9) The proviso to the paragraph headed "Enforcement of Chinese Exclusion Act" under caption "Department of Commerce and Labor" in Act of March 3, 1905 (33 Stat. 1182);

(10) Section 2 (e) of Act of February 9, 1909 (35 Stat. 614; 42 Stat. 596; 21 U. S. C. 175);

(11) The last proviso to the first paragraph headed "Expenses of Regulating Immigration" under caption "Department of Commerce and Labor" in the Act of March 4, 1909 (35 Stat. 982; 8 U. S. C. 133);

(12) The proviso to the first paragraph headed "Immigration Service" under caption "Department of Commerce and Labor" in the Act of March 4, 1911 (36 Stat. 1442);

(13) Act of February 5, 1917 (39 Stat. 874);

(14) Section 5b of Act of March 2, 1917 (39 Stat. 951; 48 Stat. 1245; 48 U. S. C. 733a-1);

(15) Act of May 22, 1918 (40 Stat. 559; 22 U. S. C. 223-226b);

(16) Act of October 16, 1918 (40 Stat. 1012; 8 U. S. C. 137);

(17) Joint resolution of October 19, 1918 (40 Stat. 1014);

(18) Act of December 26, 1920 (41 Stat. 1082; 8 U. S. C. 170);

(19) The proviso to the paragraph headed "Expenses, Passport Control Act" in the Act of March 2, 1921 (41 Stat. 1217; 22 U. S. C. 227);

(20) Act of May 19, 1921 (42 Stat. 5);

(21) Joint resolution of December 27, 1922 (42 Stat. 1065);

(22) Act of May 26, 1924 (43 Stat. 153);

(23) Act of February 25, 1925 (43 Stat. 976; 8 U. S. C. 202 (i) );

(24) The last proviso to the paragraph headed "Bureau of Immigration" in title IV of the Act of February 27, 1925 (43 Stat. 1049; 8 U. S. C. 110);

(25) Section 7 (d) of the Act of May 20, 1926 (44 Stat. 572; 49 U. S. C. 177 (d));

(26) Act of May 26, 1926 (44 Stat. 657; 8 U. S. C. 231);

(27) Act of May 26, 1926 (44 Stat. 654; 8 U. S. C. 241-246);

(28) Act of April 2, 1928 (45 Stat. 401; 8 U. S. C. 226a);

(29) Act of March 4, 1929 (45 Stat. 1551; 8 U. S. C. 180-180d);

(30) Act of February 18, 1931 (46 Stat. 1171; 8 U. S. C. 156a);

(31) Act of March 17, 1932 (47 Stat. 67; 8 U. S. C. 137b-d);

(32) Section 7 of Act of May 25, 1932 (47 Stat. 166; 8 U. S. C. 181);

(33) Act of July 2, 1932 (47 Stat. 571; 8 U. S. C. 363b);

163

(34) Sections 8 and 14 of the Act of March 24, 1934, as amended (48 Stat. 462; 48 U. S. C. 1238; 48 Stat. 464; 48 U. S. C. 1244);

(35) Section 3 of the Act of May 14, 1937 (50 Stat. 165; 8 U. S. C. 213a);

(36) Act of August 19, 1937 (50 Stat. 696, ch. 698);

(37) Act of July 27, 1939 (53 Stat. 1133; 48 U. S. C. 1251–1257);

(38) Title III of Act of June 28, 1940 (54 Stat. 673; 8 U. S. C. 451–460);

(39) Act of July 2, 1940 (54 Stat. 715–716);

(40) Section 2 of Act of August 16, 1940 (54 Stat. 788);

(41) Act of October 14, 1940 (54 Stat. 1137);

(42) Act of June 20, 1941 (55 Stat. 252; 22 U. S. C. 228, 229);

(43) Section 2 of Act of December 17, 1943 (57 Stat. 601; 8 U. S. C. 212a);

(44) Sections 4 and 5 of the Act of July 2, 1946 (60 Stat. 417; 8 U. S. C. 212b, 212c);

(45) Section 5 of the Act of May 31, 1947 (61 Stat. 122; 8 U. S. C. 732a);

(46) The paragraph headed "General provisions—Department of Justice" in Chapter III of the Supplemental Appropriation Act, 1951 (Public Law 843, Eighty-first Congress);

(47) The Act of March 28, 1951 (Public Law 14, Eighty-second Congress, first session).

(b) Except as otherwise provided in section 405, all other laws, or parts of laws, in conflict or inconsistent with this Act are, to the extent of such conflict or inconsistency, repealed.

### AUTHORIZATION OF APPROPRIATIONS

SEC. 404. There are authorized to be appropriated such sums as may be necessary to carry out the provisions of this Act.

### SAVINGS CLAUSES

SEC. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, or order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such

**164**

prosecutions, suits, actions, proceedings, statuses, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect.  When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act, makes application for admission, his admissibility shall be determined under the provisions of law in effect on the date of the issuance of such visa.

(b)  Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed.

(c)  The repeal of any statute by this Act shall not terminate nationality heretofore lawfully acquired nor restore nationality heretofore lost under any law of the United States or any treaty to which the United States may have been a party.

(d)  This Act shall not be construed to repeal, alter, or amend section 231 (a) of the Act of April 30, 1946 (60 Stat. 148; 22 U. S. C. 1281 (a)), the Act of June 20, 1949 (Public Law 110, section 8, Eighty-first Congress, first session; 63 Stat. 208), the Act of June 5, 1950 (Public Law 535, Eighty-first Congress, second session), nor title V of the Agricultural Act of 1949, as amended (Public Law 78, Eighty-second Congress, first session).

### SEPARABILITY

SEC. 406. If any particular provision of this Act, or the application thereof to any person or circumstance, is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby.

### EFFECTIVE DATE

SEC. 407. This Act shall take effect at 12: 01 antemeridian on the one hundred and eightieth day immediately following the date of its enactment.

82d CONGRESS
2d Session

S. 2842

# A BILL

To revise the laws relating to immigration, naturalization, and nationality; and for other purposes.

By Mr. HUMPHREY, Mr. LEHMAN, Mr. BENTON, Mr. LANGER, Mr. KILGORE, Mr. DOUGLAS, Mr. McMAHON, Mr. GREEN, Mr. PASTORE, Mr. MOODY, Mr. MURRAY, Mr. KEFAUVER, and Mr. MORSE

MARCH 12 (legislative day, FEBRUARY 25), 1952

Read twice and referred to the Committee on the Judiciary